Patrick Emerson McCormick (AZ Bar No. 037036)
PMcCormick@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
One South Church Avenue, Suite 2000
Tucson, Arizona 85701
Telephone: (520) 622-2090
Facsimile: (520) 622-3088

Eric Levinrad* (CA Bar No. 169025)
elevinrad@ecjlaw.com
Amy S. Russell* (CA Bar No. 284131)
arussell@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325
* *Pro Hac Vice Applications Forthcoming*

Attorneys for Defendants Alissa
Chiaravanond, Pacific Shangrila LLC,
Cathedral Shangrila LLC, Nido di Stelle LLC,
and ILU LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA, PRESCOTT

| | |
|---|---|
| PHONG THANH HUYNH,<br><br>            Plaintiff,<br><br>     v.<br><br>ALISSA CHIARAVANOND, an individual; PACIFIC SHANGRILA LLC, a Nevada limited liability company; CATHEDRAL SHANGRILA LLC, a Nevada limited liability company; NIDO DI STELLE LLC, a Nevada limited liability company; and ILU LLC, an Arizona limited liability company,<br><br>            Defendants. | Case No. 3:23-cv-08622-JJT<br><br>The Hon. John J. Tuchi, Courtroom 505<br><br>**DEFENDANTS' NOTICE OF MOTION TO SET ASIDE ENTRY OF DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>*[Filed Concurrently with Declarations of Alissa Chiaravanond and Eric Levinrad; [Proposed] Order]* |

**NOTICE**

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on a date and time as the Court may direct before the Honorable John J. Tuchi in Courtroom 505 of the United States District Court, District of Arizona, Sandra Day O'Connor U.S. Courthouse, located at 401 W. Washington St., Fifth Floor, Phoenix, Arizona 85003, for the reasons set forth below, Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC (collectively "Defendants") will and hereby do request that the Court set aside the entry of default entered by the Clerk of the Court pursuant to Federal Rule of Civil Procedure 55(c).

Good cause exists to set aside the entry of default, and all of the factors to be considered by the Court weigh in Defendants' favor. First, Defendants' conduct is not culpable, as it was not done in bad faith or with any intention to take advantage of Plaintiff or manipulate the legal process. Specifically, at the time the response came due, Defendants had no legal counsel and the individual Defendant, Chiaravanond, who is the sole member of the LLC Defendants, was in an extremely fraught position and in fear for her safety. Second, Defendants have meritorious defenses to the claims asserted against them by Plaintiff in this lawsuit. Third, Plaintiff will not be prejudiced by the Court setting aside the default. Finally, policy considerations also weigh in favor of setting aside the default, as the law strongly favors resolution on the merits and Defendants bring this Motion within only a matter of weeks after the defaults were entered by the clerk.

This Motion is made following a conference of counsel and the request by Defendants that Plaintiff stipulate to set aside the entry of default to allow this matter to proceed on the merits. Although counsel for Defendants explained the good cause that exists for the entry of default to be set aside, Plaintiff refused to stipulate.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Alissa Chiaravanond and Eric Levinrad,

*ERVIN COHEN & JESSUP LLP*

all pleadings and papers on file in this action, and any oral or written argument which may be presented at or before the hearing on this matter. Pursuant to LRCiv 7.2(f) and as stated in the caption above, Defendants request oral argument be granted on this Motion.

| DATED: April 3, 2024 | LEWIS ROCA ROTHGERBER CHRISTIE LLP |
|---|---|
| | Patrick Emerson McCormick |

By: _____/s/ Patrick Emerson McCormick_____
Patrick Emerson McCormick
Attorneys for Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC

| DATED: April 3, 2024 | ERVIN COHEN & JESSUP LLP |
|---|---|
| | Eric Levinrad |
| | Amy S. Russell |

By: _____/s/ Eric Levinrad (with permission)_____
Eric Levinrad
Attorneys for Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This matter was commenced by an angry husband against his wife in the months immediately following the breakdown of their marriage, in an apparent effort to intimidate and threaten retribution for the failure of the relationship. Specifically, prior to the marriage between Plaintiff Phong Thanh Huynh ("Plaintiff" or "Huynh") and Defendant Alissa Chiaravanond ("Chiaravanond"), Plaintiff gave money to Chiaravanond as his dowry to her. Although the tradition may sound outdated to many Westerners, it remains common in Thailand and other parts of South East Asia (where Chiaravanond was raised and where her family still lives). Chiaravanond purchased three houses with the money transferred to her by Plaintiff, all of which were purchased prior to their marriage and none of which were used as the couple's family home. In fact, there was never any question that these properties were dowry gifts to Chiaravanond, and Plaintiff always knew that these properties were owned by LLCs solely managed by Chiaravanond (the Defendant entities, Cathedral Shangrila LLC, Pacific Shangrila LLC, Nido di Stelle LLC, and ILU LLC (with Chiaravanond, collectively referred to herein as "Defendants")), and in which Chiaravanond was the sole member. That is, until Plaintiff filed this lawsuit claiming, for the first time, the existence of a scheme to defraud him of money. But Plaintiff's claims are just that – vague claims – that are not supported by any documents or other evidence.

Given the background of this dispute, it is understandable that Chiaravanond was distraught at the time the lawsuit was filed. Not only had she recently separated from her husband, but following the separation she had received a threatening phone call and her social media profiles had been hacked, harassing tactics which she had reason to believe could be traced to Plaintiff. But that is only the beginning. Around the time she was personally served with the Summons and Complaint, Chiaravanond was followed by a car, believed that her electronic devices were unlawfully accessed, and witnessed a drone land in her yard. These incidents so terrified Chiaravanond that she left her Sedona home to stay in motel rooms for 13 days, and shortly thereafter left the Sedona area altogether. Due to

the crippling fear that Chiaravanond suffered during this time period, she was unable to retain counsel in order to respond to the Complaint, but did so as soon as she was able.

Ultimately, nothing about Defendants' conduct or their failure to timely respond to the Complaint suggests anything approaching the extreme or exceptional circumstances courts require in order to take the "drastic step" of proceeding to a judgment through default rather than permitting a matter to be determined on the merits. For all of the reasons described herein, this Motion should be granted and the Court should enter an order setting aside the clerk's entry of default, and permitting Defendants to file a responsive pleading to the Complaint within 21 days of the order.

## II.     OVERVIEW OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.     The History Of The Parties' Personal Relationship

Chiaravanond met Plaintiff while serving as an independent board member of FWD Life Insurance, Thailand (FWD Group) ("FWD") in Thailand. Plaintiff was serving as FWD's Chief Executive Officer ("CEO") at the group level, and had a mentor-mentee relationship with Chiaravanond. (Declaration of Alissa Chiaravanond ("Chiaravanond Decl."), ¶ 2.)

Plaintiff's and Chiaravanond's relationship transitioned from a mentor-mentee relationship into a romantic relationship in 2018, and they announced their engagement in January 2020. (Chiaravanond Decl., ¶ 3.)

In Thai culture, before a couple gets married a groom typically pays either his fiancée or his fiancée's family a sum of money, called "sin sod," also known as a Thai dowry. When the groom is a wealthy, successful man, the amount of cash paid for this dowry can be significant. Traditionally, under Thai culture, dowry money that is paid to a bride-to-be or her family is considered to be an irrevocable gift, to be used as the bride-to-be or her family see fit. In Thai culture, even if a bride-to-be chooses not to go forward with the wedding, the dowry money is kept by the bride-to-be. (Chiaravanond Decl., ¶¶ 4-5.)

Huynh gave Chiaravanond money to buy several houses which he told her he was

Ervin Cohen & Jessup LLP

giving her as a dowry in advance of their marriage. In all, Huynh transferred money to Chiaravanond for the purchase of two houses in Sedona, Arizona (and an adjacent parcel of vacant land), and one house in Malibu, California, which he expressly told her on numerous occasions he was giving as dowry gifts. (Chiaravanond Decl., ¶ 6.)

Huynh and Chiaravanond discussed and understood that the properties that she purchased with this money would be owned by Chiaravanond only, and that Huynh would not have any ownership interest in the properties. (Chiaravanond Decl., ¶ 7.) When Chiaravanond purchased these properties, with Huynh's full knowledge and agreement, she set up sole purpose LLCs of which she was the only member to hold title to these properties. Chiaravanond told Huynh that she was setting up LLCs to hold title to the properties, and Huynh never asked to be on title to the properties and never asked for any membership interest in the LLCs that held title to the properties. Indeed, there are no documents evidencing any intention for Huynh to hold any interest in these properties, because that was neither his nor Chiaravanond's intention at either the time that he transferred the money or the time that she purchased the properties. (Id.) Chiaravanond also never represented to Huynh that he would hold any ownership interest in the properties or in the LLC's which she set up to hold title to those properties. (Id.)

Huynh and Chiaravanond got married in Vancouver, British Columbia on May 1, 2022. (Chiaravanond Decl., ¶ 8.)

In the months following the wedding, Chiaravanond learned numerous things about Huynh that made her question the marriage. As just one example, six weeks after their wedding, Huynh told Chiaravanond that he was suffering severe financial difficulties and asked Chiaravanond on two to three occasions to obtain a loan for him from her father in the amount of $30 million. Chiaravanond declined these requests. (Chiaravanond Decl., ¶ 9.)

For this, and various other reasons, Chiaravanond no longer wanted to remain married to Huynh and engaged attorneys to file a Petition for Writ of Nullity of their marriage in Singapore, where their marital home was located. After her attorneys were

unable to obtain Plaintiff's cooperation for an amicable separation, the Petition for Writ of Nullity was filed on October 9, 2023. (Chiaravanond Decl., ¶¶ 9-10.)

### B. The Claims At Issue In The Complaint

Plaintiff filed this action on December 2, 2023 alleging 14 total causes of action: five claims for unjust enrichment, money had and received, conversion, resulting trust, and constructive trust against all Defendants; two claims for aiding and abetting and appointment of a receiver against the corporate defendants only; a claim for quiet title against Defendants Cathedral Shangrila LLC and Nido di Stelle LLC only; and six claims for breach of the implied covenant of good faith, breach of fiduciary duty, constructive fraud, fraud, negligent misrepresentation, and aggravated negligence and negligence per se against Defendant Chiaravanond only. (Dkt. 1.) The essence of the Complaint is Plaintiff's claim that he gave money to Chiaravanond to purchase several parcels of real property for his benefit, but that she failed to amend the articles of organization of the various LLCs holding title to show an ownership interest by an entity owned by Plaintiff, instead keeping herself as the sole member of each LLC so that she could solely benefit from the properties.

The corporate entities were served through agents on January 4, 2024 and January 16, 2024 (Dkt. 9, 10, 17), while Defendant Chiaravanond was not individually served with any documents in this action – and did not personally learn about it – until February 1, 2024 (Dkt. 11; Chiaravanond Decl., ¶ 15). Following Plaintiff's requests for entry of default (Dkt. 14, 18, 21), the clerk entered the defaults of Defendants Cathedral Shangrila LLC and Nido di Stelle LLC on February 7, 2024 (Dkt. 16), of Defendants Pacific Shangrila LLC and ILU LLC on February 14, 2024 (Dkt. 20), and of Defendant Chiaravanond on February 26, 2024 (Dkt. 23).

The filing of this lawsuit on December 2, 2023 came just two months after Defendant Chiaravanond filed the petition to annul her marriage to Plaintiff in Singapore, and is plainly one piece of a larger strategy by Plaintiff to harass and intimidate his estranged spouse. By way of just one example, this is not the only lawsuit filed by Plaintiff

in the months following the marital separation. Also in December 2023, Plaintiff filed a nearly identical lawsuit in Los Angeles Superior Court alleging 12 causes of action against Defendants Chiaravanond, Pacific Shangrila LLC, and ILU LLC. *See Huynh v. Chiaravanond et al.*, Los Angeles Superior Court Case No. 23SMCV06061.

It is also notable that the claims alleged by Plaintiff in this action are not based upon any written agreement or other document. (*See generally*, Dkt. 1.) Instead, each cause of action depends solely on unsupported allegations that Chiaravanond made representations to Plaintiff that he would be given an interest in a certain entity, which in turn would own the LLCs that own the real property at issue. (*E.g.,* Dkt. 1 at ¶ 33.) But even these allegations are not reliable because they are made despite Plaintiff's admission that all of the publicly-available and recorded documents associated with the transactions at issue always showed Chiaravanond to be the sole owner of the LLCs which took ownership of the real property. (Dkt. 1 at ¶¶ 44-48, 50-51, 54, 58, 61-62, 64-65, 68-69, 72.) Thus, Plaintiff never asserts any facts demonstrating that he has an individual interest in any of the real property in dispute, and his claims related to misrepresentations by Chiaravanond that he would be given a beneficial interest are contrary to publicly available records.

Specifically, Plaintiff has no recorded interest in any of the entities or pieces of real property described in the Complaint. (Chiaravanond Decl., ¶ 7.) Under California law (where the "Malibu House" and "Malibu Land" addressed in the Complaint are located), the party claiming an interest in real property contrary to recorded title, like Plaintiff here, has the difficult burden of overcoming the presumption that the owner of legal title is the owner of full beneficial title by *clear and convincing proof*. Cal. Evid. Code § 662; *Tannehill v. Finch*, 188 Cal.App.3d 224, 228 (1986). Plaintiff will be unable to meet that burden. Separately, Plaintiff has filed notices of lis pendens in this action purporting to have a right to hold the title to the real property located in Arizona described in the Complaint as the "Sedona House 1," "Sedona House 2," and "Sedona Land." (Dkt. 24, 25, 26.) To the extent the lis pendens have been recorded, under Arizona law, Defendants may bring claims against Plaintiff for, among other things, knowingly filing groundless lis

pendens claims and may seek to recover treble damages as well as attorneys' fees. *Stauffer v. U.S. Bank Nat. Ass'n*, 233 Ariz. 22, 25-26 (2013), *citing* A.R.S. § 33-420.

### C. Exigent Personal Circumstances Causing Defendant Chiaravanond To Fear For Her Safety Resulted In Her Unavoidable Delay In Retaining Counsel And Responding To The Lawsuit

After Chiaravanond filed the nullity petition in Singapore, certain incidents occurred which led her to fear for her personal safety, and these fears escalated significantly following service of the Complaint in this action.

For example, in mid-September 2023, a fictitious Instagram account was set up, purporting to be Chiaravanond's, on which certain of her private pictures were posted. Because Huynh had access to these private pictures, Chiaravanond believed that he or persons working at his direction set up this fake Instagram account. (Chiaravanond Decl., ¶ 12.)

In late September 2023, Chiaravanond received a call from Richard Li ("Li"), who is the founder and largest shareholder of FWD and is a very prominent businessperson in Asia. During this call, Li, in sum and substance, told Chiaravanond to go back to her marriage with Huynh. During this conversation, Li referred to Huynh as a tough guy, and said something to the effect of "if you don't go back, mark my words, you will regret this." Chiaravanond understood this to be a threat. (Chiaravanond Decl., ¶ 14.)

Following the service of this lawsuit on Chiaravanond, various additional incidents occurred which caused her to further fear for her physical safety.

For example, within days of the service of the papers on Chiaravanond, while she was driving her car she was closely followed by another car that was driving in a dangerous and aggressive manner that made Chiaravanond fear that she might be forced off the road by this car. (Chiaravanond Decl., ¶ 16.)

Additionally, in late January 2024 (shortly before she was served with the Complaint), Chiaravanond came to believe that her electronic devices, including her smart phone and laptop computer, had been hacked and improperly accessed and that her electronic communications were no longer secure. (Chiaravanond Decl., ¶ 17.)

Approximately ten days after the papers related to this action were served on Chiaravanond, she noticed a large drone aircraft flying within sight of her bedroom window. She became particularly alarmed when she observed this drone aircraft land in her backyard, next to her home's equipment room. This occurred at around midnight, and terrified Chiaravanond because she thought that the drone may carry explosive devices, and because she thought that persons operating the drone must be nearby surveilling her. (Chiaravanond Decl., ¶ 18.)

Based on these incidents, Chiaravanond became extremely scared and concerned about her physical safety, and no longer felt safe living alone in her Sedona home. Chiaravanond also felt isolated and unable to use her electronic devices to securely communicate with anyone. (Chiaravanond Decl., ¶ 19.) The very next morning, Chiaravanond left her home and drove to the town of Sedona where it appeared to her that she was being followed. Chiaravanond then rented a motel room in the town of Sedona and stayed in motel rooms for 13 nights, changing motel rooms every few days due to her fears for her physical safety. (Id.)

After 13 days of staying in motel rooms in Sedona, Chiaravanond briefly returned to her house in Sedona, but still did not feel safe and still believed that her devices were being compromised and that she was being surveilled and tracked. (Chiaravanond Decl., ¶ 20.) After approximately ten days back in her house, she left the area altogether, and drove to a location outside the state of Arizona. Once Chiaravanond arrived in this new location, she purchased a new phone so that she could communicate on what she believed to be a more secure device. (Id.)

As soon as Defendant Chiaravanond felt safe enough, she knew she needed to retain an attorney to advise her. In late March 2024, Chiaravanond spoke with a friend who referred her to her counsel Eric Levinrad ("Levinrad"). (*See* Chiaravanond Decl., ¶ 20.) On March 22, 2024, the same day he was retained, Levinrad immediately reached out to Plaintiff's counsel and requested that the parties stipulate to set aside the entry of default in this action. (Declaration of Eric Levinrad ("Levinrad Decl."), ¶ 2.) Counsel thereafter

spoke by telephone on March 26, 2024 and on March 27, 2024, Plaintiff's counsel communicated via email that Plaintiff would not stipulate to set aside the entry of default. (Id., ¶¶ 3-4.) This Motion is filed only a week later.

Ultimately, although the claims that have been alleged will not be resolved in connection with this Motion, the facts make clear that Defendants had good reason for not timely responding to the Complaint, and have meritorious, good faith defenses to Plaintiff's claims. In fact, Defendants intend to not only vigorously defend against the Complaint, but also to file counterclaims against Plaintiff for, among other things, a declaration of ownership rights over the real property at issue and all available claims arising from the malicious and harassing conduct that has caused Defendant Chiaravanond to fear for her personal safety.

### III.     THE LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(c) holds that a court "may set aside an entry of default for good cause[.]" As here, the court's discretion to act "is 'especially broad' when . . . it is entry of default that is being set aside, rather than a default judgment." *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000); *see also United States v. Signed Pers. Check No. 730 of Yubran S. Mesle ("Mesle"),* 615 F.3d 1085, 1089 n.1 (9th Cir. 2010) ("'[w]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context'"), *quoting Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009). Indeed, decisions on the merits of an action are strongly favored, such that judgments by default are considered a "drastic step appropriate only in extreme circumstances" and the "rules for determining when a default should be set aside are solicitous towards movants[.]" *Mesle*, 615 F.3d at 1089; *see also Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009) ("default judgments are disfavored; cases should be decided upon their merits whenever reasonably possible"); *In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991) ("where a defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to

set aside the judgment").

The Court must consider three factors to determine the existence of "good cause" for setting aside the entry of default: "(1) whether [the moving party] engaged in culpable conduct that led to the default; (2) whether [the moving party] had a meritorious defense; or (3) whether reopening the default judgment would prejudice [the nonmoving party]." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004). Here, for the reasons explained in full below, each of the factors weighs in favor of setting aside the clerk's entry of default and allowing this matter to proceed to a determination on the merits.

## IV. GOOD CAUSE EXISTS TO SET ASIDE THE ENTRY OF DEFAULT

### A. Defendants' Conduct Is Not Culpable

The first factor in the determination of "good cause" is whether the moving parties engaged in culpable conduct. "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (emph. original) (internal citations omitted). As explained by the Ninth Circuit Court of Appeal, "in this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.*, *quoting TCI Group Life Ins. Plan v. Knoebber ("Knoebber"),* 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). Stated another way, "culpable" means that the conduct of the moving party must be found to be "inexcusable," and conduct is not "culpable" if the moving party acted for good reason.

In *Knoebber*, for example, the defendant widow's knowing failure to respond to an action related to her late husband's life insurance was found to be excusable, and not culpable, because of her "exigent personal circumstances, especially her mental state, and because of her lack of familiarity with legal matters[.]" *Knoebber*, 244 F.3d at 699.

Specifically, at the time she failed to respond, the defendant had lost her husband less than a year earlier, was distraught and taking strong psychoactive mediations, and was in the process of selling her home and moving herself and her children across the country. *Id.*

There can be no dispute here that Defendants' failure to timely respond to the Complaint in this action is not culpable, as it was not done in bad faith or with any intention to take advantage of Plaintiff or manipulate the legal process. Defendant Chiaravanond was not represented by legal counsel at the time the responses came due and is not a legally sophisticated party with any knowledge of court procedure. As set forth in the accompanying Declaration of Chiaravanond, shortly after being served with the complaint, she was forced to flee her home due to fear for her physical safety, leaving virtually all of her personal belongings behind. Chiaravanond thereafter moved from motel room to motel room and had limited interactions with third persons for a period of thirteen days, before briefly moving back to her home. Only when she had relocated to a different area did Chiaravanond feel safe enough to obtain new electronic devices and engage legal counsel, who immediately took steps to seek the vacation of the defaults.

Thus, as was the case in *Knoebber*, at the time that Chiaravanond was served with the summons and complaint in this action, and in the period immediately following such service, Chiaravanond was dealing with "exigent personal circumstances, especially her mental state, and because of her lack of familiarity with legal matters" Defendants failed to timely respond to the Complaint. Defendants' conduct with respect to the entries of default was not culpable, and such defaults should therefore be vacated so that this case can be litigated on its merits.

**B.     Defendants Have Meritorious Defenses To Plaintiff's Claims**

The second factor in determining "good cause" to set aside an entry of default is whether the moving party has presented "specific facts that would constitute a defense." *Mesle*, 615 F.3d at 1094. The moving party's burden, however, "is not extraordinarily heavy." *Id.* (internal quotation omitted). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense:

'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default." *Id.* (internal citation omitted).

In this case, Defendants have presented facts demonstrating numerous defenses to the claims asserted by Plaintiff. For example:

- Title to the subject properties is held in the names of the LLC Defendants, which are solely owned by Defendant Chiaravanond, and in which Plaintiff holds no ownership interest whatsoever. Plaintiff will not be able to meet his evidentiary burden of establishing any interest to these properties contrary to title of record.

- There are no documents or other evidence documenting any agreement for Plaintiff to hold any interest in the subject properties or in the LLC's which hold title to those subject properties. To the contrary, Plaintiff knew that title to the subject properties would be held by LLC's set up by Chiaravanond, in which Chiaravanond would be the sole member.

- The monies which Plaintiff transferred to Chiaravanond which were allegedly used to purchase the subject properties were given to Chiaravanond in advance of her marriage to Plaintiff as dowry gifts, which, under South Eastern Asian tradition, with which both Plaintiff and Chiaravanond are familiar, are considered irrevocable gifts to the bride-to-be which constitute her own separate property, and which the bride-to-be is entitled to keep, even if the marriage does not go forward.

- Plaintiff and Chiaravanond had numerous conversations which made clear that they both understood that the moneys transferred to Chiaravanond were intended to be dowry payments and were irrevocable gifts from Plaintiff to Chiaravanond, which would constitute Chiaravanond's sole property.

- Chiaravanond made no statements or representations to Plaintiff, either orally or in writing, suggesting that Plaintiff would hold any ownership interest either in the subject properties or in the LLC's which would hold

legal title to such subject properties.

These allegations refute Plaintiff's contention that he is entitled to any interest in these properties or that he was defrauded in any way; and also establish various affirmative defenses, including the defenses of waiver, acquiescence and unclean hands. These allegations, if proven, would constitute meritorious defenses to Plaintiff's claims.[1] The existence of these meritorious defenses weigh strongly in favor of setting aside the entry of default, and additionally implicate the strong overriding principal described above that cases should be decided on their merits whenever possible.

### C. Plaintiff Will Not Be Prejudiced by the Vacation of the Defaults

The final factor in considering "good cause" to set aside the entry of default is the existence of prejudice to Plaintiff. None exists here. Specifically, "merely being forced to litigate on the merits cannot be considered prejudicial[.]" *Knoebber*, 244 F.3d at 701. Instead, "[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. . . . the standard is whether [plaintiff's] ability to pursue his claim will be hindered." *Id.* (internal quotation omitted), *citing Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984), *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) ("the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.").

Between the time the default at issue here were entered and the time this Motion is being filed, only a few weeks have passed and therefore there has not been any meaningful delay of this dispute. In fact, this Motion is brought within an objectively reasonable time – only a few weeks after the clerk's entry of default and mere days after Defendants retained counsel in this matter. As such, there is no basis on which Plaintiff could argue that he will face any increased difficulty in obtaining discovery or that his ability to pursue his purported claims will be hindered in any way if this Motion is granted. There is not

---

[1] Defendants' counsel has only just been retained, there has been no discovery, and investigation of Plaintiff's claims have only just begun. As such, Defendants reserve the right to assert any additional appropriate defenses not identified here.

even any significant cost associated with the minor delay that has occurred. Accordingly, there is no harm to Plaintiff in the event the entry of default is set aside other than requiring him to prove his case on the merits, the favored outcome anyway, and this factor also weighs heavily in favor of granting this Motion.

## V. CONCLUSION

All three factors in the "good cause" analysis strongly favor granting this Motion and setting aside the clerk's entry of default in this action. Defendants acted in good faith, possess meritorious defenses, and Plaintiff will not be prejudiced if this Motion is granted. Moreover, Defendants have made clear their desire to appear and actively litigate this case, and the law strongly favors an outcome resulting from an adjudication on the merits. Accordingly, Defendants respectfully request that the Court grant this Motion, set aside the entry of default of each Defendant, and allow Defendants 21 days from the date of the Court's order to respond to the Complaint.

DATED: April 3, 2024

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Patrick Emerson McCormick

By: _____/s/ Patrick Emerson McCormick_____
Patrick Emerson McCormick
Attorneys for Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC

| | |
|---|---|
| DATED:  April 3, 2024 | ERVIN COHEN & JESSUP LLP<br>Eric Levinrad<br>Amy S. Russell<br><br>By:    /s/ Eric Levinrad (with permission)<br>Eric Levinrad<br>Attorneys for Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC |

**PROOF OF SERVICE**

I, Daniela Rodriguez, declare:

I am a citizen of the United States and employed in Pima County, Arizona. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One South Church Avenue, Suite 2000, Tucson, Arizona 85701-1611.

On April 3, 2024, I electronically transmitted the following document:

    DEFENDANTS' NOTICE OF MOTION TO SET ASIDE ENTRY
    OF DEFAULT; MEMORANDUM OF POINTS AND
    AUTHORITIES

to the Clerk's office using the CM/ECF System for filing and served through the Notice of Electronic Filing automatically generated by the Court's facilities.

I declare under penalty of perjury under the laws of the State of Arizona that the above is true and correct.

Executed on April 3, 2024, in Tucson, Arizona.

                                            /s/ *Daniela Rodriguez*
                                            Daniela Rodriguez