# EXHIBIT A

FILED
Superior Court of California
County of Los Angeles

JUN 19 2018

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Joyia Young

Corrected Nunc Pro Tunc Per Minute Order Dated 7/9/18

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re Marriage of Allisa Chiaravanond,

    Petitioner,

v.

Schuyler M. Moore,

    Respondent.

Case No. BD654447

FINDINGS AND ORDER AFTER HEARING

    Petitioner Allissa Chiaravanond moves to confirm an arbitration award. Respondent Schuyler M. Moore moves to vacate it. Petitioner also seeks monetary sanctions against respondent. For the reasons stated herein, the court confirms the arbitration award and denies petitioner's request for sanctions.

## BACKGROUND

    This dispute concerns a Post-Marital Agreement and Transmutation Agreement (PMA) between the parties. About a month before the PMA was executed, respondent used $4,045,564 of his separate property funds to purchase the property located at 2457 Angelo Drive in Los Angeles (Angelo Property). The PMA expressly provided for a transmutation of $5 million of respondent's separate property to petitioner, whereby

1. Angelo Property became petitioner's sole and separate property, and respondent was required to make a $956,436 cash payment to petitioner within one year.

The PMA also stated that no community property would accrue during the marriage and that no spousal support would be payable if the parties divorced. These provisions are significant because respondent is a highly-compensated attorney, while petitioner does not generate much income.

The PMA further stated that any dispute regarding the agreement shall be submitted to binding arbitration. Pursuant to a stipulation executed after this dissolution proceeding commenced, the parties submitted the matter to Judge Melinda A. Johnson (ret.) of JAMS.

The main issue in the arbitration was whether the PMA was enforceable. Respondent argued that the agreement was unenforceable because he was subject to undue influence when he executed it. After a hearing, Judge Johnson issued a written arbitration award on April 20, 2018.

The arbitration award stated that the PMA was enforceable. In reaching this conclusion, Judge Johnson rejected respondent's undue influence defense.

## ANALYSIS

I.   *The Arbitrator Did Not Make An Error of Law*

A.   *The Arbitrator's Findings of Fact*

Respondent does not challenge Judge Johnson's findings of fact. The court shall summarize the arbitrator's factual findings here.

In January 2014, petitioner and respondent began cohabitating. Respondent paid almost all living expenses. Petitioner remained largely unemployed and assumed the role of "housewife."

On February 17, 2014, the parties signed a Cohabitation Agreement. Under the agreement, respondent promised to pay petitioner $5 million if he had any physical intimacy with another woman. Despite the agreement, petitioner remained continuously

in doubt of respondent's "loyalty" to her, and this issue was the subject of ongoing arguments. The couple ended their relationship and reconciled several times.

In 2015, respondent was diagnosed with ~~muscular dystrophy~~ multiple sclerosis. Petitioner was informed of the diagnoses.

On August 17, 2016, the parties married. About two weeks later, petitioner sent an email to respondent stating that in order to "move forward with a clean slate" and to "have a happy life together," respondent should pay her the $5 million he "owed" her under the Cohabitation Agreement. Respondent understood this to mean that without a $5 million payment, petitioner would divorce him.

The parties then began lengthy negotiations through their respective lawyers regarding the language of the PMA. The PMA was executed on November 3, 2016. The agreement expressly stated that the parties entered into the transaction voluntarily and that both parties were not subject to undue influence or duress.

Respondent "chose to enter into a post-nuptial agreement that transferred considerable wealth to [petitioner] rather than risk being divorced. Although he knew she had a right to divorce him, he hoped and believed she would not do so if he made an agreement of this type." (Arbitration Award, p. 6.) Respondent said he was "desperate," "loved her," and "thought she would stay and care for me." Respondent "would have signed anything to induce her to remain." (*Ibid.*) But respondent also acknowledged that when he executed the PMA, he understood that petitioner could divorce him at any time, with or without cause. (*Id.* at p. 8.)

After the PMA was executed, petitioner found women's underwear that did not belong to her in their residence. Respondent denied being unfaithful, and there is no evidence that he was unfaithful after signing the PMA.

In January 2017, respondent returned to her native Thailand. In February 2017, she filed for divorce.

B.  *The Arbitrator's Rulings on Mixed Questions of Fact and Law*

Undue influence is a common law defense to the formation of a contract. "In essence, undue influence consists of the use of excessive pressure by a dominant person over a servient person resulting in the apparent will of the servient person being in fact the will of the dominant person. The undue susceptibility to such overpersuasive influence may be the product of physical or emotional exhaustion or anguish which results in one's inability to act with unencumbered volution." (*Keithley v. Civil Service Bd. of the City of Oakland* (1970) 11 Cal.App.3d 443, 451.)

Family Code section 721, subdivision (b) provides that transactions between spouses "are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other." This statute effects how courts scrutinize post-nuptial contracts. "If one spouse secures an advantage from the transaction, a statutory presumption arises under section 721 that the advantaged spouse exercised undue influence and the transaction will be set aside." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 628-629.)

Judge Johnson made many rulings regarding mixed questions of fact and law, including following:

1.  The Cohabitation Agreement had already been terminated by the date of the marriage and the date of the PMA.

2.  The PMA gave respondent "some advantage," including retaining the full value of his law practice and not being obliged to pay spousal support.

3.  Petitioner was "greatly advantaged" by the PMA. "But she has rebutted the presumption [set forth in Family Code section 721] that that advantage was caused by undue influence. Most powerfully, the two and half month process through which the final draft was negotiated, the fact of independent counsel, and the inclusion in the draft of numerous recitations about the voluntariness of the agreement, must be controlling."

4.  Contrary to respondent's contention, the facts in this case are distinguishable from the facts in *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509.

Petitioner's "direct and veiled threats to divorce [respondent] do provide evidence of undue influence/coercion, but the intervening factor of independent counsel cannot be ignored."

5. "Undoubtedly at the time he signed the PMA, [respondent] was vulnerable – due to his health and his perceived 'need' to be married to [petitioner]. But vulnerability is not equal to involuntary action."

6. "The Arbitrator has largely accepted and relied on [respondent's] recitation of the facts leading up to the creation of the PMA, and thereafter. Nonetheless, as a matter of law, the Arbitrator concludes his will was not overcome, he was not unduly influenced and he voluntarily entered into the PMA. He had his own reasons for doing so, which were independent of the pressure exerted by [petitioner]."
(Arbitration Award, pp. 7-9.)

Throughout the arbitration award Judge Johnson expressed concern about petitioner's good faith and the equities in the case. But she concluded: "Despite the numerous concerns and questions raised above, at some point, intelligent, legally-represented people, who admittedly understood each and every term of the PMA, must be held to it." (Arbitration Award, p. 8.)

C. *Respondent's Legal Arguments*

Respondent places great emphasis on one phrase in a long arbitration award. Judge Johnson stated: "... *as a matter of law*, the Arbitrator concludes [respondent's] will was not overcome." (Arbitration Award, p. 9, italics added.) Based on this one phrase, respondent argues that the arbitrator "committed reversible error by not concluding as a matter of law that threats alone can constitute undue influence, even if (a) the transfer document is negotiated over several months, (b) the spouse making the transfer was advised by independent counsel, (c) there is no physical intimidation or yelling, and (d) the transfer document contains a self-serving statement that it is voluntary and not the result of duress or undue influence (collectively, the 'Factors')." (Respondent's 5/8/18 Mem., p. 10.)

Respondent also claims that the arbitrator "effectively held that the existence of the Factors established an irrebuttable conclusive presumption precluding a finding of undue influence under Seciton 721(b), notwithstanding any other evidence of undue influence, and this holding is a clear error of law." (Respondent's 5/8/18 Mem., p. 11.)

Respondent does not fairly and accurately describe the arbitration award. Judge Johnson never addressed the issue of whether "threats alone can constitute undue influence." Instead, she adjudicated respondent's undue influence defense by reviewing the totality of circumstances. The arbitrator also acknowledged that much of respondent's behavior in this case was inexplicable, and noted that human emotions "are complex, not always rational and highly individual." (Arbitration Award, p. 7.)

Nowhere in the arbitration award does Judge Johnson state that she *only* considered the so-called "Factors" or that the Factors established an "irrebuttable conclusive presumption." Indeed, the arbitrator stated the Factors "[m]ost powerfully" undermined respondent's undue influence defense. This statement clearly implies that the Factors were not the only facts she considered, just the most important ones.

After carefully considering all of the evidence and respondent's numerous arguments, Judge Johnson came to three major conclusions. The first is that the PMA was (or turned out to be) a much better deal for petitioner than it was for respondent, and thus triggered the presumption of undue influence. The arbitrator also found that respondent was under pressure by petitioner and vulnerable to her pressure. But Judge Johnson concluded that respondent's "will was not overcome," and that respondent had "his own reasons [for entering into the PMA], which were independent of the pressure exerted by [petitioner.]"

Respondent's reliance on *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736 (*Gonzalez*) is misplaced. There, the trial court set aside a marital settlement agreement on the ground that it was signed by the wife under duress. The trial court found that the husband threatened to illegally take the children away from the wife to Mexico, and to

leave the wife impoverished, if she did not sign the agreement. The Court of Appeal held that the trial court did not abuse its discretion. (*Id.* at p. 748.)

The *Gonzalez* court expressly recognized that the trial court's findings must be reviewed in light of the "totality of the circumstances." (*Gonzalez, supra*, 57 Cal.App.3d at p. 748.) The court did not focus on the so-called Factors. Likewise, Judge Johnson reviewed all of the circumstances, including the Factors.

*Gonzalez* did not compel Judge Johnson to rule, as a matter of law, in respondent's favor. The *Gonzalez* court did not hold that the trial court was *required* to make a finding of duress under the facts of that case. Rather, the appellate court merely concluded that the trial court's duress finding was not an abuse of discretion, i.e. the trial court did not make "an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

Respondent also argues that, by using the phrase "as a matter of law," Judge Johnson erroneously applied an objective test for undue influence instead of a subjective test. The court disagrees.

When the arbitration award is reviewed in its entirety, it is clear Judge Johnson understood her task was to determine whether respondent actually and subjectively had his will overcome, not whether a reasonable person in respondent's shoes would have been unduly influenced. As the court previously noted, Judge Johnson stated that human emotions are "highly individual." (Arbitration Award, p. 7.) The arbitrator also recognized respondent had "his own reasons" for entering into the PMA, and that respondent admitted he understood the terms of the agreement. Judge Johnson further acknowledged respondent's "perceived 'need' to be married." Nowhere in the arbitration award does Judge Johnson discuss an objective standard for undue influence.

D.   *Petitioner's Motives and Good Faith*

Underlying respondent's arguments is an appeal to the court's sense of fairness and justice. Respondent's counsel flatly calls petitioner a "gold digger." (Respondent's 5/8/10 Mem., p. 3.) Although respondent has not expressly challenged the validity of the

PMA (or the marriage) on the ground that petitioner falsely professed her love for him, he certainly questions petitioner's motives. Respondent goes so far as to attach photographs to his papers purporting to show that shortly after commencing these divorce proceedings, petitioner "gleefully celebrated her bilking" of respondent at a party in Thailand. (Respondent's 5/8/18 Mem., pp. 5-6.)

Judge Johnson, too, stated that "the chronology of the facts in this case could raise a serious concern about the good faith with which Chiaravanond entered into the PMA." (Arbitration Award, p. 8.) Petitioner denies that she acted in bad faith, and dismisses questions about her motives as ad hominem attacks.

Ironically, the PMA ended petitioner's economic incentive to stay in the marriage. If the agreement had not been executed, the longer the marriage lasted, the more community property petitioner would have accumulated, and the better her potential spousal support claim would have been.

Whether petitioner entered into the PMA or the marriage in good faith is not before the court. In any case, the court " 'should not attempt to regulate all aspects of the human condition.' " (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 959.) It is not the business of the court to decide whether petitioner truly loved respondent or exploited him for his money. (*Ibid.*)

The principal questions the court must decide are more mundane: Did the arbitrator make an error of law and, if so, was that error ground to vacate the arbitration award? The court answered the first question in this section, and shall answer the second in the next portion of this order.

II. *The Arbitrator's Alleged Error of Law is Not Ground for Vacating the Arbitration Award*

Even assuming Judge Johnson made an error of law, the court would deny respondent's motion to vacate the arbitration award. The arbitrator's alleged error is not ground to vacate the award under the circumstances of this case.

An arbitration award can only be vacated if one or more of several express statutory grounds are established. (Code Civ. Proc., § 1286.2.) One ground, of relevance here, is that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (*Id.* at § 1286.2, subd. (a)(4).)

In *Moncharsh v. Heily & Blair* (1992) 3 Cal.4th 1 (*Moncharsh*), the court held that if arbitrators make an error in law, they have *not* exceeded their powers. (*Id.* at p. 28.) In other words, an arbitrator's legal and factual determinations are final and, even if erroneous, are not subject to judicial review. (*Id.* at p. 31.)

But the *Moncharsh* court left the door open for an exception to this rule, recognizing that "there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Moncharch, supra*, 3 Cal.4th at p. 32.)

In *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 (*Pearson*), the court identified a set of circumstances where the limited and narrow exception applied. There, an employee sued his employer for age discrimination in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). The plaintiff's employment contract included an arbitration clause and a provision requiring him to commence arbitration within one year of the date the dispute arose. (*Pearson*, at p. 671.) The contractual time-limit was shorter than the statute of limitations provided for FEHA claims. (*Ibid.*).

The arbitrator in *Pearson* made an error in law by misinterpreting the tolling provisions of Code of Civil Procedure section 1281.12. Under a proper interpretation of the statute, plaintiff's claim was not time-barred. (*Pearson, supra*, 48 Cal.4th at p. 675.)

The *Pearson* court determined that the arbitrator's "legal error misconstrued the *procedural framework* under which the parties agreed the arbitration was to be

conducted, rather than misinterpreting the law governing the claim itself." (*Pearson, supra*, 48 Cal.4th at pp. 679-680, italics added.) The court held "that when, as here, an employee subject to a mandatory employment-arbitration agreement is unable to obtain a hearing *on the merits* of his FEHA claims, or claims based on other unwaivable statutory rights, because of an arbitration award based on a legal error, the trial court does not error in vacating the award." (*Id.* at p. 680, italics added.)

The *Pearson* court expressly declined to adopt a broader rule urged by plaintiff and amicus curiae and stated that it was only addressing the particular case before it. (*Pearson, supra*, 48 Cal.4th at p. 679.) Respondent argues that the *Pearson* holding should be applied to the facts of this case and that under *Pearson*, the arbitration award must be vacated. In particular, respondent contends that the arbitration award must be vacated because it is based on a clear error of law regarding "an unwaivable statutory right," namely respondent's right to the benefits of a fiduciary relationship under Family Code section 721. The court rejects this argument.

Unlike *Pearson*, in this case the arbitrator adjudicated the merits of respondent's undue influence defense. Respondent had his day in arbitration, and lost. Judge Johnson's alleged legal error regarding undue influence was, at most, a plain misinterpretation of the law governing the defense. This kind of alleged error is not a basis to vacate an arbitration award.

Respondent also relies on *Loving & Evans v. Block* (1949) 33 Cal.3d 603 (*Loving*). In *Loving*, an unlicensed contractor sought to recover damages for breach of contract from a property owner. The arbitrator ruled in favor of the contractor. The court held that the arbitrator exceeded his powers because the entire underlying contract between the parties was in violation of public policy, "illegal and void." (*Id.* at pp. 607, 609.)

The present case is distinguishable from *Loving* because it does not involve an illegal contract. The parties here were free to enter into a transmutation agreement, and there is no public policy against such contracts. Indeed, respondent concedes that "he

never claimed that the PMA was illegal." (6/12/18 Sur-Reply, p. 3.)   *Loving* thus lends no support to respondent's position.

  III. *Respondent Waived Any Argument That the Arbitrator Did Not Have the Power to Decide Whether the PMA Was Enforceable*

  In his motion to vacate the arbitration award, respondent did not question the power of the arbitrator to decide whether the PMA was enforceable. He also did not raise that issue at the arbitration itself and, in fact, stipulated to JAMS arbitration "concerning the terms and enforceability of the [PMA]."

  In his response to Ms. Chiaravanond's petition to confirm arbitration, Mr. Moore argued, for the first time, the court must make its own "independent determination of whether the PMA is valid." Then, in his "sur-reply," respondent argued that the validity of the PMA was an issue "for the court, not, an arbitrator, to decide."

  Respondent's attempt to challenge the arbitrator's power to adjudicate the enforceability of the PMA comes too late. He has waived this claim. (See *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372.)

  Respondent contends that the California Supreme Court rejected petitioner's waiver argument in *Loving* and *Franklin v. Nat C. Goldstone Agency* (1949) 33 Cal.2d 628 (*Franklin*). This is simply not true. *Loving* and *Franklin* were cases in which unlicensed contractors were attempting to enforce illegal contracts. The court declined to affirm the arbitration awards even though the losing customers had stipulated to arbitration. As stated above, this case is distinguishable because it does not involve an illegal contract.

IV. *Sanctions*

Petitioner seeks monetary sanctions against respondent pursuant to Code of Civil Procedure sections 128.7 and 1286.2, subdivision (b), and Family Code section 271. The court denies this request. Although the court has rejected respondent's arguments on the merits, respondent did not assert frivolous arguments or otherwise engage in conduct that warrants sanctions under the particular facts and circumstances of this case.

IT IS SO ORDERED

Date: June 19, 2018

_____
Armen Tamzarian
JUDGE OF THE SUPERIOR COURT