Patrick Emerson McCormick (AZ Bar No. 037036)
  PMcCormick@lewisroca.com
**Lewis Roca Rothgerber Christie LLP**
One South Church Avenue, Suite 2000
Tucson, Arizona 85701
Telephone: (520) 622-2090
Facsimile: (520) 622-3088

Eric Levinrad (CA Bar No. 169025/Admitted AZ PHV)
  elevinrad@ecjlaw.com
Amy S. Russell (CA Bar No. 284131/Admitted AZ PHV)
  arussell@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Defendants Alissa
Chiaravanond, Pacific Shangrila LLC,
Cathedral Shangrila LLC, Nido di Stelle LLC,
and ILU LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA, PRESCOTT

| | |
|---|---|
| PHONG THANH HUYNH,<br><br>  Plaintiff,<br><br>  v.<br><br>ALISSA CHIARAVANOND, an individual; PACIFIC SHANGRILA LLC, a Nevada limited liability company; CATHEDRAL SHANGRILA LLC, a Nevada limited liability company; NIDO DI STELLE LLC, a Nevada limited liability company; and ILU LLC, an Arizona limited liability company,<br>,<br>  Defendants. | Case No. 3:23-cv-08622-JJT<br><br>The Hon. John J. Tuchi, Courtroom 505<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS AND FOR FEES AND COSTS** |

11369315.2

REPLY IN SUPPORT OF MOTION TO EXPUNGE *LIS PENDENS*

## I. INTRODUCTION

It is a fundamental principle of corporate jurisprudence that a business entity is an entity distinct from its members, and that a member of a limited liability company does not acquire a property interest in that limited liability company's real or other property. Plaintiff cites no authority that brings this bedrock principle into question.

Here, a review of the factual allegations of the Complaint – as opposed to the conclusory allegations and prayers for relief on which Plaintiff's Opposition relies – make clear that Plaintiff's claims are each based on the contention that he was fraudulently promised an ownership interest in the LLCs that hold title to the real properties, rather than an interest in the real properties themselves.

These claims, therefore, do not affect title to the real properties. Even if Plaintiff prevails and is held to hold an ownership interest in the LLCs as he claims to have been promised, title to the real properties will still be held by the LLCs, not by Plaintiff himself. As such, Plaintiff's claims do not support the *lis pendens*.

## II. ARGUMENT

### A. It is Appropriate for the Court to Look Beyond the Face of the Complaint to Determine Whether the Action is One Affecting Title to Real Property to Support a *Lis Pendens*

As a preliminary matter, in determining whether a *lis pendens* has been properly recorded, the Court's inquiry does not begin and end with the face of the pleading itself. Instead, the Court should look beyond the face of the pleading to determine whether "the claim that the underlying action is one affecting title to real property has **no arguable basis or is not supported by any credible evidence**." *Evergreen W., Inc. v. Boyd*, 167 Ariz. 614, 621, 810 P.2d 612, 619 (Ct. App. 1991) (emphasis added). "[W]hile this determination may require the trial court to look beyond the pleadings, it should not involve a decision on the merits of the underlying action." *Id.*; *see also Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 218, 745 P.2d 962, 965 (App. 1987) (rejecting argument that "a court may look no further than the action on its face to determine whether a *lis pendens* is

1 groundless").

2 As such, Plaintiff's legal conclusions in his Complaint claiming an ownership interest in the properties are not, on their own, sufficient to support the maintenance of the *lis pendens*, particularly in light of Plaintiff's factual allegations to the contrary.

### B. A Review of the Allegations of the Complaint Makes Clear that Plaintiff's Claims Are Based Entirely on an Alleged Promise of an Ownership Interest in the LLCs, Which Does Not Support a *Lis Pendens*

In his Opposition, Plaintiff concedes – as he must – that *lis pendens* are only appropriate in actions effecting title to real property. Additionally, Plaintiff cites no authority holding that a person's alleged investment in an entity, even if that investment is explicitly intended for the purchase of real property, somehow entitles the investor to an interest, equitable or actual, in the title to that real property. That is because such a finding runs counter to the well-established jurisprudence in Arizona and elsewhere holding that a person with an ownership interest in a business entity does not hold a direct interest in the entity's real property or other assets. *See e.g. Cruz v. Wallace*, 2021 WL 8534021, at *2 (Ariz. Super. Oct. 08, 2021) ("But a membership interest in a LLC does not equate to owning the LLC's assets, contrary to Wallace's argument").

Central to Plaintiff's claims in this action is the allegation that Plaintiff was falsely promised an interest in the LLCs that hold title to the properties, not to the properties themselves. This promise was allegedly made as part of the claimed "Defalcation and Embezzlement Plan."

In this regard, the Complaint alleges that pursuant to this purported plan, Plaintiff "was induced" to hold certain properties in four LLCs, with Defendant Cathedral holding title to the Sedona House 1 and Nido holding title to the Sedona House 2 and Sedona Land (Complaint (Doc. 1), ¶ 34). The Complaint further alleges that Plaintiff was promised an ownership interest in these LLCs. According to Plaintiff, this purported "Defalcation and Embezzlement Plan" "represented that Defendants Pacific, Cathedral, Nido and ILU were to be wholly owned by the Trilliant Group, Ltd., a BVI company set up in Singapore . . . ,

*which would be owned by an offshore Trust/LLC solely owned and controlled by Phong.*" (Complaint (Doc. 1), ¶ 33 (Emphasis added.).)

Plaintiff's claim that he was promised an ownership interest in the LLCs that hold title to the real properties (rather than to the properties themselves) is central to this case and permeates each and every one of Plaintiff's claims in this action.

Each of Plaintiff's claims incorporates by reference the allegations related to the claimed Defalcation and Embezzlement Plan, by which Plaintiff was allegedly promised an interest in the LLCs. (*See* Complaint (Doc. 1), ¶¶ 92, 101, 112, 118, 129, 140, 149, 157, 165, 169, 176, 182, 191 and 197.)

Additionally, Plaintiff's claims are expressly based on the alleged Defalcation and Embezzlement Plan and the claimed promise of an ownership interest in the LLCs. For example, the Complaint alleges that "[d]espite her contrary representations to Phong, defendant Chiaravanond solely manages and controls Trilliant Group." (Complaint (Doc. 1), ¶ 45.) Likewise, the Complaint alleges that title to the Sedona Properties is held by Cathedral and Nido (paragraphs 48, 54 and 58), but further alleges that "[t]o date, . . . Chiaravanond has not amended [Cathedral's and Nido's] Articles of Organization to include Trilliant Group or Phong as Defendant [Cathedral's and Nido's] sole member." (Complaint (Doc. 1), ¶¶ 49, 59.)

Similarly, the complaint alleges that in January 2020, "Phong transferred $3,500,000 from his personal bank account . . . to the Trilliant Group for the purposes of investing *consistent with Defendant Chiaravanond's Defalcation and Embezzlement Plan*." (Complaint (Doc. 1), ¶ 39 (Emphasis added); *see also Id*. at ¶ 41 (alleging that from August 2020 to October 2021, Phong transferred $1,320,000 to Chiaravanond "to further Defendant Chiaravanond's Defalcation and Embezzlement [Plan]. . .").)

In Plaintiff's claim for Constructive Fraud (Count V), Plaintiff again invokes the claimed Defalcation and Embezzlement Plan, alleging that "Defendant Chiaravanond *represented the Defalcation and Embezzlement Plan* with the intent to defraud and induce Phong to transfer $15,455,000 to her and the Corporate Defendants' control." (Complaint

**1** (Doc. 1), ¶ 134 (Emphasis added).) Thus, Plaintiff's claim for constructive fraud rests on
**2** the claim that he was induced to transfer moneys based on the claimed promise that he
**3** would hold an ownership interest in the LLCs, not based on any promise that he would
**4** hold title to the properties themselves.

**5**     **C.     Plaintiff's Claimed Entitlement to a Constructive Trust Does Not**
**6**             **Support the Lis Pendens, Because a Constructive Trust is Unavailable**
**7**             **Where an Adequate Legal Remedy is Available**

**8**     Plaintiff's argument that his allegations that he is entitled to the imposition of a
**9** constructive trust support the *lis pendens* is without merit for several reasons.

**10**     First, under Arizona law, "[t]he imposition of a constructive trust is unavailable,
**11** and in fact improper, when an adequate remedy at law is available to the harmed party."
**12** *ML Servicing Co. v. Coles*, 235 Ariz. 562, 569, 334 P.3d 745, 752 (Ct. App. 2014). In this
**13** case, an adequate remedy at law in the form of damages is readily available and expressly
**14** requested by Plaintiff. (*See, e.g.* Complaint (Doc. 1) at ¶ 145 (claiming damages as a result
**15** of Defendants' alleged fraudulent inducement.)) As a result, no constructive trust lies here.

**16**     Additionally, even if a constructive trust could be asserted notwithstanding the
**17** existence of an adequate remedy at law, there is no indication in Plaintiff's Complaint that
**18** a constructive trust over the ***properties*** is sought. To the contrary, given the allegations on
**19** which Plaintiff's claim are premised, a constructive trust over the ***ownership interest in***
**20** ***the LLCs***, or perhaps of the moneys generated by the properties, appears to be the subject
**21** of this constructive trust claim, rather than the properties themselves.

**22**     **D.     Plaintiff's Quiet Title Claim – Like His Other Claims – is Based on an**
**23**             **Alleged Promise of an Ownership Interest in the LLCs, and Does not**
**24**             **Support Plaintiff's Lis Pendens**

**25**     Plaintiff's Quite Title claim (Count XIII), like Plaintiff's other claims, incorporates
**26** and is inextricably based on Plaintiff's allegation that he was defrauded into sending
**27** money for the purchase of the properties, which, if true, is a personal property interest
**28** which does not affect title to the properties.

ERVIN COHEN & JESSUP LLP

1   This argument cannot be summarily dismissed as being based on a "false premise,"
as Plaintiff urges. (Opp'n. at 10.) Far from being a false premise, Phong's contention that
Defendant Chiaravanond defrauded him into giving money in exchange for a membership
interest in Nido and Cathedral is plainly alleged in and throughout the Complaint and is
expressly incorporated into the thirteenth claim for Quiet Title. (*See* Complaint (Doc. 1),
¶¶ 33, 39, 41, 45, 49, 55, 191.) And, substantively, the theory of the Complaint is that
Plaintiff paid the moneys used to purchase the properties because he was defrauded by the
alleged "Defalcation and Embezzlement Plan" and its promise that he would be given an
ownership interest in the LLCs holding title to the properties.

When viewed in the context of the allegations of the Complaint incorporated into
the Quiet Title claim, it is clear that Plaintiff's conclusory claim to an interest in the
Investment Properties is in fact based on his claim to an interest in the LLCs that hold title
to the properties, not to the properties themselves. And, as noted above, Plaintiff offers no
authority in support of the premise that an investor has an interest, equitable or otherwise,
in the assets of a corporate entity purchased with the investor's funds, which would be
contrary to fundamental principles of corporate jurisprudence.

Certainly, if Plaintiff were successful in this claim he may acquire an ownership
interest in the LLCs. But that would not affect title to the properties, which would still be
held by the LLCs. As such, it is not a claim that affects title to real property, and does not
support the *lis pendens* that have been improperly recorded.

E.  **The Constructive Fraud, Fraud, Resulting Trust and Constructive Trust Claims Likewise Do Not Support Plaintiff's *Lis Pendens***

There is also no merit to Plaintiff's contention that his claims for constructive fraud,
fraud, resulting trust and constructive trust support the *lis pendens*. In support of this
position, Plaintiff relies heavily on the fact that he has requested the imposition of a
constructive trust in connection with these claims. (*See* Opp'n. at 9.) This argument is
misplaced, however, because, as noted above, under Arizona law, "[t]he imposition of a
constructive trust is unavailable, and in fact improper, when an adequate remedy at law is

available to the harmed party." *ML Servicing Co. v. Coles*, 235 Ariz. 562, 569, 334 P.3d 745, 752 (Ct. App. 2014).

Additionally, Plaintiff's Constructive Fraud and Fraud claims are based entirely on the purported "Defalcation and Embezzlement Plan," including its alleged promise to Plaintiff that he would hold an ownership interest in the LLCs. (*See* Complaint, ¶ 134 (Constructive Fraud Claim alleges that "Defendant Chiaravanond represented the4 Defalcation and Embezzlement Plan with the intent to defraud and induce Phong to transfer $15,455,000 to her the Corporate Defendant control"); and ¶ 145 (Fraud claim alleges that "[a]s a result of Defendant Chiaravanond's fraudulent inducement, Phong has suffered consequent[ial] and proximate damages").) Additionally, as discussed above, both of these claims seek the recovery of monetary damages, making it further clear that they cannot support the *lis pendens* that Plaintiff has recorded.

Plaintiff's claim for resulting trust (Count XI) also does not support the *lis pendens* that Plaintiff has recorded. Under Arizona law, "[a] resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." *Wheel of Life Foundation, Inc. v. Ladwig*, 15 Ariz.App. 523, 526, 489 P.2d 1225, 1228 (1971).

"A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise. Restatement (Second) of Trusts s 441 (1959). [¶] Two examples given in Comment (a) to Section 441 are where the payor intended to make a gift of the property to the transferee and where he intended to make a loan of the purchase price to the transferee." *Id*. at 526–27.

In this case, the Complaint alleges in conclusory fashion that "Chiaravanond wrongfully induced Phong to transfer the Investment Properties and the Property Maintenance Investment to Defendant Chiaravanond." Complaint, ¶ 177. But this

conclusory allegation is wholly at odds with the allegations that: the alleged Defalcation and Embezzlement Plan was for the properties to be held by the LLC (Complaint (Doc. 1), ¶ 32-35); Plaintiff transferred the purchase money for the Sedona House 1 to the Trilliant Group, not to Chiaravanond or the seller, and not to an entity Phong ever expected to hold title to the Properties (*Id.*, ¶ 39)[1]; and Plaintiff transferred the moneys with the expectation and understanding that the LLCs would hold title to the properties based on alleged promises that he would hold an ownership interest in the LLCs (*Id.*, ¶¶ 33-34).

Even accepting Plaintiff's allegations as true, Plaintiff never believed that he would hold title to these Properties, but rather that the LLCs – in which Plaintiff claims to have been promised an ownership interest – would hold the title (which Plaintiff concedes is the current state of affairs). Based on these allegations, no resulting trust arises. As such, the resulting trust claim, like the constructive fraud, fraud and constructive trust claims, do not support the maintenance of the *lis pendens*.

The cases cited by Plaintiff are distinguishable, and do not support the maintenance of the *lis pendens*. *Turley v. Ethington*, 213 Ariz. 640, 643, ¶ 9, 146 P.3d 1282, 1285 (App. 2006), did not involve a *lis pendens*, and involved allegations that plaintiff was promised an interest in the real property, not an interest in entities that would hold title to the properties.

In *Coventry*, *supra*, while the Court found that that "[a]n equitable lien, when imposed to prevent unjust enrichment, is a special form of a constructive trust, and that an equitable lien on real property is an action affecting title to that property," (*Coventry*, *supra* at 218), the *Coventry* court also made clear that "this does not end our inquiry for purposes of determining whether recording a notice of lis pendens in such an action is

---

[1] The complaint also alleges that Plaintiff transferred $4,900,000 to Pioneer Escrow to be used for the purchase of the Sedona House 2, and that Chiaravanond contributed $300,000 from her bank account to make up the balance of the purchase price. (Complaint (Doc. 1), ¶¶ 52-53.) The Complaint alleges that Plaintiff transferred $525,000 to Pioneer Escrow, which was used for the purchase of the Sedona Land. (*Id.*, ¶ 57.)

1  groundless." The *Coventry* court rejected the argument that "a court may look no further
2  than the action on its face to determine whether a lis pendens is groundless," and that "if
3  the action has the potential to affect title to real property, the lis pendens cannot be
4  considered groundless." *Id*. Instead, the *Coventry* Court held that neither the purposes of
5  A.R.S. § 12–1191 nor A.R.S. § 33–420 would be served by permitting parties to record a
6  notice of *lis pendens* to recover a debt merely by characterizing the action as one seeking a
7  constructive trust or equitable lien." *Id*. The same conclusion is true here, where Plaintiff
8  has asserted the *lis pendens* at issue to secure the monetary recovery to which he claims he
9  is entitled based on the alleged fraud claims involving his purported interest in the LLCs.

10 *Warren v. Whitehall Income Fund 86,* 170 Ariz. 241, 244 (App. 1991), simply
11 stands for the uncontroversial proposition that "A.R.S. § 12–1191 permits the filing of a lis
12 pendens in an action affecting title to real property." That case, however, did not involve a
13 situation where title to properties was held by LLCs in which the Plaintiff claimed he had
14 been promised an ownership interest, and is otherwise altogether inapposite.

15 *Pool v. Peil,* 22 Ariz. App. 417, 528 P.2d 168 (1974), is also not on point. In *Pool,*
16 the evidence elicited at trial established that the plaintiffs alleged that they gave money to
17 defendants for the purchase of the property for their benefit and ownership. Based on this
18 evidence, the trial court found that "the residence had been acquired and continuously held
19 by the [Defendants] in trust and ordered that title to the residence be conveyed to the
20 [Plaintiffs]." Plaintiff's complaint here pleads the opposite: namely that Plaintiff gave the
21 money to the defendant LLCs for the expressed purpose of having the LLCs purchase and
22 own the Properties. At no point does Plaintiff allege that he expected or was promised joint
23 ownership in the Properties. To the contrary, Plaintiff alleges that he was promised an
24 ownership interest in the LLCs, which hold title to the Properties. This allegation is
25 inconsistent with a resulting trust in Plaintiff's favor.

26 **F.  <u>The Purported Evidence Cited by Plaintiff Does Not Compel a Different
27     Conclusion</u>**

28 Contrary to Plaintiff's contention, the purported evidence cited by Plaintiff does not

---

11369315.2                                    8
REPLY IN SUPPORT OF MOTION TO EXPUNGE *LIS PENDENS*

1  support the maintenance of the *lis pendens*, given that Plaintiff's Complaint does not affect
2  title to real property, but rather asserts personal property claims. The evidence cited by
3  Plaintiff consists of: Plaintiff referring to the transfers that he made as being for an
4  "investment;" Plaintiff being copied on emails related to the purchase of one of the
5  properties in Malibu and one of the properties in Sedona by their respective LLCs; and
6  Plaintiff exchanged emails with a realtor in Arizona related to the inspection of one of the
7  Sedona properties and with the homeowners association for that property.

8       To the extent that these communications are relevant at all, they do not establish
9  that Plaintiff understood that he, rather than the LLCs, would be on title to the properties,
10 as the Complaint alleges. As such, this evidence does not overcome the claims asserted in
11 the Complaint, which establish that Plaintiff was allegedly promised an interest in the
12 LLCs, not in the properties themselves.

13      **G.**    **Plaintiff's Request for Leave to Amend His Complaint is Procedurally**
14            **Improper and Does not Warrant Denial of the Motion to Expunge the**
15            ***Lis Pendens***

16      For the reasons discussed above, Plaintiff's Complaint does not affect title to real
17 property and therefore does not support the *lis pendens* which Plaintiff has asserted. As
18 such, those *lis pendens* should be expunged as requested.

19      Plaintiff asks for leave to amend his Complaint in an effort to avoid the
20 expungement of the *lis pendens*. First, this request is procedurally improper and does not
21 meet the requirements of L.R.Civ. 15.1, which requires that a motion to amend "attach a
22 copy of the proposed amended pleading as an exhibit to the motion or stipulation, which
23 must indicate in what respect it differs from the pleading which it amends, by bracketing or
24 striking through the text to be deleted and underlining the text to be added."

25      In any event, the expungement of the *lis pendens* should not be delayed pending
26 Plaintiff's amendment of his complaint, particularly given the allegations of his existing
27 Complaint, which allege personal property claims, do not support the *lis pendens*.
28

11369315.2　　　　　　　　　　　9
REPLY IN SUPPORT OF MOTION TO EXPUNGE *LIS PENDENS*

### H. An Award of Attorneys' Fees is Warranted

Contrary to Plaintiff's assertion, A.R.S. § 33-420(C) does not require the prosecution of a counterclaim prior to entry of an award of fees and cost. A.R.S. ¶ 33-420(C) provides that a person who records a *lis pendens* knowing that the "document is . . . invalid" is liable to the property owner for reasonable attorney fees and costs "if he wilfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property." This section does not require that an action or counterclaim be filed as a predicate to the recovery of such attorneys' fees and costs. Consistent with the plain reading of this section, courts routinely consider requests for an award of attorneys' fees and costs incurred in connection with a successful motion to expunge a *lis pendens*, absent a counterclaim for such fees. *See e.g.*, *Thomas v. Wells Fargo Bank, N.A.*, 2011 WL 3809922 (D. Ariz. Aug. 29, 2011) (court granted defendant's motion to quash *lis pendens* and awarded defendant its attorneys' fees).

Here, Plaintiff improperly maintained the *lis pendens*, despite knowing that these l*is pendens* are groundless, given that the Los Angeles Superior Court expunged Plaintiff's *lis pendens* based on a substantively identical pleading.[2] Under these circumstances, an award of attorney's fees and costs in favor of defendants is warranted and appropriate.

### III. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Defendants' moving papers, Defendants respectfully request that their motion be granted.

/ / /

/ / /

---

[2] Plaintiff states that the Los Angeles Superior Court's ruling expunging the *lis pendens* "remains subject to appeal." Opp'n at 14. In fact, that ruling could only have been appealed by a petition for writ of mandate brought within twenty days of written notice of the Los Angeles Superior Court's ruling. *See* Cal. Code Civ. Proc. § 405.39 (Expungement order can only be appealed by petition for writ of mandate filed within twenty days of notice of ruling.) Plaintiff's time to appeal this ruling has long since expired.

| | | |
|---|---|---|
| 1 | DATED:  October 15, 2024 | LEWIS ROCA ROTHGERBER CHRISTIE LLP |
| 2 | | Patrick Emerson McCormick |
| 3 | | |
| 4 | | By:     */s/ Patrick Emerson McCormick* |
| 5 | | Patrick Emerson McCormick |
| 6 | | Attorneys for Defendants |
| 7 | DATED:  October 15, 2024 | ERVIN COHEN & JESSUP LLP |
| 8 | | Eric Levinrad |
| 9 | | Amy S. Russell |
| 10 | | |
| 11 | | By:     */s/ Eric Levinrad* |
| 12 | | Eric Levinrad |
| | | Attorneys for Defendants |

11369315.2

11

REPLY IN SUPPORT OF MOTION TO EXPUNGE *LIS PENDENS*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2024, I electronically filed the foregoing **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS AND FOR FEES AND COSTS** to the Clerk's office using the CM/ECF System for filing and served through the Notice of Electronic Filing automatically generated by the Court's facilities.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 15, 2024, in Beverly Hills, California.

                                    */s/ Avesha Rector*
                                    Avesha Rector

| | |
|---|---|
| **SERVICE LIST** | |
| Devin Sreecharana, Esq.<br>Trevor Wainfeld, Esq.<br>**MAY, POTENZA, BARAN & GILLESPIE, P.C.**<br>1850 North Central Ave., Suite 1600<br>Phoenix, Arizona 85021<br>Telephone: (602) 252-1900<br>Facsimile: (602) 252-1114<br>Email:  devin@maypotenza.com<br>        twainfeld@maypotenza,com | *Attorneys for Plaintiff* |
| Moshe Y. Admon, Esq.<br>**ADMON LAW FIRM, PLLC**<br>300 Lenora St., #4008<br>Seattle, Washington 98121<br>Telephone:  (206) 739-8383<br>Email: jeff@admonlaw.com | *Attorneys for Plaintiff* |
| Patrick Emerson McCormick, Esq.<br>**LEWIS ROCA ROTHGERBER CHRISTIE LLP**<br>One South Church Avenue, Suite 2000<br>Tucson, Arizona 85701<br>Telephone: (520) 622-2090<br>Facsimile: (520) 622-3088<br>Email: PMcCormick@lewisroca.com | *Attorneys for Defendants* |