**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh, | No. CV-23-08622-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Alissa Chiaravanond, *et al.*, | |
| Defendants. | |

At issue is Defendants' Amended Motion to Expunge Lis Pendens (Doc. 50, Am. Mot.), to which Plaintiff filed a Response (Doc. 51, Resp.) and Defendants filed a Reply (Doc. 52, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. LRCiv 7.2(f). For the following reasons, the Court denies Defendants' Motion.

**I.    BACKGROUND**

Plaintiff Phong Thanh Huynh and Defendant Alissa Chiaravanond were briefly married to each other. (Doc. 1, Compl. ¶ 75.) Around 2020, while the couple was still dating, Chiaravanond allegedly convinced Plaintiff to invest his money in the U.S. real estate market based on Chiaravanond's representations that "she was very familiar with" the market and "had experience identifying highly lucrative U.S.-based residential investments." (Compl. ¶ 28.) As a U.S. citizen, Chiaravanond also represented that "it would be much easier for [Plaintiff] to purchase U.S. properties through limited liability companies ('LLCs'), which . . . Chiaravanond would manage exclusively for [Plaintiff's]

benefit." (Compl. ¶ 29.) Chiaravanond's alleged objective was to "help [Plaintiff] create a retirement nest egg portfolio of profitable real estate, so that if the two eventually married, those properties would provide their collective financial security." (Compl. ¶ 30.) Chiaravanond then presented Plaintiff with an investment plan that Plaintiff now characterizes as a "Defalcation and Embezzlement Plan." (Compl. ¶ 31.)

Through the Plan, four LLCs would be created—Defendants Pacific Shangrila LLC, ILU LLC, Cathedral Shangrila LLC, and Nido di Stelle LLC—which would be wholly owned by the Trilliant Group, Ltd., a British Virgin Islands company set up in Singapore that itself would be wholly owned by an offshore trust/LLC owned and controlled by Plaintiff. (Compl. ¶ 33.) "Chiaravanond induced [Plaintiff] to hold the Investment Properties he purchased in four LLCs: (1) Defendant Pacific would hold the Malibu House, (2) Defendant ILU would hold the Malibu Land, (3) [Defendant] Cathedral would hold the Sedona House 1, and (4) [Defendant] Nido would hold Sedona House 2 and the Sedona Land." (Compl. ¶ 34.) ILU, an Arizona LLC, would be used "to operate/manage the Investment Properties' expenses, including renovations and day-to-day expenses such as landscaping, and the Investment Properties' rental revenues." (Compl. ¶¶ 35–36.) In accordance with the Plan, in January 2020, Plaintiff initially transferred $3.5 million from his account to the Trilliant Group for the real estate investment. (Compl. ¶ 39.) From August 2020 to October 2021, he transferred another $1.3 million to Chiaravanond's personal bank account in the U.S. to cover costs and further investments in the real estate. (Compl. ¶ 41.)

Chiaravanond formed Cathedral, a Nevada LLC, on February 2, 2021, and she is its sole member and manager. (Compl. ¶¶ 43–44.) She also manages and controls Trilliant Group, despite the fact that the Plan called for Plaintiff to manage Trilliant. (Compl. ¶ 45.) Trilliant Group transferred Plaintiff's $3.5 million investment to Cathedral on February 11, 2021, and Chiaravanond—through Cathedral—purchased Sedona House 1 for $3.325 million on February 19, 2021. (Compl. ¶¶ 46–47.)

Chiaravanond formed Nido, a Nevada LLC, on July 15, 2021, and she is its sole member and manager. (Compl. ¶¶ 50–51.) In June and July 2021, Plaintiff transferred $4.9 million from his personal account to Pioneer Title Agency for the purchase of Sedona House 2 at a price of $5.2 million, with the rest of the balance paid by the cash Plaintiff transferred directly to Chiaravanond. (Compl. ¶¶ 52–53.) The house is titled in Nido's name. (Compl. ¶ 54.) On August 14, 2021, Plaintiff also transferred $525,000 to Pioneer Title Agency for the purchase of the Sedona Land, which is also titled in Nido's name. (Compl. ¶¶ 57–58.)

In a similar manner, Plaintiff transferred $4.25 million to Pacific, a Nevada LLC of which Chiaravanond is the sole member and manager, for the purchase of the Malibu House. (Compl. ¶¶ 61–65.) And ILU, an Arizona LLC of which Chiaravanond is the sole member and manager, purchased the Malibu Land for $227,500 from the cash Plaintiff provided to Chiaravanond. (Compl. ¶¶ 68–72.) In total, Plaintiff transferred $15,445,000 for the real estate investments and received no rental income or other return on his investments. (Compl. ¶¶ 78, 80.)

Plaintiff and Chiaravanond married on May 1, 2022, in Vancouver, British Columbia. (Compl. ¶ 75.) On August 31, 2023, a little over a year into the marriage and six days after Plaintiff transferred another $200,000 to Chiaravanond, Plaintiff received a letter from Chiaravanond's attorney in Singapore seeking to nullify the marriage. (Compl. ¶ 81.) Chiaravanond demanded excusive possession of Plaintiff's Singapore home, $500,000 for living expenses, and long-term maintenance payments, among other things. (Compl. ¶ 82.) Her demands were silent as to Plaintiff's real estate investments in the U.S., which Plaintiff alleges is because she orchestrated the investments such that they are all in her name. (Compl. ¶ 86.)

On December 2, 2023, Plaintiff filed a Complaint raising fourteen claims against Chiaravanond and the four LLC Defendants: (1) breach of the implied covenant of good faith and fair dealing; (2) unjust enrichment; (3) money had and received; (4) breach of fiduciary duty; (5) constructive fraud; (6) fraud; (7) negligent misrepresentation;

(8) aggravated negligence and negligence *per se*; (9) conversion; (10) aiding and abetting against the LLCs; (11) resulting trust; (12) constructive trust; (13) quiet title against Cathedral and Nido—purported owners of Sedona Houses 1 and 2 and the Sedona Land (the "Sedona Properties")[1]; and (14) appointment of a receiver over the LLCs. (Compl. ¶¶ 92–209.)

On March 19, 2024, Plaintiff filed Notices of Lis Pendens on the Sedona Properties (Docs. 24, 25, 26), and Defendants now move to expunge the lis pendens.

## II.  LEGAL STANDARD

"In an action affecting title to real property, the plaintiff at the time of filing the complaint, or thereafter, . . . may file . . . a notice of the pendency of the action . . . ." A.R.S. § 12-1191(A). Under A.R.S. § 33-420(B), the owner or beneficial title holder of the property may seek to expunge this notice of pending litigation, also known as a lis pendens, if it "is forged, groundless, contains a material misstatement or false claim[,] or is otherwise invalid." *See Richey v. W. Pac. Dev. Corp.*, 684 P.2d 169, 173 (Ariz. Ct. App. 1984). When considering whether to expunge a lis pendens,

> the scope of the trial court's inquiry is limited to determining whether the action is one "affecting title to real property." A.R.S. § 12-1191(A). While some examination of the merits of the case may be required for this purpose, the action under § 33-420 is not intended to be an expedited hearing on the underlying action. . . . [T]he trial court need only find "some basis" for concluding that the action affects title to real property; it need not, and should not unless necessary to its decision, determine which party will prevail on the merits.

*Evergreen W., Inc. v. Boyd*, 810 P.2d 612, 618 (Ariz. Ct. App. 1991) (quoting *Coventry Homes, Inc. v. Scottscom P'ship*, 745 P.2d 962, 965 (Ariz. Ct. App. 1987)); *see also Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 199 P.3d 646, 650 (Ariz. Ct. App. 2008) ("A lis pendens is groundless or has no basis only when the claim that the action affects 'title to real property has no arguable basis or is not supported by any credible evidence.'" (quoting

---

[1] The Malibu House and Malibu Land are the subject of litigation in California state court.

- 4 -

*Evergreen W.*, 810 P.2d at 619)). If a party prevails in showing a lis pendens is groundless, the party may recover reasonable attorney fees and costs. A.R.S. § 33-420(C).

### III.  ANALYSIS

In their Motion, Defendants argue that each lis pendens is groundless because the Complaint "only alleges a personal property claim and does not affect title to real property." (Am. Mot. at 4.) This is so, Defendants suggest, because Plaintiff's central allegation is that he "was falsely promised an interest in the LLCs that hold title to the properties, not to the properties themselves." (Reply at 2.) Because "a membership interest in [an LLC] is a personal property interest, not an interest in the LLC's real property," (Am. Mot. at 11), Defendants argue that the facts alleged in Plaintiff's Complaint cannot support any claim affecting title to the Sedona Properties. In particular, Defendants suggest that Plaintiff's quiet title claim (Count 13), as alleged, only constitutes "a claim for money or for interest in the LLCs themselves, neither of which constitute a claim to real property." (Am. Mot. at 13.)

In response, Plaintiff asserts that his claims for constructive fraud, fraud, resulting trust, constructive trust, and quiet title each affect title to the Sedona Properties. (Resp. at 8–11.) The Court must simply determine if there is "some basis" that any one of Plaintiff's claims affect title to real property, and any such claim requires the Court to deny Defendants' Motion. If the Court concludes that the claims in the Complaint are insufficient to affect title to real property, Plaintiff requests leave to amend his Complaint, (Resp. at 15), which Defendants argue would be procedurally improper, (Reply at 9).

In a separate case filed in California against Defendants Chiaravanond and the corporate entities, Plaintiff recorded lis pendens on the investment properties in Malibu, California. Defendants report that the Los Angeles Superior Court expunged the lis pendens, "finding that the complaint—which incorporates the same general allegations as are pled in this action and the same alleged theory of fraud, 'does not assert a real property claim.'" (Am. Mot. at 5.) Specifically, that court found that the "the cause of action for the quiet title . . . [was] based on a claim for interest in the [LLCs]" and that Plaintiff failed to

- 5 -

show that "an equitable owner can bring a quiet title claim" under California law. (Doc. 50, Ex. 7 at 3.) But that court's reasoning is not persuasive when applying Arizona law. Under A.R.S. § 12-1101(A), a party "may maintain a quiet title action based on [a] claimed equitable interest alone." *Wynn v. Toll Bros. AZ Constr., LLC*, 2:09-CV-01587-RCJ, 2011 WL 13157057, at *4 (D. Ariz. May 23, 2011); *see also Chantler v. Wood*, 430 P.2d 713, 717 (Ariz. Ct. App. 1967) ("[E]very interest in the title to real property, whether legal or equitable, may be determined in [a quiet title] action.").[2]

Here, Plaintiff's quiet title claim (Count 13) surely "affects title to real property" as required by A.R.S. § 12-1191(A). And this claim is not "groundless" merely because it is asserted against an LLC. To bring a quiet title action, Plaintiff must allege that he has an interest in the Sedona Properties and that Defendants claim an adverse interest in the same. *See* A.R.S. § 12-1101. Defendants are correct that "a person with an ownership interest in a business entity does not hold a direct interest in the entity's real property or other assets." (Reply at 2.) But Plaintiff does not simply allege an ownership interest in the LLCs; he asserts an equitable interest in the Sedona Properties, and he seeks to establish his legal title in such. Although Plaintiff's allegations suggest he knew that title to the Sedona Properties would be held by the LLCs, the Court finds no applicable authority preventing Plaintiff from asserting a quiet title claim against real property held by LLCs where Plaintiff alleges he was fraudulently induced into funding and approving the LLCs' creation and their acquisition of the Sedona Properties.

The cases cited by Defendants where courts found that a lis pendens was groundless are readily distinguishable. For example, in *Coventry Homes*, the plaintiff merely "agreed

---

[2] Defendants contend that "Arizona courts continue to look to California jurisprudence for guidance on lis pendens matters," so "[t]here is no daylight between the Los Angeles Superior Court's analysis of Plaintiff's faulty lis pendens and the appropriate analysis . . . in this action." (Am. Mot. at 14.) Presumably, Defendants encourage the Court to follow the California courts that "have generally held that 'the owner of an equitable interest cannot maintain an action to quiet title against the owner of the legal title.'" *Walters v. Fidelity Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1197 (E.D. Cal. 2010) (quoting *Stafford v. Ballinger*, 18 Cal. Rptr. 568, 571 (Cal. Dist. Ct. App. 1962)). Yet California caselaw is also clear that when a "plaintiff asserts that the legal title . . . was acquired through fraud . . . , the rule precluding a holder of equitable title from bringing a quiet title claim against the legal title holder is inapplicable." *Id.* at 1198 (citing *De Leonis v. Hammel*, 82 P. 349, 351 (Cal. Dist. Ct. App. 1905)).

- 6 -

to perform various services" to assist a property company "in the development of a parcel of real property." 745 P.2d at 963. After the property was sold to a third party, the plaintiff disputed the money owed under the development agreement for services rendered, filed suit against both the property company and the buyer, and recorded a lis pendens on the real property. *Id.* The plaintiff attempted to "characteriz[e] the action as one seeking a constructive trust or equitable lien," yet the development agreement evinced "no intention that this real property was to be used as security for payment," and there was also "no relationship between [the plaintiff] and [the buyer] concerning the real property." *Id.* at 965. There was thus no arguable basis that the action affected title to the property, making the lis pendens groundless. *Id.* Here, however, the parties have a clear relationship concerning the real property; the relationship between Plaintiff and the relevant LLCs—Cathedral and Nido—was wholly premised on the purchase and ownership of the Sedona Properties.

Leaving the lis pendens in effect is further supported by the purposes underlying the doctrine of lis pendens:

> The statute's purpose is twofold: (1) to give notice to future third parties that whatever rights they might consider acquiring in the land could be subject to a superior right asserted by the plaintiffs in a pending action, and (2) to enable the court in which the action is pending to retain the power to fully deal with such property, to the exclusion of future claimants.

*In re Farnsworth*, 384 B.R. 842, 847 (Bankr. D. Ariz. 2008) (citing *Hatch Cos. Contracting, Inc. v. Ariz. Bank*, 826 P.2d 1179, 1182 (Ariz. Ct. App. 1991)). These purposes are best served by "giving an expansive interpretation to the language 'affecting [] title to real property.'" *Tucson Estates, Inc. v. Superior Ct.*, 729 P.2d 954, 958 (Ariz. Ct. App. 1986) (quoting *Hammersley v. Dist. Ct.*, 610 P.2d 94, 96 (Colo. 1980)); *see also id.* at 959 (construing § 12-1191(A) "to permit the filing of a notice of lis pendens in any action involving an adjudication of rights *incident to* title to real property" (emphasis added)). Indeed, under this expansive interpretation, Plaintiff's quiet title claim (Count 13) is not the only one involving an adjudication of rights *incident to* title to the Sedona Properties.

All of Plaintiff's claims stem from an alleged fraudulent scheme to induce his purchase of the Sedona Properties—whether through Chiaravanond personally or her solely owned LLCs.[3]

## IV.  CONCLUSION

For the reasons set forth *supra*, the Court finds Plaintiff has sufficiently pled a claim or claims affecting title to real property, and Plaintiff's lis pendens are not groundless or otherwise invalid.

**IT IS THEREFORE ORDERED** denying Defendants' Amended Motion to Expunge Lis Pendens (Doc. 50).

Dated this 11th day of December, 2024.

Honorable John J. Tuchi
United States District Judge

---

[3] In his Complaint, Plaintiff asks the Court to pierce the corporate veil and treat the LLCs and Defendant Chiaravanond as one. (*E.g.* Compl. ¶ 100.) In Arizona,

> courts will disregard the corporate entity and pierce the corporate veil if a plaintiff pleads facts sufficient to show: (1) that the corporation is the "alter ego or business conduit of a person"; and (2) that disregarding the corporation's separate status is "necessary to prevent injustice or fraud."

*KeyBank Nat'l Ass'n v. Neumann Dermatology LLC*, No. CV-21-00133 PHX-JJT, 2022 WL 16635372, at *3 (D. Ariz. Nov. 2, 2022) (quoting *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010)). Typically, courts pierce the corporate veil to hold "an individual responsible for the acts of an entity," but courts may apply this doctrine in reverse "to satisfy the debt of an individual through the assets of an entity of which the individual is an insider." *See, e.g.*, *Litchfield Asset Mgmt. Corp. v. Howell*, 799 A.2d 298 (Conn. Ct. Appl. 2002); *Egle v. Egle*, 817 So. 2d 136, 140 (La. Ct. App. 2002); *Curci Invs., LLC v. Baldwin*, 221 Cal. Rptr. 3d 847, 851 (Ct. App. 2017); *see also Barba v. Lee*, No. CV 09-1115-PHX-SRB, 2009 WL 8747368, at *6 (D. Ariz. Nov. 4, 2009) (collecting Arizona cases recognizing the reverse veil piercing doctrine).

The Court need not determine at this early stage of the litigation whether veil piercing is appropriate. *See KeyBank*, 2022 WL 16635372, at *3 ("[T]he determination of whether there are sufficient grounds for piercing the corporate veil should ordinarily not be disposed of by summary judgment in view of the complex questions often involved, especially if fraud is alleged." (quoting William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.95 (West 2024))). To the extent resolution of the question is ultimately necessary, the balance of equities favors leaving the lis pendens in place until this issue is resolved. *See Kelly v. Perry*, 531 P.2d 139, 140 (Ariz. 1975) ("Being a creature not of statute but of the common law and equity jurisprudence, the doctrine of lis pendens is wholly subject to equitable principles." (quoting *Dice v. Bender*, 117 A.2d 725, 727 (Pa. 1955))).