Devin Sreecharana, Esq. (029057)
Trevor J. Wainfeld, Esq. (037146)
MAY, POTENZA, BARAN & GILLESPIE, P.C.
1850 N. Central Ave., Suite 1600
Phoenix, Arizona 85021
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: devin@maypotenza.com
        twainfeld@maypotenza.com

Moshe Y. Admon, Esq. (034169)
Admon Law Firm, PLLC
300 Lenora St., #4008
Seattle, Washington 98121
Telephone: (206) 739-8383
Email: jeff@admonlaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Alissa Chiaravanond, an individual resident of Arizona, Pacific Shangrila LLC, a Nevada limited liability company, Cathedral Shangrila LLC, a Nevada limited liability company, Nido di Stelle LLC, a Nevada limited liability company, ILU LLC, an Arizona limited liability company,<br><br>　　　　　Defendants. | Case No.: CV-2308622-PCT-JJT<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR THE APPOINTMENT OF A RECEIVERSHIP OVER PACIFIC SHANGRILA LLC AND ILU LLC**<br><br>**(Expedited &** ***Ex Parte*** **Consideration Requested)**<br><br>**(Oral Argument Requested)** |

　　　　Pursuant to Rule 66 of the Federal Rules of Civil Procedure, Plaintiff Phong Thanh Huynh respectfully requests this Court appoint Adam Nach of Peak Performance Restructuring Services, LLC as general receiver for Defendants Pacific Shangrila, LLC ("Pacific") and ILU LLC ("ILU")[1] to take possession of and preserve and protect their corporate assets, including

---

[1] Pacific, ILU, Cathedral Shangrila, LLC ("Cathedral"), and Nido di Stelle, LLC ("Nido") are

the real property located in Malibu, California, in which Mr. Huynh claims an absolute ownership interest and is the subject of this action.[2]

Mr. Huynh files this emergency motion primarily in response to the Palisades Fire that is sweeping the Los Angeles Metropolitan area, including Malibu, where two of the at-issue multi-million-dollar properties are located. This fire may have severely damaged or completely destroyed these Malibu Properties. And if not, immediate action is necessary to determine what, if anything, can be done to preserve and protect them from damage.

Further, Defendants are without counsel and have disengaged from this action, in addition to prolonged radio silence to third parties, including Defendant Chiaravanond's former counsel in Singaporean proceedings. *See* Section I(B), *infra*. Given their absence and third-party information confirming their failure to maintain the subject Arizona investment properties, Mr. Huynh has no confidence in Defendants' management and protection of any of the at-issue properties (including those in Malibu) and ability to provide him with accurate information about their maintenance and status.

A receiver is reasonably necessary to protect and preserve Mr. Huynh's significant interest in the Malibu Properties, including to work with local authorities, government, utilities, and other services to prevent and/or remediate damage the fires caused, make insurance claims, and manage and maintain any insurance proceeds. Without a receiver, Defendants will likely mismanage the protection of the Malibu Properties and continue their lack of transparency regarding the same. Under the circumstances, the most efficient and effective method of preserving the *status quo*, protecting all parties' alleged rights, and judicial and party economy is to appoint a neutral receiver to manage ILU and Pacific pending this action's resolution.

The following Memorandum of Points and Authorities, exhibits cited herein, and the record support this Motion.

---

collectively referred to herein as the "Corporate Defendants."

[2] Mr. Huynh reserves his right to later seek a receiver over the other Corporate Defendants, as they are not subject to the same expediency that precipitated the emergency nature of this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Relevant Factual Background[3]

As alleged in Mr. Huynh's Complaint (Doc. 1), from January 2020 through August 2023, Defendant Alissa Chiaravanond fraudulently induced him to transfer $15,445,000 (the "Investment Funds") to the Defendants under the guise that she would use those Investment Funds to invest in real property for his benefit and, eventually, their mutual benefit, if later married. (Doc. 1, Compl., ¶¶ 28-31, 78). The Investment Funds were used for the purchase, maintenance, and renovation of the following five Investment Properties, each held by one of the four LLCs named as Defendants in this suit:

(1) Defendant Pacific holds title to 20990 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu House");

(2) Defendant ILU holds title to 20966 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu Land" and with the Malibu House, the "Malibu Properties");

(3) Defendant Cathedral holds title to 288 Back O Beyond Circle, Sedona, Arizona 86336 ("Sedona House 1");

(4) Defendant Nido holds title to 95 Cross Creek Circle, Sedona, AZ 86336 ("Sedona House 2"); and

(5) Defendant Nido holds title to 95 Ravens Call Place, Sedona, AZ 86336 ("Sedona Land").[4]

*Id.* at ¶¶ 3-10, 78. Defendant Chiaravanond, a dual Thai and U.S. citizen with offshore personal accounts, is the sole member of Pacific and ILU. *Id.* at ¶¶ 3-4, 9-10, 20. Mr. Huynh understands and believes that Pacific's sole purpose is to hold title to and manage the Malibu House. *Id.* at ¶ 4. Mr. Huynh understands and believes that ILU's sole purpose is to hold title to and manage the Malibu Land and manage the Investment Properties. *Id.* at ¶ 10.

---

[3] For brevity's sake, Mr. Huynh incorporates by this reference Section I, Background, of the Court's Order denying Defendants' Amended Motion to Expunge *Lis Pendens* (Doc. 55), summarizing facts pleaded in his Complaint.

[4] The Malibu House, Malibu Land, Sedona House 1, Sedona House 2, and Sedona Land are collectively referred to herein as the "Investment Properties."

3

Contrary to Defendant Chiaravanond's alleged misrepresentations, Mr. Huynh has no control over and receives no benefit from any of the Investment Properties that were purchased with his Investment Funds. *Id.* at ¶¶ 49, 60, 67, 74.

After Defendant Chiaravanond abruptly and unilaterally ended her relationship with Mr. Huynh on August 31, 2023, she purported to initiate annulment proceedings and made clear she never intended to act for Mr. Huynh's benefit or interest.[5] *Id.* at ¶¶ 81-82. Rather, she intended to retain the Investment Properties and any related rents or sale proceeds for herself, via the Corporate Defendants. *Id.* at ¶¶ 49, 60, 67, 74.

After Defendants listed some of the Investment Properties for sale, over Mr. Huynh's objection, Mr. Huynh initiated this action to protect his interest in and enforce his rights to the Investment Properties. *Id.* at ¶¶ 88-89. In this case, he filed claims for, *inter alia*, breach of the implied covenant of good faith and fair dealing, fraud, constructive fraud, unjust enrichment, quiet title, and constructive trust. *Id.* at 12:1-26:14. Among other relief, he seeks to obtain title to the Investment Properties, including the Malibu House and Malibu Land. *Id.* at 26:24-27:12. He also pleaded his request for a receiver. *Id.* at ¶¶ 197-209. The preservation of the Malibu House and Malibu Land, and their related value, is essential to the claims for relief that Mr. Huynh properly pleaded in this action.

**A.  The Palisades Fire places Mr. Huynh's interest in the Malibu House and Malibu Land in imminent danger.**

On January 7, 2025, the Palisades Fire in Los Angeles began to scorch Malibu and surrounding areas. Mr. Huynh is presently unaware whether the fire has reached, damaged, or destroyed the Malibu House or the Malibu Land, given that the entire surrounding area has been evacuated. A map from the Los Angeles Daily News shows that the area in which these properties lie was within an "approximate fire area" marked by red-orange highlights in the following image.

---

[5] Chiaravanond's annulment proceedings were dismissed in December 2024 because Chiaravanond stopped appearing in Singaporean court. Exhibit A, Declaration of Cyril Ting Shi Jie, at ¶ 4(a). Mr. Huynh's judicial separation proceedings went to trial on January 7, 2025 and was granted without Chiaravanond's appearance. *Id.* at ¶ 4(b).



https://www.dailynews.com/2025/01/07/this-map-shows-where-the-palisades-fire-is-burning-in-pacific-palisades/. The Malibu Properties are just north of Pacific Coast Highway, and east of Las Flores Canyon Road. These Investment Properties are within the red-orange space just above the label "LAS FLORES" in this map, as seen in the following image that was generated using Google Maps.

The Malibu House and Malibu Land are only a couple miles from Moonshadows restaurant in Malibu, which the Palisades Fire destroyed. https://la.eater.com/2025/1/7/24338882/los-angeles-pacific-palisades-eaton-canyon-fire-restaurant-closure.

[Map image showing route along Pacific Coast Hwy near Malibu, 46 min / 1.9 miles walking directions, with landmarks including Indigo Ranch Sober Living, Las Flores Creek Park, Big Rock, and Moonshadows Malibu]

The Malibu House and Malibu Land are in imminent danger, and Defendants are not known or believed to be taking any action to protect them. *See* Section I(C), *infra*. The Malibu House and Malibu Land could sustain (or have sustained) critical damage from the Palisades Fire that will need to be immediately remediated to avoid further damage, or remediation of a total loss may be necessary. Mr. Huynh is unaware whether these Investment Properties are insured (for fire or otherwise) and, if so, when and to whom an insurance claim would need to be filed. Given Defendant Chiaravanond's dual citizenship (Doc. 1 at ¶ 20), marital dispute history (Doc. 33 at 4:1-5:6), recent efforts to sell the Malibu House and Malibu Land over Mr. Huynh's objection, and radio silence (Section I(B), *infra*), should Defendants make insurance claims, they may obtain millions of dollars in proceeds that could predictably dissipate to offshore bank accounts. Such proceeds may belong to Mr. Huynh if successful in proving his claims against Defendants.

**B.   Defendants are not participating in this litigation.**

Since they succeeded in setting aside default (Doc. 36), Defendants have sparingly participated in this litigation, and only when it suits them. *See, e.g.*, Defendants' Amended Motion to Expunge *Lis Pendens* (Doc. 50); Plaintiff's Notice of Service of Discovery Responses (Doc. 53).[6]

---

[6] Mr. Huynh references his Notice because Defendants did not file a notice of service of their discovery requests pursuant to LRCiv. 5.2.

Defendants have not properly engaged in disclosure. Defendants did not produce a single document with their Rule 26(a)(1) initial disclosure, and they have not subsequently disclosed any documents. Exhibit B, Declaration of Trevor J. Wainfeld, at ¶¶ 4-5.

Defendants have not properly engaged in discovery. On November 12, 2024, Plaintiff served on Defendants his First Set of Requests for Production, Requests for Admission, and Interrogatories (collectively, "Written Discovery"). *Id.* at ¶ 6; (Doc. 54). A granted extension to December 23, 2024 came and went, and Defendants still have not responded to any Written Discovery.[7] Ex. B at ¶¶ 7, 13. Among other things, the Written Discovery seeks documents and information about improvements to and maintenance of the Malibu House and Malibu Land, the properties' finances, vendors, service providers, utilities, management companies, and other items related to the properties' maintenance. *Id.* at Exhibits 2, 3, and 4 thereto. As particularly relevant to the pending fires, Mr. Huynh does not know whether the Malibu House and/or Malibu Land are insured, and if so, with whom and for what benefits. If there once was insurance, it may have lapsed or could lapse soon. Given the circumstances and the parties' dispute, protecting these assets and any resulting insurance payouts is critical.

Since Defendants' counsel withdrew on December 20, 2024 (Docs. 58, 59), Defendants have not communicated with Mr. Huynh or undersigned counsel, despite sending letters to physical addresses provided by Defendants' former counsel and an email to an email address believed to be affiliated with Defendant Chiaravanond. Ex. B at ¶¶ 10-12. Notably, the post office returned as undeliverable the Court's mail to Defendants (Docs. 60, 60-1), addressed pursuant to Defendants' former counsel's instructions (Docs. 56, 57).

Defendants' counsel's recent withdrawal and Defendants' radio silence is part of a pattern. Defendant Chiaravanond's former counsel in the marital proceedings before the Singaporean family court also recently withdrew from representing her in that action. Ex. A at ¶ 4(a). There, her counsel explained to Mr. Huynh's Singaporean counsel and the Singaporean

---

[7] Mr. Huynh is not asking the Court to rule on any disclosure or discovery violations in this Motion, but is offering the Court context for this emergency *ex parte* request. Mr. Huynh is separately following the procedure described in Paragraph 9 of the Scheduling Order (Doc. 47) to raise discovery issues with the Court.

7

Court that they were unable to successfully contact Defendant Chiaravanond, resulting in their discharge from representation. *Id.*

While Defendants' former counsel in this action did not expressly provide the same basis for their withdrawal, it is likely that was the case. Defendants' former counsel cited Ariz. R. Sup. Ct. E.R.1.16(b)(1) and (b)(5) in their Motions to Withdraw. (Docs. 56, 57). Failing to communicate with counsel would fit within E.R. 1.16(b)(5). Indeed, her former counsel wrote to the undersigned counsel "that the circumstances that have caused us to file the motion to withdraw render it *impossible* for us to provide responses to the discovery next week as scheduled." Ex. B at ¶ 8 (emphasis added). Reading between the lines, it would be "impossible" to respond if counsel could not obtain responsive information from Defendants despite request.

Defendant Chiaravanond appears to have excused herself from this action, was apparently not contactable by her counsel, and has been unreachable by the Court and Mr. Huynh's counsel. Challenges with a non-participating litigant aside, this is of particular concern because Mr. Huynh has no transparency into Defendants' preservation and protection of the Malibu House and Malibu Land (if any), and thus, his interests therein.

**C.    Defendants are mismanaging Investment Properties.**

Mr. Huynh recently received notices from property vendors and service providers, and responses to third party discovery, that confirm Defendants are not properly maintaining at least some of the Investment Properties. Rather, Defendants are ignoring messages from persons managing and servicing those properties.

Mr. Huynh recently subpoenaed Sedona.org, an entity managing the Investment Properties in Sedona. Ex. B at ¶ 14. Through Sedona.org's subpoena response and responsive documents, it appears that between December 2022 and mid-2024, the property manager for Sedona House 1 had experienced serial delays in communication or non-responsiveness from Defendant Chiaravanond regarding approval of certain necessary maintenance. *See id.* at ¶¶ 15-18 and Exhibits 12-16 thereto. As of July 2024, the property manager for Sedona House 1 continued to reach out to Defendant Chiaravanond regarding repairs, to no avail. *Id.* at

Exhibit 14 thereto. Apparently because Defendant Chiaravanond would not respond to their emails, the property management company sent emails to Defendant Chiaravanond that would authorize necessary repairs if she did not respond by a particular date, including replacement of the air conditioning system costing about $15,000.00. *Id.* at Exhibit 15 thereto. Defendant Chiaravanond does not appear to have responded to those messages or paid repair invoices because Sedona.org's subpoena response did not include any such messages.

On June 28, 2024, HOAMCO (the property management company for Sedona House 2) contacted Mr. Huynh to alert him that the post office was returning mail as undeliverable. Exhibit C, Declaration of Phong Thanh Huynh, at ¶ 4 and Exhibit 1 thereto. On July 16, 2024, Mr. Huynh became aware that Sedona House 2's HOA payments were $2,885.00 in arrears, and its HOA was preparing to record a lien and foreclose on Sedona House 2. *Id.*

While the foregoing relates to the Sedona Investment Properties, it underscores that Defendants' lack of engagement goes beyond their failure to participate in this case, but also to protect the Investment Properties. Given their failure to provide any disclosure or respond to the Written Discovery, Mr. Huynh has no sense of the Malibu House's and Malibu Land's condition. He fears Defendants have also shirked their responsibility to properly manage those Investment Properties and will continue to do so.

**II.  Receivership Law**

A receiver should be immediately appointed over Pacific and ILU, the entities that hold title to the Malibu House and Malibu Land, to navigate the effects of the Palisades Fire on these Investment Properties, ensure the Malibu House and Malibu Land are properly maintained and repaired during and after the Palisades Fire, oversee any insurance claims and accounting of any insurance proceeds, and maintain a record of such efforts and general maintenance of these Investment Properties.

Federal law governs the issue of whether to appoint a receiver in a diversity action. *Canada Life Assur. Co. v. LaPeter*, 563 F. 3d 837, 843 (9th Cir. 2009). Under federal law, there is "no precise formula for determining when a receiver may be appointed." *Id.* (*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)). Rather,

federal courts consider a variety of factors in making this determination, including: (1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, of squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probably success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership. *Id.*, at 844 (*citing* 13 James Wm. Moore, et al., *Moore's Federal Practice*, § 66.04[2][b] (3d ed. 2008)). The Court has discretion to appoint a receiver upon consideration of any relevant factors, with no one factor being dispositive. *Id.* at 845.

Upon appointment, the receiver's role is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary. *Liberte Capital Group, LLC v. Capwill,* 462 F.3D 543, 551 (6th Cir. 2006).

**III.  Appointing a receiver is appropriate and necessary to protect Mr. Huynh's interest in the Malibu Land and Malibu House.**

**A.  Plaintiff has valid claims.**

Mr. Huynh's asserted claims arise from his transfer of $15,445,000 to Defendants under Defendant Chiaravanond's alleged fraudulent scheme to induce his purchase and ownership of the Investment Properties, through the Corporate Defendants or otherwise. (Doc. 1). And each claim relates to both Mr. Huynh's alleged ownership interest in the Corporate Defendants and equitable interest in the Investment Properties, in which he seeks to establish legal title in his name. Mr. Huynh has not benefitted in any way, as intended from this transfer due to Defendant Chiaravanond's wrongful 100% ownership and control over all assets purchased and maintained with Mr. Huynh's funds, via the single-member Corporate Defendants. Mr. Huynh has asserted valid legal and equitable claims related to the Malibu

10

Investment Properties, including claims to quiet title and for constructive trust. (Doc. 1). *See also* (Doc. 55 at 8:5-6) (concluding "Plaintiff has sufficiently pled a claim or claims affecting title to real property.").

### B. Defendants defrauded Mr. Huynh and continue to do so.

As alleged, all Defendants, but especially Defendant Chiaravanond, acted fraudulently in the events leading up to this action (Doc. 1) and there is a probability of future fraudulent conduct relating to the Malibu Investment Properties.

Mr. Huynh previously provided this Court with evidence that he intended to purchase the Investment Properties, including the Malibu House and Malibu Land, as a personal investment. *See* (Doc. 33-3 at ¶¶ 5-15, 18). Defendants have not produced any contrary evidence or any evidence purporting to support their defenses. Ex. B at ¶¶ 4, 5.

Further, given listings for sale of the Malibu Investment Properties,[8] the California state court's expungement of *lis pendens* on these Investment Properties (Doc. 50-1 at ¶ 7), and Defendant Chiaravanond's prior misconduct and current radio silence, there is a probability that Defendants withhold from potential buyers or insurers this action's pendency and Mr. Huynh's claimed ownership of and interest in the subject properties. And considering Defendant Chiaravanond's history of questionable title transfers (Doc. 33 at 4:1-14), there is a risk that Defendants manipulate title to attempt to continue their fraudulent control over and/or benefit from these Investment Properties.

### C. The Malibu House and Malibu Land are in imminent peril.

The Palisades Fire may have already damaged or destroyed the Malibu House and Malibu Land. Because Defendants (improperly) hold title to these properties and are willfully withholding virtually all information about them, Mr. Huynh is presently unfairly bound to ignorance about their condition. If the properties are unharmed, that will be fortunate—but

---

[8] The Malibu House was listed for sale in April and July 2024: https://www.realtor.com/realestateandhomes-detail/20990-Las-Flores-Mesa-Dr_Malibu_CA_90265_M13378-51237. The Malibu Land was listed for sale in September 2024: https://www.realtor.com/realestateandhomes-detail/20966-Las-Flores-Mesa-Dr_Malibu_CA_90265_M19563-07280.

their protection in the coming days or weeks is critical (including determining what, if any, insurance exists). If they are damaged or destroyed, immediate action is necessary to prevent further damage, pursue insurance claims, and to ensure that insurance proceeds are used to repair damage to the Investment Properties, or sequestered pending this action's resolution or an agreement between the parties. Considering her access to offshore bank accounts, there is legitimate concern that Defendant Chiaravanond will transfer such proceeds to locations where they cannot be recouped, or she will use the proceeds for something other than the Malibu House or Malibu Land. If insurance does not exist and there is property damage, immediate action is necessary to preserve the Malibu House and Malibu Land and prevent further, and immensely costly, damage or destruction. This natural disaster presents a potential multi-million-dollar liability to Mr. Huynh if not expeditiously addressed.

        **D.**        **Other legal remedies are inadequate.**

If Mr. Huynh succeeds in this case, there will likely be a finding that he paid for the Investment Properties to own a 100% in the Malibu House and Malibu Land, which are incomparably located overlooking the Pacific Ocean off Pacific Coast Highway in Malibu. Interests in specific real property is inadequately remedied by money damages. *See Woliansky v. Miller*, 135 Ariz. 444, 446, 661 P.2d 1145 (App. 1983) ("Specific performance is ordinarily available to enforce contracts for the sale of real property because land is viewed as unique and an award of damages is usually considered an inadequate remedy.") This is why Mr. Huynh seeks to obtain title to the Malibu House and Malibu Land as one of his remedies in this action.

Furthermore, Mr. Huynh invested in the Investment Properties as part of a retirement investment plan, not as part of a discreet transaction for short-term profit. He purchased the Investment Properties for the prospect of rental income and to have the retirement security of a long-term investment in choice real property that one would expect to appreciate dramatically over time. Significant damage to or loss of such Investment Properties would stymy his plan. To the extent such harm is considered "intangible," courts routinely find "intangible injuries" qualify as irreparable harm. *See, e.g.*, *Enyart v. Nat'l Conference of Bar*

*Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (loss of opportunity to pursue chosen profession.); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (damage to ongoing advertising efforts, recruitment, and goodwill); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm."); *Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990, 997–98 (D. Ariz. 2020) ("being forced to shutter one's business may well be an irreparable harm.") (citation omitted).

Other prejudgment relief is similarly inadequate. Defendants are unrepresented and nowhere to be found. A mandatory injunction to seek an insurance claim or hold onto insurance proceeds would not likely be effective or practical. The Malibu Properties should be placed under the care of a competent third-party neutral who will preserve their value and navigate the Palisades Fire's difficult circumstances.

### E.     Mr. Huynh's harm would outweigh Defendants' harm if there is no receivership.

Given the nature of Mr. Huynh's claims, his significant investment in the Investment Properties, current lack of title ownership of the Investment Properties, and potential additional exposure to loss if the Malibu Investment Properties are damaged or further damaged, the balance of equities tips strongly in favor of appointing a receiver to preserve the *status quo*. Appointing a receiver will have no adverse impact on the Defendants because the receiver's purpose would be to preserve the Malibu Investment Properties' value and records to the extent possible. Defendants should share Mr. Huynh's interest in preserving these Investment Properties. If Defendants later dispute the receiver's appointment or the scope of his responsibilities, they can seek appropriate redress before this Court—all while the Malibu Investment Properties are protected and preserved.

**F.  Mr. Huynh is highly probable to succeed on his claims, but will suffer irreparable harm if a receiver is not appointed to preserve and protect the Malibu House and Malibu Land.**

Mr. Huynh is highly likely to succeed in his various claims. Defendants have not produced any credible evidence to support their defenses. Ex. B at ¶¶ 4, 5, 13. Defendants' failure to participate suggests the fragility of their defenses, particularly considering the many millions of dollars at issue in this case. On the other hand, Mr. Huynh has produced evidence supporting his claim that the Investment Properties were meant to be acquired for his sole benefit. (Doc. 33-3 at ¶¶ 5-15, 18).

Mr. Huynh will suffer irreparable injury if the unique, lucrative Malibu Investment Properties are mismanaged, ill-maintained, or destroyed, or if Defendants obtain and misuse insurance proceeds from coverage for the same. *See* Section III(D), *supra*.

**G.  Mr. Huynh's interest in the Malibu Investment Properties will be well served by receivership.**

Mr. Huynh's alleged ownership interest in the Malibu Investment Properties will be protected and preserved by receivership. A receiver will coordinate fire protection and remediation, work with local utility companies and government, communicate to the parties and the Court about the Malibu Properties' condition, pursue, collect, and preserve any insurance proceeds for later distribution pending this case's resolution or party agreement, and corral and maintain records of the Malibu Investment Properties' maintenance.

**H.  Receivership supports the public interest.**

A receiver will also support the public interest. In the aftermath of the Palisades Fire, a large-scale cleanup, repair, and damage mitigation effort will likely occur. Structures that remain standing or have ongoing utility services may need immediate action taken to avoid further damage and promote safety measures. The public has an interest in reduction of further damage to the Malibu House and Malibu Land, which could affect neighboring properties and utilities services, as that would consume resources that can be allocated to other disaster relief efforts. Particularly during a natural disaster, an unmanaged property is likely to consume

14

more public resources and impose a safety concern than a property with full-time attention (as proposed under the requested receivership).

IV. **Proposed Receiver: Adam Nach of Peak Performance Restructuring Services, LLC**

Mr. Huynh respectfully requests that the Court appoint Adam Nach of Peak Performance Restructuring Services, LLC ("PPRS") as receiver over Pacific and ILU. Mr. Nach is an experienced and well-respected management and restructuring professional and is a licensed attorney who is admitted to practice before this Court. Exhibit D, Affidavit of Adam Nach, at Exhibit 1 thereto. Mr. Nach has served as the receiver for residential properties (typically, multifamily) and raw land. *Id.* at ¶ 13. Mr. Nach and PPRS have advised that they have no conflict of interest precluding their appointment in this case. *Id.* at ¶ 10. Mr. Nach and PPRS have agreed to charge the following hourly rate for their services:

| | |
|---|---|
| Adam Nach | $395/hr. |
| Director | $350/hr. |
| Associate/Manager: | $274/hr. |
| Support Staff | $95/hr. |
| Consultants | $300/hr. |

*Id.* at ¶ 14.

Through receivership powers, as contained in the proposed order filed herewith, Mr. Nach and PPRS intend to retain the law firm of Lane & Nach, P.C. In disclosure to the Court, Mr. Nach is both the principal of PPRS and the owner of Lane & Nach, P.C. but Mr. Nach, PPRS, and the law firm believe this does not constitute a conflict of interest. Rate information for Lane & Nach, P.C. is included in the proposed Order being filed concurrently herewith.

V. **Conclusion**

The Palisades Fire presents an immediate and direct risk to the Malibu House and the Malibu Land, assets that are primarily at issue in this case and in which Mr. Huynh claims an absolute ownership right and interest. Defendants' radio silence and lack of participation in this case exacerbates the risk of loss to the Malibu Properties. There is a high risk the Malibu

House and/or Malibu Land will be lost, injured, concealed, or diminished under Defendants' exclusive control.

A receivership does not impose any hardship on ILU or Pacific, who have been disengaged from this action, because it will ensure the Malibu Investment Properties are managed fairly and pursuant to proper oversight. The appointment of a receiver to preserve and protect the business, assets, and accounts of ILU and Pacific pending this action's outcome is appropriate.

Accordingly, Mr. Huynh respectfully requests the Court: (i) grant this Motion; (ii) schedule a return hearing at its earliest opportunity; (iii) appoint Adam Nach of Peak Performance Restructuring Services, LLC as receiver over Pacific and ILU, with no bond or minimal bond, to take immediate possession of the Malibu Properties, and grant Mr. Nach receiver all necessary authority, responsibilities, duties, and powers as set forth in the proposed form of Order Appointing Receiver submitted herewith; and/or, (iv) grant such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 13th day of January, 2025.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By /s/ *Devin Sreecharana*
    Devin Sreecharana, Esq.
    Trevor J. Wainfeld, Esq.

**ADMON LAW FIRM, PLLC**

Moshe Y. Admon

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, I transmitted the foregoing document by U.S. Mail to:

Defendant Alissa Chiaravanond
c/o Registered Agent Solutions, Inc.
187 East Warm Springs Road, Suite B
Las Vegas, Nevada 89119

Defendant Pacific Shangrila LLC
c/o Registered Agent Solutions, Inc.
187 East Warm Springs Road, Suite B
Las Vegas, Nevada 89119

341 San Rafael Avenue
Belvedere, CA 94920

Defendant Cathedral Shangrila LLC
c/o Registered Agent Solutions, Inc.
187 East Warm Springs Road, Suite B
Las Vegas, Nevada 89119

Defendant Nido Di Stelle LLC
c/o Registered Agent Solutions, Inc.
187 East Warm Springs Road, Suite B
Las Vegas, Nevada 89119

Defendant ILU LLC
c/o Registered Agent Solutions, Inc.
300 West Clarendon Avenue, Suite 240
Phoenix, Arizona 85013

341 San Rafael Avenue
Belvedere, CA 94920

/s/ *Elena Cordero*