**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh, | No. CV-23-08622-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Alissa Chiaravanond, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Phong Thanh Huynh's Emergency Motion for the Appointment of a Receivership Over Pacific Shangrila LLC and ILU LLC (Doc. 61), which Plaintiff requested the Court consider on an expedited and *ex parte* basis (Doc. 62). The Court held a telephonic hearing on the Motion on January 17, 2025, and Defendants did not appear at the hearing. (Doc. 68.)

Previously, counsel for Defendants withdrew from their representation of Defendants on December 20, 2024 with the approval of the Court (Docs. 56–59), and because Defendant Alissa Chiaravanond is the sole member and manager of the entity Defendants, the Court acknowledged that she may appear *pro se* on behalf of herself and the entity Defendants in this matter.[1] (Docs. 58, 59.) Since the withdrawal of Defendants' counsel, counsel for Plaintiff have attempted to contact Defendants using all known contact information, including regarding the ongoing discovery in this matter as well as the present Motion for the Appointment of a Receivership, and Defendants have not responded. (Docs.

---

[1] The Court ordered Ms. Chiaravanond to inform the Court by January 31, 2025, if she intends to go forward without counsel in this matter. (Docs. 58, 59.)

62, 64; Doc. 61-2, Decl. of Trevor J. Wainfield.) Indeed, counsel for Plaintiff report that Ms. Chiaravanond's counsel in her Singapore annulment proceedings was unable to make contact with her as of November 1, 2024, and that counsel was discharged from its representation of her and the annulment proceedings were dismissed. (Doc. 61-1, Decl. of Cyril Ting Shi Jie ¶ 4(a).) Nevertheless, this Court did not presume to resolve Plaintiff's present Motion on an *ex parte* basis and required Plaintiff to transmit notice of the Motion and hearing to Defendants using all known e-mail addresses on an expedited basis. Plaintiff did so (Doc. 66), and Defendants failed to respond to Plaintiff's Motion or appear at the hearing, thus waiving any argument in opposition to Plaintiff's Motion. *See, e.g.*, LRCiv 7.2(i).

Upon review of Plaintiff's Motion (Doc. 61) and considering the arguments made at the hearing, the Court finds as follows:

1.   The Court has jurisdiction to adjudicate Plaintiff's request for appointment of a receivership over Pacific Shangrila LLC and ILU LLC.

2.   The Court's appointment of a receiver is an "extraordinary equitable remedy" that "should be applied with caution." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009). The "appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action." *Id.* at 843 (quoting *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998)) (internal quotation marks omitted). Thus, where a federal court has diversity jurisdiction over a case, as here, Federal Rule of Civil Procedure 66 governs the appointment of a receiver, "even in the face of differing state law." *Id.* at 843 (quoting *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291) (internal quotation marks omitted).

3.   Under Rule 66 and *Canada Life*, the Court considers a variety of factors—none of which is dispositive—in determining whether to exercise its discretion to grant a plaintiff's motion for the appointment of a receivership in a diversity action such as this one, including: (1) whether the plaintiff has a valid claim; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant"; (3) "whether the

property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered"; (4) "whether legal remedies are inadequate"; (5) whether the harm to the plaintiff by denial of the appointment would outweigh injury to the defendant; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to [the] plaintiff's interest in the property"; and (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* at 844 (quoting 13 James Wm. Moore, *et al.*, Moore's Fed. Practice § 66.04[2][b] (3d ed. 2008), and citing *N.Y. Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991)) (internal quotation marks omitted).

  4.  The "Palisades Fire" in and around Malibu, California that began on January 7, 2025, presents an immediate and critical danger to the real property that is the subject of this lawsuit and Plaintiff's Motion for the Appointment of a Receivership (Doc. 61), which property is located at (1) 20990 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu House") and (2) 20966 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu Land"). Defendant Pacific Shangrila LLC ("Pacific") holds title to the Malibu House and Defendant ILU LLC ("ILU") holds title to the Malibu Land. Considering the absence of Defendant Ms. Chiaravanond—the sole member and manager of both Pacific and ILU—and based on the evidence provided by Plaintiff, Defendants are not taking action to preserve these properties, enhancing the danger to the properties during this natural disaster.

  5.  Addressing the *Canada Life* factors and as Plaintiff demonstrates in the Motion for the Appointment of a Receivership (Doc. 61), Plaintiff has stated valid claims over the Malibu House and Land in the Complaint (Doc. 1). (*See* Doc. 55 at 6 n.2 (citing *Walters v. Fid. Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1197–98 (E.D. Cal. 2010)).) Taking Plaintiff's allegations as true for the purpose of his unopposed Motion, there is at least a probability that Defendants defrauded Plaintiff. The objects of Plaintiff's request for the appointment of a receivership—the Malibu House through Defendant Pacific and the Malibu Land through Defendant ILU—are in peril and imminent danger of being lost or

diminished in value, particularly in light of the Palisades Fire presently burning property in the immediate area of the Malibu House and Land. Certain aspects of the damages Plaintiff may suffer are not compensable by money damages, including the potential loss of unique property and the enjoyment thereof, and in any case, relief may not be obtainable considering the disappearance of Ms. Chiaravanond. The balance of equities clearly tips in favor of appointment of a receivership to preserve the Malibu House and Land to the extent possible in the absence of any action on the part of Defendants. Likewise, in the absence of the appointment of a receivership, Plaintiff's interest in the property may be irreparably damaged, and a receivership has the immediate ability to protect Plaintiff's interest by preserving the Malibu House and Land to the extent possible. The *Canada Life* factors thus weigh in favor of appointment of a receivership.[2]

6. In the present circumstances, there is no other adequate remedy at law for the protection and preservation of the Malibu House and Malibu Land or the rights of the parties therein.

On the basis for the foregoing findings, considering the full record in this matter, and good cause appearing therefor,

**IT IS ORDERED** granting Plaintiff's Emergency Motion for the Appointment of a Receivership Over Pacific Shangrila LLC and ILU LLC (Doc. 61).

. . .

---

[2] Previously, in the briefing on Defendants' Motion to Expunge *Lis Pendens* on the Arizona properties (Doc. 50), the parties informed the Court that there is parallel litigation in California state court (Cal. Super. Ct. Case No. 23SMCV06061) brought by Plaintiff against Defendants Ms. Chiaravanond, Pacific and ILU. Plaintiff filed the California action three weeks after the present case. (*See* Doc. 50-6 at 4.) In the California action, Defendants moved to expunge *lis pendens* recorded by Plaintiff on the Malibu House and Land, and the California court granted the motion. (Doc. 50-6; Doc. 50-7 at 3.) At the hearing on Plaintiff's present Motion (Doc. 68), Plaintiff informed the Court that the California court subsequently stayed its action in deference to the present lawsuit in this Court.

In the present Motion, Plaintiff does not seek reinstatement of the *lis pendens* on the Malibu House and Land that were expunged by order of the California state court. Instead, Plaintiff seeks a receivership over Pacific and ILU to protect and preserve the property in light of the current natural disaster and Defendants' inaction. As such, and because the present action was filed before the California action, the Court declines to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), in any deference to the related California action.

**IT IS FURTHER ORDERED** that counsel for Plaintiff shall electronically transmit a copy of this Order to Defendants at all known e-mail addresses within two days of the entry of this Order.

**IT IS FURTHER ORDERED** that Adam Nach of Peak Performance Restructuring Services, LLC ("Nach & PPRS" or "Receiver") is appointed as the receiver over the following companies:

(1) Pacific Shangrila LLC; and,

(2) ILU LLC

(hereinafter, the "Receivership Companies"). Adam Nach is not an employee or corporate officer of any party to this action, nor is Nach & PPRS otherwise interested in this action beyond its appointment as Receiver. The Receivership Companies and the assets held by the Receivership Companies shall hereinafter be referred to collectively as the Receivership Estate.

**IT IS FURTHER ORDERED** that Nach & PPRS is granted all the rights and powers available under 28 U.S.C. § 3103 and is also vested with all necessary powers, rights, and duties to operate, manage, and make all decisions of the Receivership Companies in a commercially reasonable manner, including, without limitation: commence and defend actions; take and keep possession of all Receivership Companies' property and assets, including, without limitation, payrolls, vehicles, licenses, inventory, equipment, intellectual property, real and personal property, legal and equitable claims, and banking and depository accounts (collectively referred to herein as "Property" or "Property of the Receivership Estate"); apply for insurance and licenses; receive revenue; collect debts; pay all just debts and other valid liabilities of the Receivership Companies; cease "off the books" transactions and remove any and all non-company related expenditures; contact and negotiate with the Receivership Companies' lenders, governmental regulators, and/or licensing agencies for the purpose of compromising or settling any claim or obligation of Receivership Companies; sign and endorse all checks

and contracts; withdraw and deposit monies; open bank accounts or other depository accounts; prepare any and all tax returns and related documents; make all management, operational, and financial decisions of the Receivership Companies; investigate any matter Nach & PPRS deems appropriate in connection with discovering additional information as it relates to the activities of the Receivership Companies; engage legal counsel on behalf of Receivership Companies; reorganize and/or properly structure the Receivership Companies' accounting and financial practices; and otherwise have the powers, rights, and duties necessary to carry out its duties as Receiver.

**IT IS FURTHER ORDERED** that the Receivership Companies, and any of their managers, officers, members, agents, partners, servants, employees and attorneys, and all other persons in active concert or participation with the Receivership Companies, or their managers, officers, agents, members, partners, servants, employees and attorneys, shall cooperate, in good faith, in providing the Receiver access to Property of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receivership Companies, and any of their managers, officers, members, agents, partners, servants, employees and attorneys, and all other persons in active concert or participation with the Receivership Companies, or their managers, officers, agents, members, partners, servants, employees and attorneys, shall preserve and deliver to the Receiver all of the records and property of the Receivership Companies, including without limitation,

1) All personal property, including all automobiles, equipment, accounts, accounts receivable, accounts payable, inventory, keys, bank accounts (both deposit and checking accounts), cash, receipts and income, expenses, records (including complete QuickBooks files), customer records, invoices, documents, leases, passwords and other material relating to the real properties owned by the Receivership Companies that are in their possession, custody or control, including, but not limited to, all accounting records, ledgers, journals, books and records,

computer data, user IDs, passwords and all materials and documents relating to the real properties owned by the Receivership Companies;

2) All income and transaction tax information, including tax id numbers, payment records, tax statements and communications for the two-year period prior to the entry of this Order;

3) All appraisals, surveys, tax assessments, photographs, and any and all other documents relating or pertaining to the value and condition of the real properties owned by the Receivership Companies;

4) All documents which constitute or pertain to insurance policies, whether currently in effect or lapsed, which relate to the real properties owned by the Receivership Companies;

5) All leases and subleases, side agreements, renewals, broker leasing agreements, royalty agreements, licenses, franchise agreements, licensing agreements, property management agreements, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to any interests in the real properties owned by the Receivership Companies;

6) All documents pertaining to past, present or future construction of any type with respect to all or any part of the real properties owned by the Receivership Companies;

7) All documents of any kind pertaining to any and all toxic chemicals or hazardous materials, if any, ever brought, used and/or remaining upon the real properties owned by the Receivership Companies, including, without limitation, all reports, inventories, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices; and

8) All rents and profits derived from the real properties owned by the Receivership Companies and all accounts, including bank accounts, operating accounts, security deposit accounts (including, without limitation, all security deposits, advances,

prepaid rents, late fees, and parking fees) wherever and in whatsoever mode maintained which relate to the real properties owned by the Receivership Companies.

**IT IS FURTHER ORDERED** that Nach & PPRS has authority to open accounts using the Receivership Companies' tax ID number(s), and utilize bank accounts for Receivership Estate funds; the Receiver shall be empowered to request financial institutions to freeze account(s) and request turnover of funds on deposit, which the Receiver has reason to believe is in possession of funds belonging to or arising from the operation of the Receivership Companies or are otherwise Property of the Receivership Estate. In the event the financial institution fails to freeze the subject account within 14 days of service of this Order, then the financial institution may be subject to sanctions by this Court. The Receiver may serve this Order on the financial institution by mail, email or personal service.

**IT IS FURTHER ORDERED** that Nach & PPRS has authority to terminate or wind down business operations and to sell, rent, lease, or otherwise dispose of assets of the Receivership Companies in the exercise of its reasonable business judgment, except for real properties, which it shall not sell or dispose of without further orders from this Court.

**IT IS FURTHER ORDERED** that Nach & PPRS may file amended articles of organization to make it a manager-managed limited liability company managed by Nach & PPRS and to remove any "Manager" or "President" (as the case may be) to show the new "Manager" or "President" of that entity is the Receiver.

**IT IS FURTHER ORDERED** that Nach & PPRS shall file monthly reports of Nach & PPRS's activities and accounting for the income and disbursements and proposed fees/expenses made by Nach & PPRS within twenty (20) days after the month's end, and a copy shall be served upon all parties appearing in this action. The Parties shall have fifteen (15) days after service of Nach & PPRS's report to file any objections thereto; failure to file an objection within such time shall be deemed an acceptance and approval of

the report and the payment of all fees and expenses set forth therein. No further application to, or order of the Court, will be necessary for the approval of the Receiver's fees and expenses, or those of the Receiver's professionals.

The monthly reports of Nach & PPRS's activities shall include identifying the steps taken by Nach & PPRS to implement the terms of this Order and to protect, preserve and prevent any diminution in the value of the Property of the Receivership Estate, including the real property, and raising any other matters that Nach & PPRS believes should be brought to the Court's attention.

**IT IS FURTHER ORDERED** that Nach & PPRS may charge for Nach & PPRS's services, which may include the services of the staff of Nach & PPRS. Nach & PPRS may charge for reimbursement of the costs and expenses for Nach & PPRS's services and for the interim fees of Nach & PPRS and the Nach & PPRS staff according to their standard hourly billing rates, which are:

| | |
|---|---|
| Adam Nach | $395/hr. |
| Director | $350/hr. |
| Associate/Manager: | $274/hr. |
| Support Staff | $95/hr. |
| Consultants | $300/hr. |

**IT IS FURTHER ORDERED** that PPRS may employ, hire, engage, and retain attorneys, certified public accountants, property managers, investigators, consultants, and any other personnel or employees at commercially reasonable rates (including affiliates), which the Nach & PPRS deems, in its business judgment, necessary to assist it in the discharge of its duties. Nach & PPRS is authorized to hire the law firm of Lane & Nach, P.C. Attorney Stuart B. Rodgers is qualified to assist Nach & PPRS in their duties in this matter. No further application to the Court is required as to the employment of Lane & Nach, P.C. Lane & Nach, P.C. may be reimbursed at their standard hourly billing rates, which are:

| | |
|---|---|
| Stuart B. Rodgers: | $450/hr. |
| Of Counsel and Partners: | $330-$420/hr. |
| Other associates: | $215-$335/hr. |
| Paralegals: | $50-$175/hr. |

**IT IS FURTHER ORDERED** that if the net revenues are insufficient to pay the ordinary, reasonable and necessary costs and expenses of the management and operation of the Receivership Estate, authorizing any of the parties, in their sole discretion, but without an obligation to do so, to advance to the Nach & PPRS sufficient funds to pay such ordinary, reasonable and necessary costs and expenses as any of the parties may elect to have paid (hereinafter, the "Receivership Advances"), reimbursable as receivership expenses, and further authorizing the Receiver to issue receivership certificate(s) to said party, at said party's request, reflecting the amount and priority of the Receivership Advances and to cause such receivership certificates to be recorded in the real property records, preserving any and all claims against the Property of the Receivership Estate and/or parties.

**IT IS FURTHER ORDERED** that upon the termination of the Receivership Estate, Nach & PPRS shall file with the Court a "Final Report and Accounting" or similar report, which sets forth any and all fees and expenses claimed by Nach & PPRS. The Final Report shall include a summary of Nach & PPRS's activities, including identifying the steps taken by Nach & PPRS to implement the terms of this Order and to protect, preserve and prevent any diminution in the value of the Property of the Receivership Estate, including the real property, and raising any other matters that Nach & PPRS believes should be brought to the Court's attention.

If no objection thereto is filed and served on or within ten (10) days following service thereof, such Final Report and Accounting may be paid, Nach & PPRS may be discharged. If an objection is timely filed and served, such Final Statement of Account shall not be paid absent further order of this Court. In the event objections are timely made

to such fees and expenses, those specific fees and expenses objected to will be paid within ten (10) days of an agreement among the parties or the entry of an order by this Court adjudicating the matter.

**IT IS FURTHER ORDERED** that upon termination of the Receivership, if there is a Court Order directing disposition of the funds held in the Receivership Estate, the Receiver shall disburse the funds pursuant to the Court Order. If there is no Court Order directing disposition of the funds held in the Receivership Estate, then the Receiver shall seek to deposit the funds in the Court Registry, or if the parties agree otherwise or the Court directs otherwise, into an escrow account for the benefit of the Trust and/or its beneficiaries.

**IT IS FURTHER ORDERED** that the Receiver is not authorized to list for sale or sell real properties of the Receivership Companies for sale without further order of this Court. The Receiver is authorized to remove any existing listings as of the date of this Order.

**IT IS FURTHER ORDERED** that any sale of Property shall be on an as/is where/is basis without any warranties or guarantees. Additionally, the Receiver may sell Property free and clear of liens and encumbrances, subject to further Court order. The Receiver is not authorized to list for sale or sell real properties of the Receivership Companies for sale without further order of this Court.

**IT IS FURTHER ORDERED** that Nach & PPRS may demand, collect, and receive all income, proceeds, revenues, receivables, rents, profits, or other amounts generated or derived from the real properties of the Receivership Companies. Such amounts will be utilized consistent with the provisions of this Order and otherwise held by the Receiver pending entry of an Order directing disbursement of the proceeds to the Parties.

**IT IS FURTHER ORDERED** that the Receivership Estate, the Receiver, and its employees, agents, attorneys and all professionals and management companies retained by

the Receiver shall have no liability for any employment benefits, obligations, or debts incurred by the parties to this action. The Receiver and its employees, agents, attorneys, and all professionals and management companies retained by the Receiver shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, without prior authority from this Court. In any event, no suit shall be maintained against the Receiver or its agents unless the Receiver has acted outside the scope of its authority and committed fraud or gross negligence in the administration of its duties. The Receiver is acting solely in its capacity as a receiver and the debts of the Receiver are solely the debts of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver and its staff, employees, agents, attorneys, and all others retained by the Receiver for the performance of the Receiver's duties hereunder shall have no liability for any obligations or debts incurred by or related to the parties in this proceeding, any Trust beneficiary, or the Receivership Estate. Unless based on willful, reckless, or intentional misconduct of the Receiver or its employees, agents, and consultants, all obligations and risks incurred by the Receiver and its consultants, agents, and employees in the discharge of its duties shall be obligations and risks solely to the Receivership Estate. The Receiver shall be and hereby is excused and exculpated from any and all personal liability, unless based on willful, reckless, or intentional misconduct of the Receiver or its employees, agents, and consultants; provided, however, that nothing in this paragraph shall in any way limit the liability of the surety for any obligations on the Receiver's Bond. The parties to this action and their affiliates, agents, employees, or others acting in concert with them, are forever barred from asserting any claims against the Receiver arising out of its conduct of the affairs of the Receivership Estate for actions taken in good faith and in the exercise of sound business judgment; the Receiver is performing a judicial function and serving in a judicial capacity. Nothing in this Order is intended to limit those protections provided under the law for receivers.

. . .

**IT IS FURTHER ORDERED** that the Receiver's liability for any action taken in the course of its duties shall be limited to the Receivership Estate. The Receivership Estate shall indemnify and hold harmless the Receiver, and any affiliate, member, officer or agent of the Receiver from any claims, liability, loss, cost or expense (including reasonable attorneys' fees and costs) arising out of this Receivership, unless the Receiver has acted outside the scope of its authority and committed fraud or gross negligence in the administration of its duties.

**IT IS FURTHER ORDERED** that the Receiver and its employees, agents, attorneys and all professionals and management companies retained by the Receiver shall have no liability for any obligations, or debts incurred, by the Receivership Companies. The Receiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, without prior order from this court prior to the Receiver's taking possession of the Receivership Estate; provided, however, that the Receiver has the discretion to do so if the Receiver deems it in the best interest of the Receivership Estate. No utility or other vendor may terminate service or the provision of other goods or services to the Receivership Estate as a result of the non-payment of pre-receivership obligations, without prior order of this Court. The Receiver may, in the name of the Receivership Estate transfer any Receivership Companies' existing utility accounts to the name of the Receivership Estate; or open new utility accounts in the name of the Receivership Estate to provide services to Property of the Receivership Estate. The Receiver shall be entitled to utilize any of any Receivership Companies' utility deposits or transfer any utility deposits to the Receivership Estate. No third party is authorized to combine the accounts of this Receivership Estate with the accounts of any other Receivership Estate in which this Receiver is appointed. The Receivership Estate shall not be responsible for payment of any utility bills, unpaid payroll expenses, or other unpaid invoices for services or utilities incurred by, or for the benefit of, the Receivership Companies or any beneficiary prior to the Receiver's taking possession

of any Property of the Receivership Estate; provided, however, that the Receiver has the discretion to do so if the Receiver deems it in the best interest of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver shall not be responsible for filing reports pursuant to the Corporate Transparency Act or Beneficial Ownership Information Reports on behalf of the Receivership Companies. The Receiver shall not be responsible for filing tax returns on behalf of the Receivership Companies.

**IT IS FURTHER ORDERED** that the Receiver may record this Order with the applicable County Recorder(s).

**IT IS FURTHER ORDERED** that in the event any party violates the terms of this Order, the Receiver may petition this Court to issue an Order to Show Cause why such party should not be found to be in contempt and impose appropriate sanctions and penalties, which may include, but are not limited to, an award of Receiver's Fees and Costs pertaining to the violation, the Receiver's reasonable Attorney's Fees and Costs incurred, and compensatory/punitive damages.

**IT IS FURTHER ORDERED** that Nach & PPRS shall be empowered to commence an ancillary Receivership proceeding in another State or County in Arizona to administer Property of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver is authorized to communicate with all such persons as it deems appropriate to inform them of the status of this matter and the financial condition of the Receivership Companies.

**IT IS FURTHER ORDERED** that Receivership Companies and their current or former managers, officers, directors, members, employees, partners, trustees, agents, and representatives, including Alissa Chiaravanond, shall cooperate with the Receiver in the transition of the management of the Receivership Companies and performance of the duties and responsibilities of the Receiver by making themselves reasonably available to assist the Receiver as requested and shall make immediately available for turnover to the Receiver, if requested, all of their records, passwords, access codes, pin numbers, keys,

and alarm codes concerning the Receivership Companies and its accounts, computers, and property.

**IT IS FURTHER ORDERED** that the Receiver is empowered to enlist law enforcement for the protection of the Property of the Receivership Estate or to enforce an order of this Court, including to remove a party from the Property of the Receivership Estate or restraining a party's return to the Property of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver or any party to this action may, at any time, on proper notice, apply to this Court for further or other instructions, and for additional powers necessary to enable the Receiver to properly fulfill the Receiver's duties; and that except for good cause shown necessitating shorter notice, three (3) business days' prior notice shall be considered proper notice under this Order and such notice may be personally served, sent by pre-paid registered or certified U.S. mail, or given in any manner allowed under the Federal Rules of Civil Procedure governing civil actions generally.

**IT IS FURTHER ORDERED** that the parties to this action shall be entitled to have access to, and make copies of, documents in the Receiver's possession at their own expense during normal business hours. The Receiver shall retain all books and records for a period of time not to exceed sixty (60) days from the discharge of the Receiver, at which time the Receiver may destroy all such records without further application to the Court.

**IT IS FURTHER ORDERED** that Nach & PPRS shall promptly notify the Court of any failure or apparent failure of any person to comply in any way with the terms of this Order.

**IT IS FURTHER ORDERED** that Nach & PPRS shall remain appointed as the Receiver over the Receivership Companies until further order of the Court.

**IT IS FINALLY ORDERED** that the Court shall retain jurisdiction over the Receivership Companies and the other parties hereto for the purpose of enforcing the terms

of this Order and ordering such other relief upon proper showing as is consistent with this Order.

Dated this 17th day of January, 2025.

_____
Honorable John J. Tuchi
United States District Judge