Devin Sreecharana, Esq. (029057)
Trevor J. Wainfeld, Esq. (037146)
MAY, POTENZA, BARAN & GILLESPIE, P.C.
1850 N. Central Ave., Suite 1600
Phoenix, Arizona 85021
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: devin@maypotenza.com
        twainfeld@maypotenza.com

Moshe Y. Admon, Esq. (034169)
Admon Law Firm, PLLC
300 Lenora St., #4008
Seattle, Washington 98121
Telephone: (206) 739-8383
Email: jeff@admonlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh,<br><br>          Plaintiff,<br><br>v.<br><br>Alissa Chiaravanond, an individual resident of Arizona, Pacific Shangrila LLC, a Nevada limited liability company, Cathedral Shangrila LLC, a Nevada limited liability company, Nido di Stelle LLC, a Nevada limited liability company, ILU LLC, an Arizona limited liability company,<br><br>          Defendants. | Case No.: CV-2308622-PCT-JJT<br><br>**PLAINTIFF'S MOTION TO MODIFY RECEIVERSHIP ORDER BY ADDING CATHEDRAL SHANGILA LLC AND NIDO DI STELLE LLC TO THE RECEIVERSHIP ESTATE AND FOR THE TRANSFER OF FUNDS FROM DEFENDANT CHIARAVANOND TO RECEIVER**<br><br>**(Expedited Consideration Requested)**<br><br>**(Oral Argument Requested)** |

Defendants' mismanagement and recent limited, non-substantive engagement in this case merit expansion of the Receivership to include management of Corporate Defendants Cathedral Shangrila LLC ("Cathedral") and Nido di Stelle LLC ("Nido") and preservation of their assets, including the lucrative two homes and unimproved real property in Sedona,

Arizona.[1]

Since the Court appointed Adam Nach of Peak Performance Restructuring Services, LLC (the "Receiver") as general receiver over Corporate Defendants Pacific and ILU (Doc. 70) (the "Receivership Order"), additional information has come to light in support of this Motion. Significantly, after the Receivership Order's entry and as the below graphics demonstrate, Mr. Huynh learned the Palisades Fire destroyed the Malibu Home which was the subject of his Emergency Motion for the Appointment of a Receivership over Pacific Shangrila LLC and ILU LLC ("First Receivership Application") (Doc. 61). https://recovery.lacounty.gov/palisades-fire/ (last checked February 11, 2025) (the red dots in the image on the right indicate destruction of more than 50% of the structure).



Worse yet, **Defendants now admit they allowed the subject fire insurance to lapse in**

---

[1] Pacific Shangrila LLC ("Pacific"), ILU LLC ("ILU"), Cathedral, and Nido are collectively referred to as the "Corporate Defendants."

1    *October 2024*. **Exhibit A**, Declaration of Trevor J. Wainfeld, at ¶ 6.

2          Further, Defendants do not appear to know and/or are incapable of promptly

3    determining the status or identity of accounts, policies, and other documents/vendors related

4    to the Corporate Defendants. Their articulated efforts to piece together where Defendant

5    Chiaravanond stored/stores relevant information and access, review, and disclose such

6    information is ongoing. *See* (Doc. 77). Conservatively, that process will not be complete for at

7    least a month—but likely much longer given the volume of data, Defendants' request to review

8    and exclude alleged personal, irrelevant data, and the entry of an ESI Order and application of

9    related protocol. *See id*. Relying, in part, on their pending ESI collection and review,

10   ***Defendants still have not provided any document disclosure under Rule 26 or otherwise***

11   ***responded to Mr. Huynh's pending First Set of Requests for Production of Documents or***

12   ***Interrogatories*** (even on a rolling basis, or unrelated to the pending ESI collection and review).

13   Although counsel recently appeared on the Defendants' behalf, the Defendants' ability to

14   timely and completely provide necessary information to ensure the protection of the at-issue

15   assets and move this case forward on its merits is extremely limited.

16          Such inability unnecessarily exposes Mr. Huynh to, among other things, further loss as

17   it relates to the Sedona Properties, which, like the Malibu Properties, comprise his retirement

18   nest egg. This, in addition to Defendant Chiaravanond's documented mismanagement of the

19   Sedona Properties, which Mr. Huynh described in his First Receivership Application—*e.g*.,

20   lack of communication with vendors, non-payment of vendors and HOA fees, resulting in a

21   lien, and failure to maintain the Sedona Properties. (Doc. 61 at Section I(C)).

22          Further, the Receiver needs funds to manage the Receivership Estate, including

23   maintaining the Sedona Properties and, potentially, making them available for lease. Defendant

24   Chiaravanond, personally or through the Corporate Defendants, is believed to hold

25   $2,270,000.00 that Mr. Huynh caused to be transferred to her to maintain and improve the

26   Investment Properties for his benefit. **Exhibit B**, Declaration of Phong Thanh Huynh, at ¶¶ 12-

27   14. To the extent any Defendant holds some or all those funds, they should immediately

28   transfer them to the Receiver to pay for expenses and fees relating to his management of the

Receivership Estate.

Under the circumstances, the most efficient and effective method of preserving the *status quo*, protecting all parties' alleged rights, and judicial and party economy is to expand the Receivership Estate to include Cathedral and Nido and provide the Receiver the aforementioned funds from Defendants, among any other funds belonging to the Corporate Defendants, to manage the Receivership Estate pending this action's resolution. Mr. Huynh respectfully requests this Court modify its Receivership Order accordingly in the proposed form filed with this Motion.

The following Memorandum of Points and Authorities, exhibits cited herein, and the record support this Motion.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    **RELEVANT FACTUAL BACKGROUND**[2]

This case involves the following real property that Mr. Huynh alleges was purchased for his sole benefit, but Defendants fraudulently retained title, control, and all benefits from these properties. (Doc. 1, Compl., ¶¶ 28-31, 78).

(1)    Defendant Pacific holds title to 20990 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu House");

(2)    Defendant ILU holds title to 20966 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu Land" and with the Malibu House, the "Malibu Properties");

(3)    Defendant Cathedral holds title to 288 Back O Beyond Circle, Sedona, Arizona 86336 ("Sedona House 1");

(4)    Defendant Nido holds title to 95 Cross Creek Circle, Sedona, AZ 86336 ("Sedona House 2"); and

(5)    Defendant Nido holds title to 95 Ravens Call Place, Sedona, AZ 86336 ("Sedona Land" and, with Sedona House 1 and Sedona House 2, the "Sedona

---

[2] For brevity's sake, Mr. Huynh incorporates by this reference Section I, Background, of the Court's Order denying Defendants' Amended Motion to Expunge *Lis Pendens* (Doc. 55) and Section I, Relevant Factual Background of the First Receivership Application (Doc. 61), both summarizing facts pled in his Complaint.

Properties").[3]

*Id.* at ¶¶ 3-10, 78. Between August 27, 2020 and August 25, 2023, Mr. Huynh transferred $2,270,000 to Defendant Chiaravanond's personal bank account at Chase Bank to maintain and improve the Investment Properties (the "Funds").[4] Ex. B at ¶¶ 12-15.

Mr. Huynh filed claims for, *inter alia*, breach of the implied covenant of good faith and fair dealing, fraud, constructive fraud, unjust enrichment, quiet title, and constructive trust. (Doc. 1 at 12:1-26:14). Among other relief, he seeks to obtain title to the Investment Properties, including the Sedona Properties. *Id.* at 26:24-27:12. He also pled his request for a receiver. *Id.* at ¶¶ 197-209. The preservation of the Sedona Properties, and their related value, is essential to the claims for relief that Mr. Huynh properly pled in this action.

In this Motion, Mr. Huynh references evidence demonstrating Defendants have mismanaged the Investment Properties. They left those Properties exposed to critical damage and, at least in one instance, total loss. Mr. Huynh is without documents or information necessary to ascertain the Corporate Defendants' assets, including those related to the Investment Properties. The Properties which were to be rented are inexplicably unprofitable for Defendants' failure to authorize basic repairs.

Mr. Huynh subpoenaed Sedona.org, an entity managing Sedona House 1. (Doc. 61-2 at ¶ 14, Ex. 16 thereto). Through Sedona.org's subpoena response and responsive documents, it appears that between December 2022 and mid-2024, the property manager for Sedona House 1 had experienced serial delays in communication or non-responsiveness from Defendant Chiaravanond regarding approval of certain necessary maintenance. (Doc. 61-2 at ¶¶ 15-18 and Exhibits 12-16 thereto). As of July 2024, the property manager for Sedona House 1 continued to reach out to Defendant Chiaravanond regarding repairs, to no avail. *Id.* at Exhibit 14 thereto. Apparently, because Defendant Chiaravanond would not respond to their emails,

---

[3] The Malibu House, Malibu Land, Sedona House 1, Sedona House 2, and Sedona Land are collectively referred to herein as the "Investment Properties."

[4] The Funds were sent to Chiaravanond's account ending in 9006 at Chase Bank's Branch in San Francisco – Noe Valley, 3998 24th Street, San Francisco, CA 94114 ("Chiaravanond's Account"). Ex. B at ¶ 12, Ex. 1 thereto.

the property management company sent emails to Defendant Chiaravanond that would authorize necessary repairs if she did not respond by a particular date, including replacement of the air conditioning system costing about $15,000.00. *Id.* at Exhibit 15 thereto. Defendant Chiaravanond does not appear to have responded to those messages or paid repair invoices because Sedona.org's subpoena response did not include any such messages or payment confirmation. Sedona.org had to remove the rental listing for Sedona House 1, for a time, because it was uninhabitable by renters. (Doc. 61-2 at Ex. 13 thereto). It is unclear if and when it was relisted. Mr. Huynh understands that Defendant Chiaravanond still had not responded to Sedona.org as of December 2024.

On June 28, 2024, HOAMCO (the property management company for Sedona House 2) contacted Mr. Huynh to alert him that the post office was returning mail as undeliverable. (Doc. 61-3 at ¶ 4 and Exhibit 1 thereto). On July 16, 2024, Mr. Huynh became aware that Sedona House 2's HOA payments were $2,885.00 in arrears, and its HOA was preparing to record a lien and foreclose on Sedona House 2. *Id.*

Since the Court entered its Receivership Order, Mr. Huynh learned that the Malibu House burned down in the tragic Palisades Fire that swept across Malibu and surrounding areas in January 2025. Furthermore, Defendants failed to take basic action necessary to preserve property and fire insurance protection, resulting in termination of that policy in October 2024. Ex. A at ¶ 6. Defendants apparently failed to obtain a replacement policy, leaving the Malibu House uninsured at the time of the Palisades Fire. This a potential $5 million-dollar-plus loss to Mr. Huynh that Defendants have not attempted to explain.

Defendants' current counsel appeared in this case on January 23, 2024, and alerted Mr. Huynh's counsel to his representation that same day. (Doc. 73); Ex. A at ¶ 4. Counsel for Mr. Huynh, Defendants, and the Receiver telephonically conferred on January 27th to discuss, *inter alia*, the status of discovery and location of documents the Receiver needed immediately. Ex. A at ¶ 5. Among the most pressing was information about the Malibu House's fire insurance coverage. *Id.* Defendants failed to provide any insurance information, even as to the existence of a policy, until January 31, 2025, when they confirmed they allowed the policy to lapse on

October 20, 2024. *Id.* at ¶ 6. On January 23rd, the Receiver also requested immediate information concerning Pacific's and ILU's bank accounts, but basic bank information (*i.e.*, identification of account branches and numbers) was not provided until February 3, 2025, and information more specific than that remains undisclosed. *Id.* at Exhibits 3, 4 thereto. In an age where such information is available by keystrokes, and given the materiality of this information, Defendants' unexplained delays in providing it are concerning.

Defendants have also mismanaged the Corporate Defendants' and Investment Properties' records, resulting in possible spoliation of the same.[5] On January 29 and January 30, 2025, Defendants' counsel noted via email that Defendant Chiaravanond contends she lost access to accounts and documents. Ex. A at Ex. 3 thereto. *See also* (Doc. 77 at 3:9-11) ("Ms. Chiaravanond lost access to many of her online accounts, including accounts that contain insurance and banking information as well as accounts relating to the entities at issue in this lawsuit."). Some of these documents, she says, were at the couple's prior home in Singapore. (Doc. 77 at 3:13-16). Mr. Huynh denies this, and it makes no factual sense.[6] *See* Ex. B at ¶¶ 4-11. But even if true, Defendant Chiaravanond's disregard for what may have been critical corporate/property documents is clear.

Defendant Chiaravanond's assertion that she lost a book containing her passwords when the Malibu House burned down in the Palisades Fire (*see* Doc. 77 at 2:9-13) is equally unavailing because that property was intended to be a rental property and was listed for monthly rental as recently as November 13, 2024. https://www.redfin.com/CA/Malibu/20990-

---

[5] Mr. Huynh is not asking the Court to enter any orders concerning discovery or spoliation of evidence in this Motion. Such motions will be filed, if necessary, in due course pursuant to this Court's Rules and Orders. Rather, Mr. Huynh is raising these evidentiary issues because the failure to keep and preserve corporate documents—particularly given this action's pendency over the last year and Singaporean legal proceedings between Mr. Huynh and Defendant Chiaravanond which pre-date this action—evidences Defendant Chiaravanond's mismanagement of the Corporate Defendants and Investment Properties.

[6] These recent allegations appear intended to shift blame to Mr. Huynh for the apparent non-existence of these relevant documents. There is no evidence that Mr. Huynh had them, and he denies that he did or that he otherwise knew of their alleged storage in the Singapore home. Ex. B at ¶¶ 4-11. Defendant Chiaravanond is yet to describe the documents or their contents.

Las-Flores-Mesa-Dr-90265/home/6852690 (last accessed February 14, 2025). If true, it could have given renters, contractors, and other unauthorized third parties access to information that would put the Investment Properties in danger. Or it could have resulted in those documents being lost, destroyed, or inaccessible at a critical time because of the unknowns of hosting renters. Leaving important passwords at a monthly rental property is unjustifiable.[7]

On February 4, 2025, Mr. Huynh requested Defendants provide further information supporting Defendants' allegations and defenses and stipulate to the appointment of the Receiver over all Corporate Defendants and their assets.  Ex. A at Ex. 5 thereto. Defendants' counsel indicated an intent to update Mr. Huynh's counsel on the status of Defendants' belated disclosure and discovery responses following a then impending meeting with Defendant Chiaravanond (no update has been provided to date) and Defendants refused to stipulate to the Receiver's appointment over the Sedona Properties, resulting in this Motion. *Id.*

## II.   <u>LEGAL ARGUMENT</u>

A receiver should be immediately appointed over Cathedral and Nido, the entities that hold title to the Sedona Properties, to manage them along with Pacific, ILU, and the Malibu Properties. Defendants' inability to manage and control the Investment Properties is a matter of record, resulting in a multi-million-dollar loss of the assets at issue in this action. A professional is needed to manage the Investment Properties, confirm their insurance status, preserve cash, complete repairs, rent the Sedona Properties for profit, and maintain records during this action's pendency.

For brevity's sake, Mr. Huynh incorporates by reference the legal standard for a receiver's appointment provided in his First Receivership Application (Doc. 61) at 9:25-10:16.

---

[7] Defendant Chiarvanond's recent revelations, disclosed for the first time in her Status Report (Doc. 77), come long after being served with written discovery on November 12, 2024 (Doc. 54) and receiving an extension of Defendants' discovery responses to December 23, 2024 (Doc. 61-2 at ¶ 7). Why she or her prior counsel did not take immediate action several months ago to preserve or retrieve this information is unknown and highly concerning. *But see* fn. 6 *supra*.

**A.    Mr. Huynh has valid claims.**

Mr. Huynh's asserted claims arise from his transfer of $15,445,000 to Defendants under Defendant Chiaravanond's alleged fraudulent scheme to induce his purchase and ownership of the Investment Properties, through the Corporate Defendants or otherwise. (Doc. 1). Each claim relates to both Mr. Huynh's alleged ownership interest in the Corporate Defendants and equitable interest in the Investment Properties, in which he seeks to establish legal title in his name. Mr. Huynh has not benefitted in any way, as intended, from this transfer due to Defendant Chiaravanond's wrongful 100% ownership and control (pre-Receiver) over all assets purchased and maintained with Mr. Huynh's funds via the single-member Corporate Defendants. Mr. Huynh has asserted valid legal and equitable claims related to the Sedona Properties, including claims to quiet title and for constructive trust. (Doc. 1). *See also* (Doc. 55 at 8:5-6) (concluding "Plaintiff has sufficiently pled a claim or claims affecting title to real property."); (Doc. 70 at 3:21-24).

**B.    Defendants defrauded Mr. Huynh and continue to do so.**

As alleged, all Defendants, through Defendant Chiaravanond, acted fraudulently in the events leading up to this action (Doc. 1) and there is a probability of future fraudulent conduct relating to the Sedona Properties, in addition to the Malibu Properties.

Mr. Huynh previously provided this Court with evidence that he intended to purchase the Investment Properties, including the Sedona Properties, as a personal investment. *See* (Doc. 33-3 at ¶¶ 5-15, 18). Aside from Defendant Chiaravanond's own testimony, Defendants have not produced any contrary evidence or any evidence purporting to support their defenses. (Doc. 61-2 at ¶¶ 4, 5). The Court has acknowledged that "there is at least a probability that Defendants defrauded Plaintiff." (Doc. 70 at 3:24-26).

Further, given Defendants' mismanagement of insurance policies and documents related to the Investment Properties, there are heightened concerns that Defendants will perpetuate their fraud. For example, there may be bank accounts holding money Mr. Huynh transferred to Defendants that will not be identified through discovery. Given Defendant Chiaravanond's access to offshore accounts, such funds are unlikely to be recovered and used

on the Investment Properties, consistent with Mr. Huynh's intent when he transferred the Funds. Ex. B at ¶¶ 12-15.

      **C.**      **The Sedona Properties and Funds are in imminent danger of being injured, diminished in value, or squandered.**

Contrary to Mr. Huynh's intent and reasonable expectation when he transferred ~$15.5 million to Defendants, Defendants exert complete and unfettered control over and benefit from the Sedona Properties. The Defendants have proven incapable of caring for the Investment Properties without damaging them, diminishing their value, or squandering them. Mr. Huynh does not know the insurance status of the Sedona Properties. Given Defendants' failure to maintain insurance for the Malibu House, there is a likelihood that the Sedona Properties are uninsured, underinsured, or otherwise critically uncared for. There is also substantial evidence of the Defendants' mismanagement of all the Investment Properties identified in Section I, *supra*, including failure to pay third parties nearly resulting in liens, failure to timely repair the Investment Properties resulting in rental listings terminating, and failure to maintain insurance. If another natural disaster or some other emergency occurs, Defendants are in no position to protect or care for the Investment Properties. They have proven unable and unwilling to do so even without such a disaster. At the very least, the failure to authorize repairs needed to list the Sedona Properties for lease is causing those Properties' rental value to be squandered.

Defendant Chiaravanond is known to have overseas accounts that may well contain some or all of the Funds. Defendants have produced no evidence to the contrary and no evidence of whether the Funds were spent on the Investment Properties or otherwise, when they were spent, why they were spent, etc. The Receiver should have and Defendants should provide it with immediate access to the Funds so the Receiver can perform its functions, including but not limited to acquiring insurance for the Sedona Properties (if uninsured), making necessary repairs to make them rentable and profitable, and paying for the Receiver's services.

Because the Sedona Properties and Funds are in imminent danger of being injured,

1    diminished in value, or squandered, Mr. Huynh's requested expanded Receivership is

2    appropriate.

3        **D.    Other legal remedies are inadequate.**

4        If Mr. Huynh succeeds in this case, there will likely be a finding that he paid for the

5    Investment Properties to own a 100% interest in the Sedona Properties, which are each high-

6    value luxury homes in a choice neighborhood in Sedona, Arizona. Interests in specific real

7    property are inadequately remedied by money damages. *See Woliansky v. Miller*, 135 Ariz.

8    444, 446, 661 P.2d 1145 (App. 1983) ("Specific performance is ordinarily available to enforce

9    contracts for the sale of real property because land is viewed as unique and an award of

10   damages is usually considered an inadequate remedy."). This is why Mr. Huynh seeks to

11   obtain title to the Sedona Properties as one of his remedies in this action. Considering the

12   Defendants' demonstrated inability to properly manage the Investment Properties (Section I,

13   *supra*), the Court should remove the Sedona Properties from Defendants' exclusive control

14   while this action is pending to preserve them for Mr. Huynh's requested equitable relief.

15       Further, Mr. Huynh invested in the Investment Properties as part of a retirement

16   investment plan, not as part of a discreet transaction for short-term profit. He purchased the

17   Investment Properties for the prospect of rental income and to have the retirement security of

18   a long-term investment in lucrative real property that one would expect to significantly

19   appreciate over time.  Significant damage to or loss of such Investment Properties would

20   stymy his plan. To the extent such harm is considered "intangible," courts routinely find

21   "intangible injuries" qualify as irreparable harm. *See, e.g.*, *Enyart v. Nat'l Conference of Bar

22   Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (loss of opportunity to pursue chosen

23   profession.); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597,

24   603 (9th Cir. 1991) (damage to ongoing advertising efforts, recruitment, and goodwill); *Am.

25   Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The

26   threat of being driven out of business is sufficient to establish irreparable harm."); *Arizona

27   Recovery Hous. Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990, 997–98 (D.

28   Ariz. 2020) ("being forced to shutter one's business may well be an irreparable harm.")

1    (citation omitted).

2          As to the Funds, Mr. Huynh transferred them as part of his maintenance and

3    improvement of the Investment Properties. The Receiver should be allowed to claim the Funds

4    so it has working capital to maintain the Investment Properties, including obtaining insurance

5    and making repairs to the Sedona Properties. Otherwise, their value will predictably diminish,

6    which results in exactly the sort of harm contemplated in the previous two paragraphs in this

7    section. And as the Court noted when it appointed the Receiver, Mr. Huynh's "relief may not

8    be obtainable considering the disappearance of Ms. Chiaravanond." (Doc. 70 at 4:4-5). While

9    Defendant Chiaravanond has, for a second time, returned from an absence in this case, she

10   has a propensity to disappear and may well redeploy that tactic strategically, without

11   providing the Funds that were intended to maintain and improve the Investment Properties to

12   the Receiver.

13         Absent adequate legal remedies, Mr. Huynh's requested expanded Receivership is

14   appropriate.

15   **E.    Mr. Huynh's harm would outweigh Defendants' harm if the Receivership is not modified.**

16         Given the nature of Mr. Huynh's claims, his significant investment in the Investment

17   Properties, current lack of title ownership of the Investment Properties, and potential

18   additional exposure to loss if the Sedona Properties are damaged like the Malibu Properties,

19   the balance of equities tips strongly in favor of appointing a receiver to preserve the *status*

20   *quo*. Appointing a receiver will have no adverse impact on the Defendants because the

21   receiver's purpose would be to preserve the Investment Properties' value and records to the

22   extent possible. Defendants should share Mr. Huynh's interest in preserving what is left of the

23   Investment Properties.

24         As to the Funds, permitting the Receiver to claim the Funds from Defendants that were

25   always intended to be applied to the Investment Properties' maintenance and improvement

26   does not harm any Defendant. The Funds were not theirs to begin with. But if Defendants

27   prevail in this action, they will have the benefit of the Receiver maintaining and improving

28

the Investment Properties through no additional expense to them.

Mr. Huynh's harm would outweigh Defendants' harm if the Receivership does not expand as requested.

**F.  Mr. Huynh is highly probable to succeed on his claims, but will suffer irreparable harm if a receiver is not appointed to preserve and protect the Sedona Properties and the Funds.**

Mr. Huynh is highly likely to succeed on his various claims. Now months into discovery, Defendants have not produced any credible evidence to support their defenses. (Doc. 61-2 at ¶¶ 4, 5, 13). Defendants' failure to participate suggests the fragility of their defenses, particularly considering the many millions of dollars at issue in this case. On the other hand, Mr. Huynh has produced evidence supporting his claim that the Investment Properties were meant to be acquired for his sole benefit. (Doc. 33-3 at ¶¶ 5-15, 18).

Mr. Huynh will suffer irreparable injury if the unique, lucrative Sedona Properties are mismanaged, ill-maintained, or destroyed without insurance like the Malibu House appears to have been. *See* Section IV(D), *supra*.

**G.  Mr. Huynh's interest in the Sedona Properties will be well served by Receivership.**

Defendants' wrongful control of the Investment Properties has been disastrous, already resulting in a multi-million-dollar loss. The Receivership will protect and preserve Mr. Huynh's alleged ownership interest in the Sedona Properties. The Receiver will coordinate insurance, manage necessary repairs to the Sedona Properties, communicate to the parties and the Court about the Sedona Properties' condition, pursue, collect, and preserve any rental proceeds for later distribution pending this action's resolution or party agreement, and collect and maintain records of the Sedona Properties. The Funds will allow the Receiver to accomplish those tasks.

**H.  Receivership supports the public interest.**

The Receiver's control over the Sedona Properties supports the public interest. Surely, the City of Sedona would prefer the Sedona Properties were housing tenants who would contribute to its robust tourism economy. And if a disaster or emergency occurs in the area,

the public interest would want an engaged person to assist with issues at the Sedona Properties. There is no credible argument that vacant properties in Sedona, without attentive management, are in the public interest.

### III. Expansion of Receivership to include Sedona Properties and order for Defendants to transfer the Funds to the Receiver is Appropriate.

Mr. Huynh respectfully requests that the Court expand the existing Receivership by appointing Adam Nach of Peak Performance Restructuring Services, LLC as Receiver over Cathedral and Nido. Mr. Nach's Amended Affidavit in support of this Motion is attached hereto as **Exhibit C**. Mr. Huynh further requests that the Court specifically order Defendants to deposit the Funds ($2,270,000) with the Receiver so such Funds can be used to maintain and improve the Investment Properties and compensate the Receiver (until the Investment Properties produce enough cash flow to satisfy the Receiver's fees). Otherwise, Mr. Huynh may need to make loans to the Receivership Estate consistent with Section IV, *infra*, which is incorporated in the proposed Order filed herewith. Considering the millions of dollars in Funds he already provided to manage, improve, and operate these Investment Properties, it is preferable and equitable to rely on the Funds, first. Mr. Huynh further requests the Receivership Order's (Doc. 70) remain otherwise unchanged.

### IV. The Funds and Mr. Huynh's advances may assist in the administration of the Receivership Estate and its assets.

Mr. Huynh also requests that the Receivership Estate have the power to borrow from Mr. Huynh to cover operating expenses of the Receivership, including but not limited to the Receiver's fees and costs, as determined by the Receiver in its sole discretion, provided that Mr. Huynh consents to making each such advance. If Mr. Huynh makes an advance, he would be given receivership certificates in exchange for the advances to the Receivership Estate. Mr. Huynh requests he be entitled to earn interest on such advances at ten percent (10%) per annum and Mr. Huynh and/or Receiver may cause such receivership certificates to be recorded in the real property and UCC records, preserving any and all claims against the Receivership Estate's assets, including but not limited to the Investment Properties.

Mr. Huynh only wishes to make such advances if the Funds are not transferred to the Receivership Estate or if the Funds are inadequate to cover the expenses of the receivership.

**V.    The Receivership Estate may need a property manager**.

The Receivership Estate has interests in residential real property. The Receiver requires a property manager to manage the real estate and intends to engage the services of R.O.I. Asset Management Solutions, LLC ("R.O.I.") for property management. The principal of R.O.I. is Beth Jo Zeitzer, who has significant experience in marketing and managing residential properties and in participating in court matters. **Beth Jo Zeitzer is married to Adam B. Nach but neither party believes this constitutes a conflict of interest.** The rates of R.O.I. Asset Management Solutions, LLC shall be reasonable and customary. While the Receiver's power to retain R.O.I. is included in the Receivership Order (Doc. 70), this section serves as a disclosure of the relationship between Ms. Zeitzer and Mr. Nach.

**V.    <u>CONCLUSION</u>**

Mr. Huynh's retirement plan is tied to the Investment Properties that Defendants are severely mismanaging. Expanding the Receiver Estate to include the Sedona Properties is necessary so they remain insured, repaired, maintained, and, ideally, profitable. To accomplish these tasks, the Receiver, who has already been appointed over the Malibu Properties, needs the Funds, consistent with Mr. Huynh's intent. Ex. B at ¶¶ 12-15. The Funds may also be needed to pay property taxes, third-party vendors, and other debts that could affect the value and title to the Investment Properties if they are underfunded. Expanding the Receivership does not impose any hardship on Cathedral or Nido because it will ensure the Sedona Properties are managed fairly, pursuant to proper oversight, and with funding. The Receiver's appointment to preserve and protect the business, assets, and accounts of Cathedral and Nido pending this action's outcome is appropriate.

Accordingly, Mr. Huynh respectfully requests the Court: (i) grant this Motion; (ii) schedule a return hearing at its earliest convenient opportunity; (iii) appoint Adam Nach of Peak Performance Restructuring Services, LLC as receiver over Cathedral and Nido, with no bond or minimal bond, to take immediate possession of the Sedona Properties, and grant

the Receiver all necessary authority, responsibilities, duties, and powers as set forth in the Receivership Order, as modified by proposed form of Order submitted herewith; (iv) order Defendants to transfer the Funds to the Receiver to be held as part of the Receivership Estate and applied as necessary for the Receiver to complete its duties and be paid for the same; and/or, (v) grant such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 14th day of February, 2025.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By /s/ *Devin Sreecharana*
    Devin Sreecharana, Esq.
    Trevor J. Wainfeld, Esq.

**ADMON LAW FIRM, PLLC**

Moshe Y. Admon

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2025, I transmitted the foregoing document by U.S. Mail to:

Daniel B. Mestaz
Matthew Hersh
MESTAZ LAW
5090 North 40th Street
Phoenix, AZ 85018
daniel@mestazlaw.com
matt@mestazlaw.com
*Attorneys for Defendants Alissa*
*Chiaravanond, Pacific Shangrila*
*LLC, Cathedral Shangrila LLC,*
*Nido di Stelle LLC, and ILU LLC*

*/s/ Elena Cordero*