**MESTAZ LAW**
5090 NORTH 40TH STREET
PHOENIX, AZ 85018
TELEPHONE (602) 806-2068

Daniel B. Mestaz (024477)
Matthew Hersh (037766)
John J. Daller (034016)
daniel@mestazlaw.com
matt@mestazlaw.com
john@mestazlaw.com
*Attorneys for Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh, | No. CV-23-08622-PCT-JJT |
| Plaintiff, | **Defendants' Opposition to Plaintiff's Motion to Modify Receivership Order** |
| v. | |
| Alissa Chiaravanond, et. al, | |
| Defendants | |

Plaintiff Phong Thanh Huynh overlooks a key component in moving to modify the Receivership Order: the burden of proof to secure that extraordinary relief is his and his alone. His Motion fails to carry this burden. It instead focuses on a hodge-podge of information not germane to the instant motion—outdated in some regards and contrary to the relief sought in others—and asks this Court to flip the burden of proof onto Defendants

1  to prove that the Receivership Order should not be modified. The Court should decline the
2  invitation.

3  And Plaintiff not only fails to meet his burden of proof; his evidence also supports
4  Defendants' view of the facts. Huynh provides only two pieces of evidence in support of
5  his motion. One, a series of documents evidencing transfers from him to Defendant
6  Chiaravanond, shows transfers of just under $2 million dollars. Declaration of Phong Tranh
7  Huynh, Ex. 1. The other, a bank statement Huynh claims is from his sister, shows a transfer
8  of just under $300,000. Huynh's sworn declaration claims that these transfers were "for the
9  purpose of maintaining and improving the Investment Properties that are held by the
10 Corporate Defendants, and not for any other purpose/reason." *Id*. ¶ 14. But that is not what
11 Huynh told his bank. In fact, he told his bank that the purpose of the transfer was not for
12 investment purposes, but for *personal expenses*:



19 Nor has Plaintiff shown the possibility of irreparable injury to his purported interest
20 in the Sedona Properties. Plaintiff's motion was based largely on the fact that Defendants
21 failed to insure the Malibu property prior to the fire and that she had not, as of the time of
22 the motion, obtained insurance on the Sedona properties. But Defendant Chiaravanond
23 have now obtained insurance to protect one of the Sedona Properties, and the second
24 property is expected to be insured shortly. Moreover, Chiaravanond has retained a skilled
25 real estate and property management expert—who has served as a court-appointed
27 receiver, trustee, or special master in over one hundred matters across many varied
28

industries and businesses—to assist Defendants with managing the Sedona Properties. Plaintiff also concedes that the same exigency does not exist here as did with requesting receivership over the Malibu properties. Doc. 79, p. 2:1-2. The motion should be denied.[1]

## I. PLAINTIFF HAS NOT SATISFIED HIS BURDEN OF PROOF OF HIS PROBABILITY OF SUCCESS IN THE ACTION.

Plaintiff's bid for a receivership fails at the threshold: his failure to submit admissible evidence establishing a likelihood of success in the underlying action. Under *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837 (9th Cir. 2009), a plaintiff seeking a receivership must show "the plaintiff's *probable success in the action*." 563 F.3d 844 (emphasis added). That tracks the language of caselaw in this Circuit (and others) holding that appointment of a receiver is an extraordinary remedy, like an injunction, and requiring that admissible evidence be presented and findings be made showing the necessity of a receivership. *E.g., Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 684 (9th Cir. 1988) ("To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor"); *cf Wickes v. Belgian Am. Educ. Found., Inc.*, 266 F. Supp. 38, 40 (S.D.N.Y 1967) ("[T]he appointment of a receiver 'is, like an injunction, an extraordinary remedy, and ought never to be made except in cases of necessity, and upon a clear showing that emergency exists, in order to protect the interests of the plaintiff in the property'") (*citing* 7 Moore, Federal Practice P66.05(1), at p. 1919 (2d ed. 1966).[2]

---

[1] Defendants do not oppose Plaintiff's Motion to Supplement Record.

[2] *See also Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1259-60 (D. Or. 2009) ("The Court 'has the authority to order a receivership, *but only after evidence has been presented and findings made showing the necessity of a receivership*'" and should state on the record its findings on the factors it used to decide whether to appoint a receiver)

Here, Plaintiff has not shown probability of success on the merits nor the possibility of irreparable injury. Plaintiff claims that the Overseas & Foreign Currency Transfer documents "are documents evidencing transfers from my accounts to Defendant Chiaravanond's personal bank account at Chase Bank, totaling $1,990,000." Doc. 78-2, p. 3, ¶ 12. He says the document showing itemized transactions for smaller sums is "evidencing a transfer…that was transferred to Defendant Chiaravanond through [Plaintiff's] sister's account at the Royal Bank of Canada." *Id*. at p.3, ¶ 13. He also says the foregoing documents "were for the purpose of maintaining and improving the Investment Properties that are held by the Corporate Defendants, and not for any other purpose/reason" and that he "never authorized the use of the funds…for anything other than the Investment Properties and have expected them to be used for the purpose described…since each transfer occurred." *Id*. at p.4, ¶¶ 14-15.

But Plaintiff's Declaration about the purpose of the transfers and his expectations about use of the transferred funds are belied by its exhibits, which show his transfers to Chiaravanond as personal expenses and not for investment purposes. Specifically, the Overseas & Foreign Currency Transfer documents state the purpose of the sums he transferred from his own accounts to Chiaravanond as "personal expenses," whereas several itemized transactions for much smaller sums transferred from his sister's personal account to unidentified recipient(s) each show instead as an "investment purchase." *Compare* Doc. 78-2, pp. 6-12 of 16 *with* pp. 14-16 of 16. The Motion does not include a

---

(*quoting Solis v. Matheson*, 563 F.3d 425, 438 (9th Cir. 2009) (emphasis added); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1189 (11th Cir. 1991) (affirming appointment of a receiver without an evidentiary hearing after a judgment on the merits); *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 242 (5th Cir. 1997) (the court must base its decision to appoint a receiver on "the moving papers and such answers, affidavits in apposition, or counter-affidavits as may be offered, and also on the testimony of witnesses in open court if the court deems such a hearing advisable") (*quoting* 7 James Moore et al., Moore's Federal Practice 66.04[3] (2d ed. 1996)).

4

Declaration from Plaintiff's sister about the purpose of these transfers, nor does it provide authentication of the document purportedly showing transactions from his sister's personal account.

In other words, *the only admissible evidence cited by Plaintiff* demonstrates a lack of probability of success. Plaintiff also contends that the Declaration with exhibits to his Response (Doc. 33-3 and Doc. 33) to Defendants' Motion to Set Aside Entry of Default support his claim that the properties purchased by Defendants were for his "sole benefit." However, neither the Declaration nor its exhibits demonstrate a probability of success on the merits. The Declaration does not include any sworn statement by Huynh that the properties purchased by Defendants were for his "sole benefit" or that he has personal knowledge of the source of the funds used to purchase the properties. The exhibits attached thereto include documents related to the potential purchase of properties, as well as emails between Huynh and Chiaravanond, but none support Huynh's contention that the properties were for his "sole benefit." Second, Plaintiff cites the Declaration of Trevor J. Wainfeld (Doc. 61-2, ¶¶ 4, 5, 13), which was filed with Plaintiff's Motion for Appointment of Receiver over the Malibu properties, to support his argument that Defendants' failure at that time to produce credible evidence suggests Defendants' defenses lack merit. Plaintiff again seeks to shift his burden of proof to Defendants, which does not show a probability of success.

Lastly, the Motion does not include any admissible evidence that one would expect a sophisticated businessperson like Plaintiff to obtain and keep regarding his purported investments through Defendants as an individual without United States citizenship seeking to invest in United States real estate. For example, any sophisticated businessman investing $15 million into the United States—or anywhere—would presumably be able to summon up evidence of due diligence, budget and planning documents, expenses and income forecasts, evaluation of relevant geographical markets and market conditions, analysis of risk and return, a comparison of differing investment opportunities, analysis of the cost of

money, evidence of compliance with U.S. laws and regulations about foreign direct investment, evidence accounting for the profit and loss generated by those investments, evidence accounting for those investments on tax filings, evidence showing an active hand in managing those investments—among many, many other pieces of evidence. But Plaintiff comes forward with nothing but his word—and a set of exhibits to a sworn declaration that undermine that very testimony. The effort falls well short.

## II. THE PROPERTY IS NOT IN IMMINENT DANGER.

The third *Canada Life* factor weighs against modification of the Receivership Order. The Sedona Properties are not in any imminent danger of being damaged, diminished in value, or squandered. Indeed, the Defendants have taken great steps—since the filing of this motion alone—to ensure that. As Defendant Chiaravanond describes in her declaration, she has now obtained insurance for one of the Sedona Properties, and the second property is expected to be insured shortly. Declaration of Alissa Chiaravanond ("Chiaravanond Decl."), ¶ 6 A, B. Chiaravanond has also engaged a transactional attorney for legal services relating to the Sedona Properties and has engaged Keith Bierman, the Senior Managing Director of MCA Financial Group—and a frequent court-appointed receiver himself—to help manage the Sedona properties. Id. ¶ 6 C, D. Defendants also retained new counsel and have been actively engaged and cooperative with them—indeed all but living in their counsel's office, or that if counsel's ESI consultant—in order to fulfill their responsibilities to Plaintiff and this Court. There is no more risk that the properties, or this litigation, will remain unattended. This factor weighs against modification of the Receivership Order.

## III. THERE IS NO FRAUDULENT CONDUCT HERE.

The second *Canada Life* factor inquires "whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant." *Canada Life*, 563 F.3d at 844. There is no evidence of past or present fraud here, nor a probability of such conduct. Plaintiff contends that Defendants defrauded him and continue to do so, arguing that he "intended

to purchase the Investment Properties…as a personal investment" and that Defendants' purported past mismanagement of the Investment Properties gives him heightened concerns of fraudulent conduct surrounding the funds he transferred to Defendants, inconsistent with his intent when he transferred the funds. Motion (Doc. 78), pp. 9:14-10:2; Motion to Supplement Record (Doc. 80).[3] Plaintiff further contends that this factor favors appointment of a receiver because Defendants have not produced evidence contradicting his position that he transferred funds to Defendants for purposes of a personal investment.

But what is pertinent to the second Canada Life factor is whether the purported fraud places the property or asset over which receivership is sought at risk for imminent waste or loss and not simply whether a plaintiff has alleged past fraudulent conduct. *Cf. Haase v. Chapman*, 308 F. Supp. 399, 406 (W.D. Mo. 1969) (citing *Wickles v. Belgian Am. Educ. Found., Inc.*, 266 F. Supp. 38, 41 (S.D.N.Y. 1967) (finding an emergency exists justifying the appointment of a receiver "where the plaintiff may suffer irreparable harm as a result of the fraudulent transfer without the appointment of a receiver); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1184 (11th Cir. 1991) (transfers to related entities and funneling money out of the country); *Chase Manhattan Bank v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26-27 (1st Cir. 1982) ("evidence [of] unfair and arguably fraudulent dealing"); *New York Life Ins. Co.*, 755 F. Supp. at 292-93 (diversion of assets to pay unrelated obligations).

And at no point have Defendants, including Chiaravanond, been dishonest about the management of the Sedona Properties.  Every fact in the Motion to Modify the Receivership Order and the related Motion to Supplement Record was voluntarily provided by Defendants to Plaintiff—in most cases, immediately after Defendants themselves learned it.  None of those issues were unilaterally discovered by Plaintiff or hidden from

him by Defendants. And as set forth above, those issues are in the past, as Defendants are now equipped with a full team and are meaningfully participating in this litigation. Chiaravanond Decl., ¶¶ 5-6. This factor weighs against modification of the Receivership Order.

### IV. RECEIVERSHIP OVER THE SEDONA PROPERTIES WOULD BE DEEPLY HARMFUL TO CHIARAVANOND.

The fifth *Canada Life* factor favors denial of the Motion. This lawsuit is not a run-of-the-mill business dispute about ownership and control over commercial real estate. Rather, it involves claims alleged by one spouse against another while they are in the middle of divorce proceedings pending overseas. Amid these actions, Chiaravanond was residing at one of the Malibu Properties and was forced to leave that property and numerous personal effects behind, which may have unfortunately been destroyed by the January 2025 Southern California wildfires. Chiaravanond Decl., ¶ 3. Forced to relocate, Chiaravanond temporarily resided in a temporary residence in the Los Angeles area and is now temporarily residing at one of the Sedona Properties. *Id*. In the aftermath of having been forced to flee a home with flames approaching, and now actively involved in this litigation, receivership over the Sedona Properties while one of them is serving as her home would be deeply harmful to Chiaravanond. Moreover, that home now serves as her sole residence and she keeps a wide range of personal possessions there, including memorabilia and documents going back to her childhood. It would be highly upsetting for her—or for anyone in her position—for that property to be accessed by anyone, including a court-appointed receiver or their representatives. *Id*.

Defendants recognize and appreciate in good faith Plaintiff's concerns with potential harm to his purported interests in the Sedona Properties, especially in light of Defendants' previous absences from this litigation. However, Defendants have since taken affirmative and prudent steps to protect those interests. Management of the Sedona

8

Properties is in good hands, one of the properties is now insured (and the other will be shortly), and bills related to the maintenance and repair of those properties have been paid. *Id.* at ¶ 6. Considering both the prospective injury to Defendants and the prospective harm to Plaintiff's interests, this factor weighs against modification of the Receivership Order.

## V. CONCLUSION

The motion should be denied.

Respectfully submitted this 28th day of February, 2025.

>*/s/ Matthew Hersh*
>Matthew Hersh
>Mestaz Law
>*Counsel for Defendants*

1  Served this same day via ECF and also by email to the following:

2  Devin Sreecharana
3  Trevor J Wainfeld
   May Potenza Baran & Gillespie PC
4  1850 N Central Ave., Ste. 1600
   Phoenix, AZ 85004-4633
5  602-252-1900
   devin@maypotenza.com
6  twainfeld@maypotenza.com

7  Moshe Y Admon
   Admon Law Firm PLLC
8  300 Lenora St., Ste. 4008
   Seattle, WA 98121
9  206-739-8383
   jeff@admonlaw.com

10 Adam Bennett Nach
11 Stuart Rodgers
   Lane & Nach PC
12 2001 E Campbell Ave., Ste. 103
   Phoenix, AZ 85016
13 602-258-6000
   adam.nach@lane-nach.com
14 stuart.rodgers@lane-nach.com

15

16

17

18

19

20

21

22

23

24

25

27

28