1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
27
28

**MESTAZ LAW**
5090 NORTH 40TH STREET
PHOENIX, AZ 85018
TELEPHONE (602) 806-2068

Daniel B. Mestaz (024477)
Matthew Hersh (037766)
John J. Daller (034016)
daniel@mestazlaw.com
matt@mestazlaw.com
john@mestazlaw.com
*Attorneys for Defendants Alissa
Chiaravanond, Pacific Shangrila
LLC, Cathedral Shangrila LLC,
Nido di Stelle LLC, and ILU LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh,<br><br>               Plaintiff,<br><br>       v.<br><br>Alissa Chiaravanond, et. al,<br><br>              Defendants | No. CV-23-08622-PCT-JJT<br><br>**Declaration of Alissa Chiaravanond in Support of Defendants' Opposition to Plaintiff's Motion to Modify Receivership Order** |

I, Alissa Chiaravanond, declare as follows:

1.    I engaged Mestaz Law shortly before the firm, through its counsel Matthew Hersh, entered an appearance for Defendants in this matter on January 23, 2025.

2.    In the time since I engaged Mestaz Law, I have been deeply involved in this case. I appreciate that my absence from this litigation, both after the time of my service in early 2024 and around the time that discovery responses were pending in late 2024, have been frustrating to the plaintiff and to this Court. I am aware that my absences have been

1  prejudicial to my own interests as well. In fact, my counsel has shown me a transcript of a
2  January hearing—just before he appeared in this action—in which the Court invited the
3  plaintiff to file for default if I did not appear by the end of the month. I know that I have
4  nothing to gain—and much to lose—if I should absent myself from this litigation again.

5      3.    Since I engaged Mestaz Law, I have worked actively to gather documents
6  and information responsive to the plaintiff's discovery requests. This has been a very
7  difficult and time-consuming task. For the reasons I have recounted in my declaration of
8  April 3, 2024, I have changed electronic devices, telephone numbers, and email accounts
9  on many occasions. To complicate matters further, I was residing in the Malibu house
10 (which is one of the subjects of this lawsuit) when the fires began in California. Like many
11 residents of that area, I had to flee the fires and take up temporary residence in another Los
12 Angeles-area property. Shortly thereafter, I had to evacuate from that house as well, and I
13 left Los Angeles entirely. Unfortunately, I left behind in the Malibu house a carry bag
14 containing, among other things, passwords to several of my online accounts. I also lost
15 many other papers in that fire.

16     4.    Beginning in early February, I took up residence at my property at 95 Cross
17 Creek Circle in Sedona (which is also one of the properties in this lawsuit). That property
18 was my main personal residence in the United States from 2021 through 2023 and it is
19 filled with my personal effects. Among those possessions are memorabilia from various
20 times in my life, going back to my childhood, as well as a wide variety of other papers
21 documenting deeply personal events. While I have rented out the other Sedona property, I
22 have never rented out this one. It would be deeply upsetting for me if anyone—even a
23 court-appointed receiver—would have access to that property and to the personal
24 possessions within it.

25     5.    Although I am now officially living in Sedona, the practical reality is that for
27 the last month, with only modest exceptions, I have been living in Phoenix. At the urging
28 of my present counsel, I have made it my first priority to stay in temporary lodging close

2

to the Arcadia offices of Mestaz Law and the Scottsdale offices of Mestaz Law's electronically stored information (ESI) consultant. Over the course of that time period I have made frequent in-person visits to both locations as we work to gather my devices and email accounts, gain access to them, and begin to review the results after the consultant exports them to his review platform. In fact, for much of the past week I have taken up 10-hour-per-day residence in Mestaz Law's offices—no doubt to the consternation of the law firm's suite-mates—as we work together to review documents, prepare interrogatories, and engage in other activities related to this litigation.[1]

6.    In addition to participating actively in this litigation, I have also been active in managing the Sedona properties that are the subject of this litigation. I deeply regret that I allowed the insurance on the Malibu house to lapse and I am determined to learn from that mistake. As a result, in the past month I have taken the following steps:

A.    I have obtained insurance coverage for the Cross Creek property with Beazley Excess and Surplus Insurance, Inc. A true and correct copy of email correspondence with my insurance broker, confirming that a policy with Beazley Insurance is effective as of February 27, 2025, is attached hereto at Exhibit A.

B.    I am in the process of obtaining insurance coverage for the property at 288 Back 'O Beyond Circle and I expect to have that coverage in place shortly.

C.    I have caught up on homeowner association bills for the Cross Creek property. Attached hereto at Exhibit B is a receipt for payment of $5166.46 made

---

[1] Although I have largely been full-time in Phoenix this month, there was one week at the beginning of the month where I was in Sedona inspecting the condition of the house and moving back into it. Because of connectivity issues in the somewhat remote location where I live, I was in only sporadic touch with my counsel that week. I recognize that my communication difficulties caused a delay in responding to discovery, to the frustration of the plaintiff and the Court (and frankly, to my own counsel as well). For that reason, I have since then committed myself to being in Phoenix as much as I can until discovery responses are substantially completed.

on February 6. (There is no homeowner association for the Back 'O Beyond Circle property.) I have confirmed that water and electric bills for both properties are up date.

C.    I have engaged Elizabeth Parsons, an experienced transactional attorney in Tucson—someone who has worked frequently with Mestaz Law—to help me properly structure my financial relationships with the two LLCs that are the subject of this receivership motion. A true and correct copy of that engagement letter is attached hereto at Exhibit C.

D.    I have engaged Keith Bierman, the Senior Managing Director of MCA Financial Group, to help manage the Sedona properties. One of Mr. Bierman's first activities has been to work with me to help obtain coverage for the property located at Back 'O Beyond Circle. As Mr. Bierman has also served many times as a court-appointed receiver, I also anticipate that he and his firm would be helpful in coordinating the exchange of information between me and the current court-appointed receiver for the California properties. A true and correct copy of the engagement agreement with Mr. Bierman is attached hereto at Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Alissa Chiaravanond

4

# Exhibit A to Declaration of Alissa Chiaravanond

 Outlook

---

## 95 Cross Creek – Insurance in effect

**From**  ▮▮▮▮@proton.me  ▮▮▮▮e@proton.me>
**Date**  Fri 2/28/2025 9:28 PM
**To**  Matthew Hersh <Matt@MestazLaw.com>

Forwarded Message
From: Brad Prince <jprince@farmersagent.com>
Date: On Friday, February 28th, 2025 at 6:47 PM
Subject: Re: 288 BACK O
To: ▮▮▮▮@proton.me ▮▮▮▮@proton.me>

95 CROSS CREEK CIR Confirmed the policy was effective on 2 27 2025. Currently waiting for docs which should be Monday. I tried to dig them out but being on the east coast I have no access to get a copy of the certificate at this point. Since personal property was changed at the last moment this has stalled the process. Nonetheless, policy is in effect. Docs will be Monday

**Brad Prince**
Farmers Insurance
3509 E Shea Blvd Ste 104
Phoenix, AZ 85028-3337
602-358-1825 (Office)
602-332-7372 (Mobile)
888-351-5185 (Fax)
jprince@farmersagent.com
http://www.farmersagent.com/jprince

EmailLogo

---

**From:** ▮▮▮▮e@proton.me <▮▮▮▮@proton.me>
**Sent:** Friday, February 28, 2025 6:14 PM
**To:** Brad Prince <jprince@farmersagent.com>
**Subject:** Re: 288 BACK O

Thanks , Brad!
On Friday, February 28th, 2025 at 4:36 PM, Brad Prince <jprince@farmersagent.com> wrote:

Confirmed the policy was effective on 2 27 2025. Currently waiting for docs which should be Monday. I tried to dig them out but being on the east coast I have no access to get a copy of the certificate at this point. Since personal property was changed at the last moment this has stalled the process. Nonetheless, policy is in effect. Docs will be Monday

**Brad Prince**
Farmers Insurance
3509 E Shea Blvd Ste 104
Phoenix, AZ 85028-3337
602-358-1825 (Office)
602-332-7372 (Mobile)
888-351-5185 (Fax)
jprince@farmersagent.com
http://www.farmersagent.com/jprince



**From:** ████████ proton.me ████████ @proton.me>
**Sent:** Friday, February 28, 2025 2:00 PM
**To:** Brad Prince <jprince@farmersagent.com>
**Subject:** Re: 288 BACK O

Hi Brad,

Thanks for your texts today.

1.What is the current status/outlook on 288?

2. Can you send me the docs for our binding the 95 CC please. I really need it today

Thanks again
AC

On Thursday, February 27th, 2025 at 5:04 PM, Rudragrace@proton.me ████████ e@proton.me> wrote:

Brad,

reacp of what we are doing now:

**288:**
Evanston-
I know you just saw this as well. Confirm The w ████████████
████████████

████████████████████

**95:**





Hi Brad,

Confirming my understanding of our call a moment ago...

While waiting for the adjustments of coverage for both properties and new quotes,

Beazley: the wholesaler left town till Monday, and you are talking to their supervisor to see if he can get a new quote now.

288 rental: The lady has not responded today.

<u>*Interim solution : If they do not give us a new quote today, We can bind the policies Now, and I can change the coverage next week once the new quotes come in. **PLEASE CONFIRM</u>

Will wait for your call back later today.

Thanks very much,
AC



@proton.me                    @proton.me>
wrote:

> CONFIRMING FOR BEAZLY:
>
> WAITING FOR NEW QUOTES AT  (1) 10% PERSONAL PROPERTY AND (2) 5% PERSONAL PROPERTY.
> Thanks!
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 26th, 2025 at 8:23 AM, Brad Prince <jprince@farmersagent.com> wrote:
>
>> You are right. I thought it was around 30k previously
>>
>>
>> **Brad Prince**
>> Farmers Insurance
>> 3509 E Shea Blvd Ste 104
>> Phoenix, AZ 85028-3337
>> 602-358-1825 (Office)
>> 602-332-7372 (Mobile)
>> 888-351-5185 (Fax)
>> jprince@farmersagent.com
>> http://www.farmersagent.com/jprince
>>
>> EmailLogo

████████ proton.me
████ e@proton.me>

**Sent:** Tuesday, February 25, 2025
11:21 PM
**To:** Brad Prince
<jprince@farmersagent.com>
**Subject:** Re: 95 CROSS STREET
AND 288 BACK O

HI Brad,

Thanks for moving this forward!

Just looked at new quote. I
didn't see that much of a price
drop. AM I missing something?
It went from $18k+ to $15k+.

WIll talk to you tomorrow.
BR,
AC
On Tuesday, February 25th,
2025 at 8:18 AM, Brad Prince
<jprince@farmersagent.com
> wrote:

> This was a great
> improvement
> going to a DP3
> coverage.
> Dropped price by
> almost half

**Brad Prince**

Farmers Insurance

3509 E Shea Blvd Ste
104

Phoenix, AZ 85028-
3337

602-358-1825 (Office)

602-332-7372
(Mobile)

888-351-5185 (Fax)

jprince@farmersagent
.com

http://www.farmersag
ent.com/jprince

EmailLogo

**From:** Brad Prince
**Sent:** Monday, February 24, 2025 12:43 PM
**To:**
███████@proton.me
███████@proton.me>
**Subject:** 95 CROSS STREET AND 288 BACK O

**Brad Prince**
Farmers Insurance
3509 E Shea Blvd Ste 104
Phoenix, AZ 85028-3337
602-358-1825 (Office)
602-332-7372 (Mobile)
888-351-5185 (Fax)
jprince@farmersagent.com
http://www.farmersagent.com/jprince

 EmailLogo

Securities offered through Farmers Financial Solutions, LLC. Member FINRA & SIPC.

Farmers Financial Solutions, LLC (FFS) does not accept trading instructions via voice mail, text messages, email, instant messaging, or fax.

Please do not transmit orders or instructions regarding an FFS account by email. For your protection, FFS does not accept and act on such instructions. If you wish to enter a buy or sell order immediately, please speak directly with your financial services agent. Emails, faxes, and voicemails may not be monitored daily, or after normal business hours, and cannot be relied upon to timely communicate your wishes.

This email communication contains information which is confidential. If you are not the intended recipient of this email, you are hereby notified that any disclosure, copying, distribution or use of its contents is prohibited.

Securities offered through
Farmers Financial Solutions,
LLC. Member FINRA & SIPC.

Farmers Financial Solutions,
LLC (FFS) does not accept
trading instructions via voice
mail, text messages, email,
instant messaging, or fax.
Please do not transmit orders
or instructions regarding an
FFS account by email. For
your protection, FFS does not
accept and act on such
instructions. If you wish to
enter a buy or sell order
immediately, please speak
directly with your financial
services agent. Emails, faxes,
and voicemails may not be
monitored daily, or after
normal business hours, and
cannot be relied upon to
timely communicate your
wishes.

This email communication
contains information which is
confidential. If you are not
the intended recipient of this
email, you are hereby notified
that any disclosure, copying,
distribution or use of its
contents is prohibited.

Securities offered through Farmers Financial Solutions,
LLC. Member FINRA & SIPC.

Farmers Financial Solutions, LLC (FFS) does not accept
trading instructions via voice mail, text messages,
email, instant messaging, or fax. Please do not
transmit orders or instructions regarding an FFS

account by email. For your protection, FFS does not accept and act on such instructions. If you wish to enter a buy or sell order immediately, please speak directly with your financial services agent. Emails, faxes, and voicemails may not be monitored daily, or after normal business hours, and cannot be relied upon to timely communicate your wishes.

This email communication contains information which is confidential. If you are not the intended recipient of this email, you are hereby notified that any disclosure, copying, distribution or use of its contents is prohibited.

Securities offered through Farmers Financial Solutions, LLC. Member FINRA & SIPC.

Farmers Financial Solutions, LLC (FFS) does not accept trading instructions via voice mail, text messages, email, instant messaging, or fax. Please do not transmit orders or instructions regarding an FFS account by email. For your protection, FFS does not accept and act on such instructions. If you wish to enter a buy or sell order immediately, please speak directly with your financial services agent. Emails, faxes, and voicemails may not be monitored daily, or after normal business hours, and cannot be relied upon to timely communicate your wishes.

This email communication contains information which is confidential. If you are not the intended recipient of this email, you are hereby notified that any disclosure, copying, distribution or use of its contents is prohibited.

Securities offered through Farmers Financial Solutions, LLC. Member FINRA & SIPC.

Farmers Financial Solutions, LLC (FFS) does not accept trading instructions via voice mail, text messages, email, instant messaging, or fax. Please do not transmit orders or instructions regarding an FFS account by email. For your protection, FFS does not accept and act on such instructions. If you wish to enter a buy or sell order immediately, please speak directly with your financial services agent. Emails, faxes, and voicemails may not be monitored daily, or after normal business hours, and cannot be relied upon to timely communicate your wishes.

This email communication contains information which is confidential. If you are not the

intended recipient of this email, you are hereby notified that any disclosure, copying, distribution or use of its contents is prohibited.

# Exhibit B to Declaration of Alissa Chiaravanond

Outlook

---

**Fw: We've received your payment for CROSS CREEK RANCH COMMUNITY ASSOCIATION**

---

**From** ███████@proton.me    ██████e@proton.me>

**Date** Fri 2/28/2025 10:24 PM

**To** Matthew Hersh <Matt@MestazLaw.com>

Sent with Proton Mail secure email.

    Forwarded Message
From: CROSS CREEK RANCH COMMUNITY ASSOCIATION <residentpayments@frontsteps.com>
Date: On Thursday, February 6th, 2025 at 3:16 PM
Subject: We've received your payment for CROSS CREEK RANCH COMMUNITY ASSOCIATION
To: NIDO DI STELLE ████████ @proton.me>

# We've received your payment.

Thank you for making a payment for **CROSS CREEK RANCH COMMUNITY ASSOCIATION** on **02/06/2025**.

## Payment Details

| | |
|---|---|
| **Amount:** | $5166.46 |
| **Convenience Fee:** | $0.00 |
| **Total:** | $5166.46 |
| **Payment ID:** | 6282403 |
| **Account Number:** | 1007003911 |

*Note: Bank ACH payments can take up to 3-5 business days for funds to be taken from your account.*

If you have any questions, please reach out to residentpayments@frontsteps.com or at (800) 690-0984

# Exhibit C to Declaration of Alissa Chiaravanond



**Engagement Letter**

Alissa Chiaravanond

February 26, 2025

Dear Alissa:

Thank you for choosing my law firm to represent you. The purpose of this letter is to confirm the terms of the representation as well as to provide you with additional information about the firm's policies.

My firm will represent you in connection with general business matters. Attached to this letter is my firm's Fee Agreement, in which I have waived the requirement for a retainer. We will bill for our services on a monthly basis or at the completion of a specific project.

I am your primary point of contact for all matters concerning this representation. I can be reached at elizabeth@parsonsadvisory.com or by phone or text at (520) 379-7966. Should you have any questions, please contact me directly. I make every effort to return telephone calls and emails within one (1) business day.

This letter is being provided to you by electronic transmission and for scanned or electronic signature. If you have questions about this letter or do not agree with it, please contact me. Otherwise, please sign this letter for our respective files.

Thank you very much for putting your trust in me. I look forward to continuing to work with you.

Very truly yours,

*/s/ Elizabeth A. Parsons*

Elizabeth Parsons PLLC

I have read this letter and agree to its terms.

Signed by:

Alissa Chiaravanond

35609D08BFA247E...

2/27/2025

400 E. Tangelo Dr Tucson AZ 85737          (520) 379 7966          elizabeth@parsonsadvisory.com

# Exhibit D to Declaration of Alissa Chiaravanond

## CONSULTING AGREEMENT

**AGREEMENT** (the "Agreement") is made and entered into this 27th day of February 2025, by and between Alissa Chiaravanond, an individual (herein referred to as the "Client") and MCA Financial Group, Ltd. (herein referred to as "Consultant").

## RECITALS:

**A.** Client desires to obtain Consultant's consulting services in connection with certain financial and operational matters germane to the Client's ownership and management of certain real property located in Sedona, Arizona (the "Property"); and

**B.** Consultant desires to provide such services to Client directly for a fee that will compensate it for time spent for services rendered and costs advanced by Consultant as contemplated hereunder.

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual promises and conditions hereinafter set forth, the Parties agree as follows:

1.    ***Retention of Consultant.***  Client hereby engages and retains Consultant and Consultant hereby agrees to use its best efforts to render to Client the consulting services from the date hereof until terminated by the Parties (the "Services").

2.    ***Consultant's Services.***  Consultant's Services hereunder may consist of the following:

i)    Review financial information, accounting records, invoices, bills, utility bills, property related documents, insurance, property taxes, maintenance agreements and other documents relevant to the management and preservation of the Property;

ii)    Assist the Client to administer the management of the Property and ensure that the Property is appropriately maintained, preserved and protected;

iii)    Interface with any third parties relevant to the management, preservation and protection of the Property including, but not limited to; insurance agents, maintenance companies, construction trades to facilitate repairs or improvements to the Property, and others;

iv)    Provide reports detailing Consultant's activities, findings and recommendations to the Client and legal counsel to be used in connection with certain pending litigation matters including reports to be provided to the Court;

v)    Communicate with and fulfill any requests for information concerning the status of the Property or its condition; and,

vi)    Assist Client with other matters as requested from time to time, and

3.    ***Payment for Services.***  Client shall pay Consultant the sum of $695 per hour for Senior Managing Directors, $595 per hour for Managing Directors, $495 per hour for Directors, $445 to $295 per hour for Sr. Associates and Associates and $125 per hour for administrative and research personnel for the services to be rendered hereunder, which fee shall be payable upon billing.[1]  Consultant shall receive a retainer in the amount of $7,500 which shall be held by Consultant and applied to Consultant's final invoices or returned to the Client at the end of the engagement, as appropriate.  Consultant shall be reimbursed for all direct expenses incurred in performing such services plus an administrative charge for

---

[1] Consultant's hourly billing rates are subject to annual adjustment on January 1 of each year as is Consultant's ordinary business practice and such hourly rates hereunder may be modified accordingly.  In no event shall the Consultant's annual adjustment exceed ten percent (10%) of the standard hourly rates of the preceding calendar year.

indirect costs equal to three percent of fees to cover fax, phone, copying and other related costs. Client shall pay $75 per hour for non-billable travel time of professionals. Requests for payment of fees and reimbursement of costs shall be tendered by Consultant and shall be paid by Client upon receipt of billing. Consultant shall waive the requirement for a retainer at this time but reserves the right to request a retainer in the future. Interest shall accrue on unpaid fees (past due more than 15 days from invoice date) at a rate of 1.5% per month or the maximum allowable rate by law.

4.  **Consultant's Time Commitment.**  Consultant shall devote such time as reasonably requested by Client for consultation, advice and assistance on matters described herein and provide the same in such form as Client requests; however, Consultant anticipates that it will spend considerable time to perform the services required hereunder.

5.  **Independent Contractor.**  The relationship created hereunder is that of Consultant acting as an independent contractor through the Consultant's firm. The parties acknowledge and agree that Consultant shall have no authority to, and shall not, bind Client to any agreement or obligation with any third party. The parties also acknowledge that Consultant is not providing legal services or acting as a broker/dealer and such services must be obtained by Client from other parties. Client agrees that Consultant shall not be prevented or barred from rendering services similar or dissimilar in nature for and on behalf of any person, firm or corporation other than Client.

6.  **Nondisclosure of Confidential Information.**  Consultant acknowledges that it is the policy of Client to maintain as secret and confidential all valuable information heretofore or hereafter acquired, developed or used by Client relating to its business, operations, employees and customers which may give Client a competitive advantage in its industry (all such information is hereinafter referred to as "Confidential Information"). The Parties recognize that, by reason of Consultant's duties hereunder, Consultant may acquire Confidential Information. Consultant recognizes that all such Confidential Information is the property of Client. In consideration of Client entering into this Agreement, Consultant agrees that:

i)   It shall not, directly or indirectly, use, publish, disseminate or otherwise disclose any Confidential Information obtained during its engagement by Client without the prior written consent of Client, it is understood that this subparagraph shall survive the termination of this Agreement; and

ii)  During the term of its engagement by Client, Consultant shall exercise all due and diligent precautions to protect the integrity of any or all of Client's documents containing Confidential Information.

7.  **Communications with Consultant.**  Consultant will not independently conduct a due diligence review of Client and will, to a great extent, be relying upon information provided by Client.

8.  **Exculpation of Liability and Indemnification.**  All decisions with respect to consultations or services rendered by Consultant for transactions negotiated for and presented to Client by Consultant shall be those of Client, and Consultant shall have no liability with respect to such decisions. In connection therewith, Client agrees to indemnify and hold Consultant harmless against any and all losses, claims, damages and liabilities and the expense, joint and several, to which Consultant may become subject and will reimburse Consultant for any legal and other expenses, including attorney's fees and disbursements incurred by Consultant in connection with investigating, preparing or defending any actions commenced or threatened or claim whatsoever, whether or not resulting in the liability.

The foregoing indemnification shall not, however, apply to any damage, claim, loss or expense which arises from Consultant's gross negligence or willful misconduct.

9. **_Limitation on Damages._**  As to the services that Client has requested and Consultant has agreed to provide as set forth in this Agreement, the total aggregate liability of Consultant under this Agreement to Client and its successors and assigns, shall be limited to the actual damages incurred by Client or its successors or assigns.  In no event will Consultant or any of its affiliates be liable to Client or its successors or assigns for consequential, special or punitive damages, including loss of profit, data, business or goodwill.

Further, in no event shall the total aggregate liability of Consultant relating to the services provided hereunder or otherwise arising under this Agreement to Client and its successors and assigns exceed the total amount of fees received and retained by Consultant hereunder.

10. **_Entire Agreement._**  This Agreement contains the entire agreement and understanding between the parties hereto with respect to the subject matter contained herein.  There are no representations or warranties other than as shall be set forth herein.

11. **_Waiver._**  No waiver or modification of this Agreement shall be valid unless in writing and signed by the parties hereto.

12. **_Notices._**  All notices, consents, requests, demands and offers required or permitted to be given under this Agreement will be in writing and will be considered properly given or made when personally delivered to the party entitled thereto, or when mailed by certified United States mail, postage prepaid, return receipt requested, addressed to the addresses appearing in this Agreement.  A party may change its address by giving notice to the other party hereto.

Notices are to be provided to the following:

If to Client:

Alissa Chiaravanond
95 Cross Creek Circle
Sedona AZ 86336
+1 310 948-4203
███████@proton.me

With a copy to:

Mestaz Law
Attn: Matthew Hersh
5090 N. 40th Street, Suite 200
Phoenix, AZ 85018
Direct: +1 602 806 2076
Email: Matt@MestazLaw.com

If to Consultant:

MCA Financial Group, Ltd.
Attn: Keith Bierman
4909 N. 44th Street
Direct: +1 602 710 2502
Phoenix, AZ 85018
kbierman@mca-financial.com

3

13.     ***Counterparts.***  This Agreement may be signed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall constitute one agreement.  It shall not be required that any single counterpart hereof be signed by the Parties, so long as each Party signs any counterpart hereof.

14.     ***Applicable Law.***  This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona.

15.     ***Attorneys' Fees.***  In case of any action or proceeding to compel compliance with, or for a breach of, any of the terms and conditions of this Agreement, the prevailing Party shall be entitled to recover from the losing Party all costs of such action or proceeding, including, but not limited to, reasonable attorneys' fees.

16.     ***Termination***.  This Agreement may be terminated by Client at any time upon five (5) business days' written notice.  This Agreement may be terminated by Consultant, including for non-payment of any sums due to Consultant hereunder, upon five (5) business days written notice during which time Client may cure any breach giving rise to such cure (in which event Consultant may only terminate this Agreement upon ten (10) further business days' notice, unless Client consents in writing to an earlier termination).  Following termination, Consultant shall return any and all Confidential Information, in whatever form, to Client.  At Client's option, Consultant may instead be instructed to destroy all Confidential Information.

***IN WITNESS WHEREOF,*** the undersigned have executed this Agreement to be effective as of the day and year first above written.

MCA Financial Group, Ltd.                   Alissa Chiaravanond
An Arizona Corporation                      An individual

_DocuSigned by:_                            _Signed by:_
*Keith Bierman*      2/27/2025              *Alissa Chiaravanond* 2/28/2025
——————————————————                          ——————————————————
C991D44BDE69483...                          35609D66BFA247E...
By:     Keith Bierman                       By:     Alissa Chiaravanond
Its:    Senior Managing Director

4