# Exhibit B: Defendants' Proposed ESI Order

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh,<br><br>    Plaintiff,<br><br>    vs.<br><br>Alissa Chiaravanond, *et al.*,<br><br>    Defendants. | No. CV-23-08622-PCT-JJT<br><br>**ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Having reviewed the Parties' Stipulation for Entry of Order Regarding Discovery of Electronically Stored Information, and good cause appearing, the Court enters the following Order Regarding Discovery of Electronically Stored Information ("ESI Protocol Order") to govern the production of documents and ESI in these proceedings.

**I.    Scope**

a.    General. The procedures and protocols outlined herein govern the production of documents and electronically stored information by all parties to these proceedings, whether they currently are involved or become so in the future (collectively, the "Parties").

b.    Definitions.

1. "ESI" shall include, but is not limited to, any written, recorded, or graphic matter, whether produced, reproduced, or stored on paper, electronic facsimile, computer storage devices, Data Sources, memories, data cells, or other media or data compilation from which information can be obtained, including originals, copies (with or without notes or changes thereon) and drafts, including, but not limited to, papers, books, letters, tangible

things, correspondence, communications, emails, text messages, picture messages, video messages, Internet or web sites, posts, comments, and messages on social media or other websites (including but not limited to Facebook, X (Twitter), Instagram, LinkedIn, WhatsApp, Line, Signal, blogs, and other computerized materials), memoranda, notes, work papers, minutes, reports, affidavits, statements, summaries, opinions, reports, studies, appraisals, schedules, work sheets, contracts, agreements, statistical records, lists, computer printouts, photographs or negatives thereof, other documents maintained on any electronic system or database, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, however denominated, and any or all matter or material attached or affixed to any of the above.

2. "Data Sources" includes devices of whatever kind capable of housing and/or storing electronic data including, but not limited to, computers (including, but not limited to, desktop computers, laptops, and tablets), hard drives, external drives such as HDD and SSD drives, flash memory devices, USB devices, micro-SD cards, CDs, DVDs, floppy disks, phones (including, but not limited to, smart phones), cameras, tape recorders or video recorders.

c. Objective. This ESI Protocol Order is designed and shall be interpreted to ensure that, subject to any objections by the Party producing documents or ESI ("Producing Party"), responsive, non-privileged documents and ESI are produced by the Producing Party with a minimum of unnecessary and unreasonable burden and cost. Nothing in this document is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or the Party requesting the documents or ESI ("Receiving Party"). This ESI Protocol Order shall not enlarge the scope of discovery in this litigation as imposed by the Local Rules, the Federal Rules of Civil Procedure, the Court's orders, or as agreed to between the Parties.

d. Limitations and Non-Waiver. The Parties and their attorneys do not intend by establishing and complying with this ESI Protocol Order to waive their rights to any protection, objection, or privilege, including the attorney-client privilege or the attorney work product doctrine. All Parties preserve their attorney-client, attorney-work-product, and

other privileges; objections; and protections, and there is no intent by the ESI Protocol Order to in any way waive or weaken these privileges and protections. All documents produced hereunder are fully protected and covered by any protective orders entered by the Court in these proceedings. Further, nothing in this ESI Protocol Order is intended to alter or affect any party's rights or obligations under any other order by this Court, but shall be construed instead, wherever possible, as consistent with any order by this Court unless any such other order modifies or clarifies a party's rights or obligations under this ESI Protocol Order in which case the subsequent clarifying order shall govern.

**II.      Preservation**

The Parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI should be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that only ESI created or received from January 1, 2018 forward (including ESI created after the entry of this Order) will be preserved.

**III.     Identification of Responsive Documents and ESI**

a.      <u>Custodians</u>. No later than May 23, 2025, the Parties shall exchange in writing a list of that Party's custodians most likely to have relevant ESI, including a brief description of each person's relationship (*e.g.*, employee, member, officer, contractor) and approximate length of such relationship with the Producing Party. The Parties shall meet and confer if any Party reasonably believes that custodians should be added or deleted.

b.      <u>Document Sources</u>. Responsive ESI will be collected and produced from Data Sources agreed upon by the Parties or ordered by the Court. If after good faith attempts, the Parties cannot reach agreement on Data Sources to be searched – either initially or if a Party requests searches of additional Data Sources – they shall bring their discovery dispute to the Court for resolution, pursuant to the procedures delineated by the Court in its Scheduling Order or otherwise.

c.      <u>Culling</u>. The Parties may use search terms, other objective delimiters (such as e-mail domains), and/or technology-assisted review (TAR) technologies as a means of

limiting the volume of documents and ESI to be reviewed for responsiveness, provided that any culling methodologies employed to do so are disclosed and agreed upon by the Parties and do not impose an unreasonable financial burden on the party expected to utilize a culling methodology. **Exhibit 1** hereto contains an initial search protocol, including search terms, which the Parties agree are reasonably likely to produce ESI relevant to the Parties' claims and defenses. The Parties agree to work cooperatively in good faith if any of the Parties' search terms generate an unreasonable amount of ESI to review, including but not limited to narrowing the search terms. Further, because discovery is ongoing, each Party reserves the right to seek to amend this initial list of search terms. The Parties shall meet and confer in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull ESI. Any disagreement regarding culling methodologies that cannot be resolved through the Parties' good faith efforts will be handled as a discovery dispute pursuant to the procedures delineated by the Court in its Scheduling Order or otherwise. Regardless of the culling methodology used, searches shall be run across all members of a document family, and the Parties will not exclude non-responsive members of document families in which one or more document is responsive, with the exception of junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the Parties). For the purpose of this paragraph, and solely with respect to audio recordings and chains of text messages, instant messages, internet-based messages (WhatsApp, Line, Signal and the like) that cover multiple subjects over multiple dates, the term "document family" will cover only such recordings and message chains that are reasonably connected to one another in time and subject matter; provided that sufficient context is provided to ensure that the recordings and/or message chains can be meaningfully understood by the Receiving Party; and further provided that, if any information is withheld pursuant to this provision, the Producing Party shall provide the Receiving Party a general description of the material withheld. The Receiving Party may request production of withheld ESI. The Parties shall meet and confer in good faith in the case of any disagreement over such withheld material. Any such disagreement that cannot

be resolved through the meet and confer process shall be submitted to the Court as a discovery dispute pursuant to the procedures delineated by the Court in its Scheduling Order or otherwise. The Parties shall globally de-duplicate ESI by family only.

**IV.    Production Format**

a.    <u>Format of Production</u>. The Parties agree that, to the extent possible, all nonredacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program), audio and video files, and PowerPoint presentations (or similar documents created using a different software program) will be produced in native format. All other documents will be produced with an industry standard load file, and containing natives, multipage color PDFs and text extractions for each file. Excel and other non-imageable items should be slip-sheeted and produced in native format. The load file itself should be in CSV format and should contain all available metadata fields. Any file produced in native format need not be imaged. Instead, a single-page placeholder image shall be produced that indicates the file was produced in native format and contains the bates number of the corresponding file and any confidentiality designation. Each native file produced shall also include the confidentiality designation and bates number provided on the placeholder image in the file name. If particular documents or ESI warrant a different format, the Producing Party will produce in that format and the receiving Party shall have the right, within a reasonable time, to request production in a different specified format and the parties will work to try and reach agreement on the production format agreeable to those concerned. Any inability to reach an agreement will be resolved by the Court pursuant to its discovery resolution procedures. The Parties will in all events cooperate to arrange for the mutually acceptable production of such documents or ESI. The Parties agree to produce documents and ESI in a format that facilitates searchability by the Receiving Party and will not degrade the searchability of documents or ESI as part of the document production process. With respect to documents that have already been produced or segregated for production as of May 5, 2025, the Producing Party shall not be required to produce or re-produce such documents in the form provided in this paragraph, but the Receiving Party may have the

right to request re-production of such documents, on a reasonable basis, in such form (with the parties obligated to meet and confer to the extent they cannot agree). The Parties reserve the right to request compliance with instructions contained in discovery requests they served under Rules 33 through 36, regardless of this ESI Protocol. Stipulation to this ESI Protocol is not a waiver of the instructions contained in discovery requests served under Rules 33 through 36, nor is it a waiver of existing, unresolved discovery disputes between the Parties.

b. Metadata. No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain. The parties reserve the right to request the production of additional metadata. The Parties shall meet and confer in good faith in the case of any disagreement about disclosure of metadata. Any such disagreement that cannot be resolved through the meet and confer process shall be submitted to the Court as a discovery dispute pursuant to the procedures delineated by the Court in its Scheduling Order or otherwise.

c. Native Files. The Parties agree that documents will be produced in the format set forth in Paragraph IV(a), and that no Party may request or seek to compel the production of ESI in native format on a wholesale basis, although the Producing Party retains the option to produce ESI in native file format. Subsequent to the production of documents, however, the Receiving Party may request from the Producing Party that certain imaged files be produced in native format, if production in native format is indeed possible and not subject to any privilege or other designation of confidentiality of objection, because the files are difficult to read in an imaged form.

d. Structured Data. The Parties agree to meet and confer regarding the format of production of any structured data or databases. To the extent possible, all exports of data or reports will be produced in .csv file, Excel file, or other delimited format.

e. Document Numbering and Organization. Each page of a produced document will have a legible, unique page identifier ("Bates Number") placed on the image at a location that does not obliterate, conceal, or interfere with any substantive information from

6

the source document. The Bates Number for each page of each document will be created so as to identify the Producing Party. In the case of materials redacted or deemed confidential, a redaction or confidentiality designation may be placed onto the document's image. The confidentiality designation will be placed onto the document at a location that does not obliterate, conceal, or interfere with any substantive information from the source document. Parent-child relationships will be preserved, and the link between parents and children shall be maintained. Family documents will be consecutively produced with the children directly following the parent in the order of the original document or ESI, and children will be mapped to their parents using Attachment Begin/Attachment End metadata fields. When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple documents—documents should be logically unitized.

f.      Claims of Confidentiality. If the Producing Party produces ESI subject to a claim that it is protected from disclosure under a protective order or confidentiality order entered by the Court, or an agreement entered into by the Parties, the Producing Party shall place a confidentiality designation onto each page of the document in a form indicating the documents confidential (i.e., confidential, confidential information, or any similar designation) consistent with the applicable order(s) or agreement(s). Inadvertent failure to comply with this procedure shall be addressed as provided by the Protective Order entered in this case.

g.      Production Media. The Producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC and Mac compatible interface) ("Production Media"). Any Producing Party may choose to produce Production Media in encrypted form, in which case the Producing Party will provide a decryption key to the Receiving Party in a communication separate from the production itself.

h. <u>Organization of produced materials</u>. With respect to any materials produced or segregated for production as of May 5, 2025, the Producing Party shall, by May 28, 2025, organize and label those documents produced to correspond to the categories of the request. Any document production in response to written discovery requests of Rules 26(a)(1)(A)(ii) and 34(b)(2)(E) after May 5, 2025 shall be completed according to the commands of the Federal Rules of Civil Procedure, except as expressly modified by this ESI Protocol. Any documents produced to correspond to the categories of the request shall be so organized within one week of production.

**V.   Assertions of Privilege**

a. Pursuant to Rule 502(d) of the Federal Rules of Evidence, production of documents and ESI in this case shall be without prejudice to and shall not waive, for purposes of this case or otherwise, any attorney-client privilege or work-product protection that otherwise would apply.

b. To limit the cost of a privilege review and make document production more efficient, the Parties agree that communications exclusively between a Party and its outside counsel of record at any time in this matter, the related California matter, or the marital separation/dissolution proceedings in Singapore between the parties need not be included on a privilege log.

c. The Parties shall generate a listing of all other withheld or redacted documents and ESI in compliance with Fed. R. Civ. P. 26(b)(5).

d. In the event of inadvertent disclosure of privileged information, the Parties will proceed in accordance with Federal Rule of Evidence 502 and any protective order or confidentiality order entered by the Court.

e. Pursuant to Federal Rule of Evidence 502, nothing in this ESI Protocol Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Producing Party's claim that documents or ESI are protected from disclosure by the attorney-client privilege, work product doctrine, or other privilege, protection, or immunity from disclosure.

## VI.    Third Party ESI Discovery

a.    If a non-party production is not produced with Bates Numbers, the Party issuing the request will endorse the non-party production with unique prefixes and Bates Numbers prior to producing them to all other parties, as well as any confidentiality designations made by any party or non-party pursuant to any protective order or confidentiality order entered by the Court, or an agreement entered into by the Parties.

## VII.    General Provisions

a.    <u>Discoverability and Admissibility</u>. Nothing in this ESI Protocol Order shall be construed to affect the admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

b.    <u>Fees and Costs.</u> Each Party shall bear the costs to process and review its own ESI under this ESI Protocol Order. However, nothing in this ESI Protocol Order limits or prohibits: (a) a Producing Party from seeking to shift the burden and expense of ESI collection, review, or production to the Receiving Party, in whole or part; and, (b) a prevailing party from seeking recovery of all allowable fees and costs, including attorneys' fees and costs, as may be permitted under applicable law.

c.    <u>Modification</u>. Any practice or procedure set forth herein may be modified by order by the Court, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of ESI. Before seeking Court intervention to modify this ESI Protocol Order, the Parties shall meet and confer in good faith regarding any modification. Any disagreement regarding a proposed modification shall be handled as a discovery dispute pursuant to the procedures delineated by the Court in its Scheduling Order or otherwise.

**SO ORDERED.**

Dated: _____, 2025

_____
Hon. John J. Tuchi
United States District Judge

9

# EXHIBIT 1

Agreed search protocol:

1. The parties shall do a manual search of all documents, regardless of time period, including the terms dowr!, sin sod, or sinsod

2. The parties shall do a manual search of all communications, created January 1, 2018 or later, between Chiaravanond and Huynh (the parties to promptly share all known email addresses for each, subject to any redaction or confidentiality designation pursuant to the protective order).

3. The parties shall do a manual search of all communications, created January 1, 2018 or later, with any person identified on any of the parties' disclosures (the parties to promptly exchange all contact information they have on each such person).

4. With respect to the terms below:

   a. With respect to those terms **in boldface**, the parties shall do a manual search of all communications, created January 1, 2018 or later.

   b. With respect to the remaining terms, the parties shall exchange information on hit rates and shall confer on appropriate manners of determining, including but not limited to potential sampling, whether manual searches are proportionate and necessary,

**Cathedral**
Pacific
**Shangrila**
**ILU**
**Nido**
**Trilliant**
LLC
Sedona
Malibu
**Phuket**
renovat!
**BVI**
**Pioneer**
maint!
articles
**Phong**
**Huynh**
invest!
retire!
**"nest egg"**
California
Arizona
AZ
**back /3 beyond**
**Flores**
Mesa
**cross /2 creek**
**Ravens**

10

**20990**
**90625**
**288**
**86336**
**20966**
Nevada
NV
**"registered agent"**
Northwest
**Ryland**
Reno
**Goldsmith**
**Coldwell**
**Whorton**
FWD
Budget!
Engage!
House
Propert!
Gift
Singapore
Li
Rent!
**"due diligence"**
**Escrow**
**"cash flow"**
Wedding
Marri!
**Phasong**
**Sedona.org**
**HOAMCO**
**Carolwood**
**Howell**
**REMAX**
**Steele**
Chase
Profit
**Airbnb**
Income
Upgrade
Construction
Contractor
Loan
CA
Insur!
Own!
Interest
LLCs
**"real estate"**
**Hack!**
**drone**
○

11