Devin Sreecharana, Esq. (029057)
Trevor Wainfeld, Esq. (037146)
MAY, POTENZA, BARAN & GILLESPIE, P.C.
1850 N. Central Ave., Suite 1600
Phoenix, Arizona 85021
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: devin@maypotenza.com
Email: twainfeld@maypotenza.com

Moshe Y. Admon, Esq. (034169)
Admon Law Firm, PLLC
300 Lenora St., #4008
Seattle, Washington 98121
Telephone: (206) 739-8383
Email: jeff@admonlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phong Thanh Huynh,<br><br>            Plaintiff,<br><br>v.<br><br>Alissa Chiaravanond, an individual resident of Arizona, Pacific Shangrila LLC, a Nevada limited liability company, Cathedral Shangrila LLC, a Nevada limited liability company, Nido di Stelle LLC, a Nevada limited liability company, ILU LLC, an Arizona limited liability company,<br><br>            Defendants. | Case No.: 3:23-cv-08622-JJT<br><br>**NOTICE OF PROPOSED SANCTIONS**<br><br>(Assigned to the Hon. John J. Tuchi) |

Plaintiff submits this Notice pursuant to the Court's Order entered on January 22, 2026 (Doc. 160), directing Plaintiff and his counsel to share their "thoughts on any appropriate sanctions for future discovery delays or violations by [Defendant Chiaravanond] in this vein." Hearing Tr. dated January 22, 2026, **Exhibit A**, at 34:11:16. Given Defendant Chiaravanond's lack of engagement in this case since its inception and serial failure to fully or timely discharge

her discovery obligations, any future discovery delays or violations of the Federal Rules of Civil Procedure (the "Rules") or this Court's Orders should result in the most severe sanctions available. As she has demonstrated through her inaction to date, and consistent with the Court's comments at the discovery dispute conference held on January 22, 2026, the prospect of less severe sanctions will not be effective to encourage her compliance with the Rules or this Court's Orders. Plaintiff does not appear to be motivated by lesser means—she must understand that further failure to comply with the Court's Orders and Rules will result in striking the Defendants' pleadings and entering judgment by default.

I.      **Relevant Background**

Plaintiff filed this action to obtain legal and equitable relief and damages related to his ownership interests in multi-million-dollar properties that he alleges Defendants deprived him of through, among other things, fraud and breach of fiduciary duties. (Docs. 1; 43 at 1:28–2:25).

Because of Defendants' failure to engage, the Court initially defaulted them. *See* (Docs. 16, 20, 23). Defendants escaped default (Doc. 36) through a Motion to Set Aside Default (Doc. 28) premised on a Declaration from Defendant Chiaravanond (Doc. 29) attempting to excuse her disengagement from this case.[1]

On September 12, 2024, Defendants served a Rule 26 Initial Disclosure Statement that disclosed little pertinent information and *no* documents. Defs' Rule 26 Initial Discl. Stmt., **Exhibit B**. Defendants then failed to respond to Plaintiff's written discovery requests. (Docs. 63, 69). As Defendant Chiaravanond absented herself from this action, she also stopped participating in related marital nullification and separation proceedings in Singapore. (Doc. 61-1 ¶ 4(a)-(b)).

Again faced with the possibility of default (Doc. 69), Defendants filed a Status Report (Doc. 77) in which they committed to undertaking certain steps to ensure timely production of

---

[1] Based on disclosures since this motion practice, certain of her allegations in support of setting aside default are demonstrably unfounded and misleading. Because these issues do not relate to the discovery dispute that gave rise to this Notice, Plaintiff reserves the right to address them in a separate filing.

2

information and documents. They voluntarily retained an ESI consultant to assist with Defendants' loss of access to certain accounts and information, and the collection and disclosure of potentially relevant ESI. (*Id.*).

On February 26, 2025, the Court ordered modifications of case management deadlines because Defendants still had not responded to Plaintiff's November 2024 discovery requests. (Doc. 84). The Court instructed Defendants that further delay would result in sanctions:

> The Court declines to sanction Defendants at this juncture, but after months of mostly unexcused delays, any further delay, including any failure by Defendants to meet the latest dates they proposed and the Court here accepts, will result in sanctions.

(*Id.* at 2:3-5); (*see also id.* at 2:15–16).

The Court's warning fell on deaf ears. On February 28, 2025, Defendants served responses to the November 2024 discovery requests, but those responses were not fulsome and instead indicated forthcoming amendment. The parties then filed their third discovery dispute statement (Doc. 99), this time resulting in an ESI order to aid Defendants' search for relevant documents/ESI, including those responsive to the November 2024 discovery requests. (Docs. 102, 115).

In May 2025, the Court granted the parties' stipulation to again amend the schedule to facilitate discovery and compliance with the prior scheduling order. (Docs. 118, 121). As it relates to Defendants, among other reasons, they required "additional time to come into compliance with the February 26, 2025 Discovery Order (Doc. 84) . . . ." (Doc. 118 at 2:5-7). In this regard, Plaintiff expressly reserved his

> right to request relief against Defendants relating to their recent discovery dispute. *See* (Doc. 99). Plaintiff agree[d] to these extensions reluctantly, acknowledging further time is required to complete discovery because of Defendants' related discovery delays. *See, e.g.*, (Docs. 63, 69, 70, 84).

(*Id.* at 2, n.1).

In July 2025, the parties began deposition scheduling discussions. In connection with those discussions and in the context of case management generally, in August 2025, Defendants informed Plaintiff that Defendant Chiaravanond was purportedly suffering from

an undiagnosed medical condition. This led to another amendment to the case schedule. *See* (Docs. 140 at 2:10-22; 141). Since sharing an off-the-record declaration from Defendant Chiaravanond with Plaintiff's counsel in September 2025 (designated "Attorneys' Eyes Only"), Defendants have regularly referenced her alleged health concerns in the context of Defendants' delays and challenges with case management. (*See, e.g.*, Docs. 140, 145-1, 156). Plaintiff remains in the dark about this alleged health condition.

On October 10, 2025, Plaintiff served another set of discovery requests on Defendants. (Doc. 143). Defendants again failed to respond by the parties' agreed-upon deadlines, forcing the parties to file yet another (the fourth) discovery dispute statement. (Doc. 159). Defendants again explained that Defendant Chiaravanond, for at least the third time, had stopped participating in this case. The parties participated in a hearing resulting in orders, including for this Notice, because of delays "attributable solely to the defendant and her lack of engagement." Exhibit A at 32–33.[2] Relatedly, in the days surrounding the January 22 hearing, it became clear that Defendants are considering their trial preparation *without* Defendant Chiaravanond's participation/attendance at trial, which is why they plan to take her "trial" deposition in advance. *See* Exhibit A at 29:10-22.[3]

## II. Case-Terminating Sanctions

Against the above-referenced procedural background, case-terminating sanctions for any future violation of the Rules of Court's Orders are appropriate. Plaintiff shares the Court's

---

[2] Plaintiff's counsel were not privy to the *ex parte* conference held by the Court with Defendants' counsel at the outset of the January 22, 2026 hearing and thus are unaware of what, if any, rationale Defendants' counsel offered for Defendant Chiaravanond's recent disengagement. Other than her now dated September 2025 declaration and Defendants' counsel's explanation (*see e.g.*, Doc 140) – and contrary to Defendants' counsel's suggestion that "we all know that [condition] she is in" and they are "uncommon circumstances," Exhibit A at 29:22-24 – Plaintiff and his counsel remain in the dark about the specific details and legitimacy of her alleged condition, constraints on her ability to participate in the litigation, and desired or appropriate accommodations to address the same while moving this case forward.

[3] Plaintiff reserves all rights and objections in this regard, and the sufficiency of any good cause for Defendant Chiaravanond to avoid further engagement in his case, including her in-person attendance at trial.

concern that lesser sanctions—such as monetary sanctions (which have now been entered but likely are not a deterrent because of Defendant Chiaravanond's financial position and asset control) and evidence preclusion (which would not be helpful because Defendant Chiaravanond controls the evidence Plaintiff seeks)—will not sufficiently deter Defendants from further misconduct. Exhibit A at 34:17-35:6. Case-terminating sanctions are further justified by Defendant Chiaravanond's waste (to date and prospectively) of at-issue assets and party and judicial resources, as the Court has aptly recognized:

> Where some party or parties prevail in this matter on the law and facts only to find out that some or all of the assets are no longer available to satisfy judgment due to wasting, that tragedy would be compounded by the wasting of your efforts and the court's as well and so the court must return to the issue of how it will keep this matter on track moving forward.

Exhibit A at 32:12–18.

Plaintiff is reasonably concerned that Defendants will continue to negligently or intentionally engage in such waste. Plaintiff's significant investment in addressing and attempting to resolve Defendants' procedural and discovery delays to move forward with prosecuting his claims is apparent. Defendant Chiaravanond recently absented herself, again, without explanation to Plaintiff. But Defendants' inaction has and may continue to put the at-issue assets and Plaintiff's potential recovery in jeopardy. Defendant Chiaravanond has Thai roots and citizenship, and foreign resources and business experience. (Doc 1 at ¶¶ 20-21; Doc. 37 at ¶¶ 20-21). She is believed to be able to structure untraceable offshore accounts. (Doc. 37 at ¶ 45). She appears to be engaged in asset protection measures, recently transferring real property in California (2457 Angelo Dr., Los Angeles, CA 90077) from one trust in her name to another for a listed value of about $5 million, despite concurrently alleging an inability to participate in this case. V.R. Austin, *Los Angeles County home sales in week ending Nov. 15*, NORTH SGV NEWS (Nov. 22, 2025), https://northsgvnews.com/los-angeles-county-home-sales-in-week-ending-nov-15/, **Exhibit C** (because of the length of this webpage, this Exhibit

does not reflect the entire webpage but only the relevant portions).[4] This is in addition to her historical neglect of the at-issue assets—like failing to (1) maintain insurance on the Malibu Property (causing a multi-million-dollar loss of that Property in the January 2025 Palisades Fire, (Doc. 78 at 6:15–21)), (2) timely pay HOA fees (resulting in Doc. 107-1 and her avowal that she paid it) and property taxes in Malibu (Doc. 164-1 at 2) and Sedona (Doc. 145-1 at 3-4), and (3) secure fire insurance on both Sedona Properties (Doc. 163-1 at 3).

Given this context, case-terminating sanctions are appropriate should Defendants again violate this Court's Rules and Orders because no lesser sanction would suffice to remedy the critical prejudice Defendants cause Plaintiff in pursuing the truth to prosecute his claims.

### A.   Applicable Rules & Inherent Authority

Rule 16(f)(c) gives district courts broad discretion to sanction parties who "fail[] to obey a scheduling or other pretrial order." These sanctions are appropriate where a party engages in contumacious behavior to aid district courts' "fulfill[ment of] their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Matter of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1994) (en banc); *see also Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) (affirming dismissal for plaintiff's failure to prosecute, after district court warned of that impending consequence, because Rule 16's purpose is "to encourage forceful judicial management."). Rule 16(f) "vests a district court with discretion to impose whichever sanction it feels is appropriate under the circumstances." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (quotation marks omitted); *see Hubbard v. Navajo Health Found. Corp.*, No. CV-25-08152-PCT-MTL, 2025 WL 3228216 at *1 (D. Ariz. Nov. 19, 2025) (citing *Huebner*). Rule 16(f) expressly incorporates the sanctions provided in Rule 37(b)(2)(A)(ii)-(vii).

---

[4] In this regard, Plaintiff continues to question Defendant Chiaravanond's retention of attorney Elizabeth Parsons to "properly structure my financial relationships with the two LLCs that are the subject of this receivership motion." (Doc. 85-1 at ¶ 6(C)), particularly in light of Defendants' recent comment about the corporate defendants as Defendant Chiaravanond's "alter ego." Exhibit A at 21:25-22:1. *See also* (Doc. 90 at 6:17–7:6) (providing Plaintiff's concern about this being more like an asset-protection measure than a way to aid discovery).

Rule 37(b) authorizes a wide range of sanctions for a party's failure to engage in discovery. Under Rule 37, courts endeavor to levy a just sanction related to the claim the discovery probes. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). A party's bad faith is relevant to the choice of sanctions, but not to whether sanctions should be imposed. *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978). Five factors guide the analysis for striking a pleading and entering a default judgment as a sanction under Rule 37(b)(2)(A)(iii): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1080, 1090-91 (9th Cir. 2025) (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) and citing *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169–70 (9th Cir. 2012) (upholding default judgment sanction where party "willfully and in bad faith" "violated the court's discovery order")).

L.R.Civ. 83.1(f)(1) grants the Court power, "[a]fter notice and a reasonable opportunity to be heard," to "impose appropriate sanctions upon the …party … who without just cause: (A) violates, or fails to conform to, the [Rules]." Available sanctions expressly include "[a]n order striking, in whole or in part, pleadings." L.R.Civ. 83.1(f)(2)(E).

District courts also possess inherent authority to impose sanctions in response to abusive litigation practices. *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109 (9th Cir. 2005). This authority grants federal courts broad, inherent power to fashion appropriate sanctions for a wide variety of misconduct, including bad faith, vexatious, wanton, or oppressive conduct; willful disobedience of court orders; abuse of the judicial process; delay or disruption of litigation; and other actions taken for an improper purpose. *Id.* "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.*  This inherent authority "reaches both conduct before the court and that beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

1    Courts consider five factors in levying sanctions pursuant to their inherent authority: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions." *Dreith v. NuImage, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (quoting *Adriana Int'l*, 913 F.2d at 1412). Dismissal is appropriate where "at least four factors support dismissal, or where at least three factors strongly support dismissal." *Id.* (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1983)); *see also Anheuser-Busch, Inc. v. Nat'l Bev. Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) (defendant's concealing of documents and pattern of deception rendered truth finding impossible, and District Court therefore correctly entered default judgment).

Defendants' conduct meets the standard for case-terminating sanctions, which is the same under the Court's inherent powers and Rule 37(b)(2)(A)(iii).

Regarding factors 1 and 2, Defendants' well-documented delays are detrimental to the expeditious resolution of this litigation and the Court's ability to manage its docket. *See, e.g.* (Doc. 159); Exhibit A at 33:24-34:3. Defendants have engaged in both procedural delay (e.g., default and motion to set aside, based on dubious allegations) and discovery delay (e.g., four discovery disputes and admitted failures to timely provide ESI and documents) throughout this case's pendency.

Regarding factor 3, the Court's "repeated[]" "grace" extended to Defendants mitigates any prejudice to them resulting from striking their pleading and entering default judgment. Exhibit A at 33:7-10.

Regarding factor 4, given Defendants' inaction to date, this case is far from a posture that would enable a resolution on its merits. Defendants now set forth concerns that Defendant Chiaravanond will not appear at trial at all, and are preparing to take a trial deposition of her, lack of good cause notwithstanding. All the while, Defendants have delayed Plaintiff's attempts to depose Defendants. These tactics have spanned two sets of attorneys, and clearly (and admittedly) derive from Defendants themselves. Defendants' failures to participate in fulsome discovery, preserve and timely produce documents/ESI, and (expected) appear at trial

foreshadow that this case's merits are unlikely to ever be tried on a complete record. Even if they were, for the reasons provided above relating to asset protection and at-issue asset preservation, the outcome of such a trial could be entirely inconsequential.

On factor 5, Plaintiff cannot conceive less drastic sanctions available to coerce compliance given the record of Defendants' disengagement and the application of the other relevant factors. The Court has already warned Defendants of the possibility of sanctions, entered lesser sanctions, and now, again, warned Defendants of the severe consequences that stem from further misconduct. Given the substantial unfairness of Defendants' actions, any further Rule or Order violations by Defendants spill over into irreparable prejudice to Plaintiff without case-terminating sanctions.

### B. Attorneys' Fees and Non-Taxable Costs as Monetary Sanction

While Plaintiff agrees with the Court's assessment that "[t]he situation does not appear to be one in which monetary sanctions drive compliance, at least not sufficiently," such sanctions are nonetheless justified—if not to drive compliance, to compensate Plaintiff for the extraordinary (and avoidable) expense he has incurred to address Defendant Chiaravanond's serial delays. *See B.K.B. v. Maui Police Dept.*, 276 F.3d 1091 (9th Cir. 1991) (the Court possesses inherent authority to award attorneys' fees and costs as a sanction), *abrogated on other grounds by Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019).

### III. Good Cause Requirement

Regardless of the proposed sanction(s) this Court adopts for future discovery violations, it should require and *strictly* apply a good cause standard to any requested modifications to the requirements of the applicable Rules or this Court's impending order—and the Court should consider any resulting prejudice to Plaintiff in light of the harm he has already suffered.

In the likely event Defendant Chiaravanond asserts her alleged medical condition as good cause, the Court should require her to present specific evidence of the same: authenticated medical records and/or a medical provider's sworn statement of the alleged condition and its impact on Defendant Chiaravanond's ability to engage in specific aspects of this case. This is standard. For example:

- In *Hall v. Johnston*, the Ninth Circuit affirmed a default judgment where a party failed to appear for depositions without evidence of "any physical or psychological malady" preventing participation. 758 F.2d 421, 424–25 (9th Cir. 1985).
- In *Sherrill v. Holder*, a plaintiff proceeding *in forma prauperis* was given extensive accommodations to appear at a deposition and respond to discovery, still failed to do so, and the Court entered case-terminating sanctions against her after she asserted her failure related to a medical condition without medical records or an affidavit. No. CV-12-00489-TUC-CKJ, 2014 WL 11342861 at *4–6 (D. Ariz. March 25, 2014); and,
- In *Berkshire Hathaway Direct Ins. Co. v. Kidani Law Firm*, the Court acknowledge its sympathy for a deponent's alleged medical condition, but denied his relief of excusal from appearing at the deposition because of his "failure provide an adequate explanation from a medical provider cannot be disregarded; Defendant failed to communicate any adjustment that could have been put into place, and neglected to provide Plaintiff with alternative dates following medical guidance." CIV. NO. 20-00437 SOM-WRP, 2021 WL 7904052 at *3 (D. Hi. June 29, 2021).

To date, Defendant Chiaravanond has not met her burden to show good cause. Like the defendant in *Hall* and plaintiff in *Sherrill*, Defendant Chiaravanond has only offered a now dated (September 2025), self-serving sworn statement, without current medical documentation authenticated by or a sworn statement from a medical professional. Like the defendant in *Berkshire Hathaway*, she has provided no definitive, alternative deposition dates or proposed safeguards to accommodate her alleged condition or to ensure her deposition and the discovery process progresses timely, efficiently, and without obstruction.

If Defendant Chiaravanond later seeks to further delay discovery or deviate from the Rules or this Court's past or future Orders, she should establish good cause through objective evidence to defend against case-terminating sanctions.

## IV. Conclusion

"In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Given the discovery issues and delay plaguing this litigation, and Defendant Chiaravanond's central role in the same, a complete truth-finding record is unlikely to be developed or disclosed in this case—and that will certainly be the case without severe sanctions to coax Defendant Chiaravanond's compliance with her obligations as a party in the District Court of the United States. And of grave concern to Plaintiff is the preservation and availability of assets subject to this case, particularly following Defendant Chiaravanond's inevitable next disengagement episode.

With that reality in mind, case-terminating sanctions—with immediate equitable relief enjoining Defendants from taking any action to possess, control, transfer, sell, or otherwise effect Defendants' assets to preserve and protect the same—are appropriate. A monetary sanction award of Plaintiff's reasonable attorneys' fees and costs is also appropriate. Plaintiff respectfully requests the Court enter an Order directing issuance of such sanctions and relief upon Defendants' next violation of the Rules or Court's Orders.

RESPECTFULLY SUBMITTED this 5th day of February, 2026.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By: */s/ Trevor J. Wainfeld*
    Devin Sreecharana
    Trevor Wainfeld

**ADMON LAW FIRM, PLLC**

By: */s/Moshe Y. Admon*
    Moshe Y. Admon, Esq.
    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

Matthew Hersh
Law Office of Matthew Hersh
2700 Woodley Road NW Suite 262
Washington, DC 20008
matt@matthewhersh.com
*Attorney for Defendants Alissa Chiaravanond, Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC*

Adam Bennett Nach
Stuart Rodgers
NACH, RODGERS, HILKERT & SANTILLI
2001 E. Campbell Avenue, Suite 103
Phoenix, Arizona 85016
docket@nrhslaw.com
adam.nach@lane-nach.com
stuart.rodgers@nrhslaw.com
*Attorneys for Peak Performance Restructuring Services, LLC*

/s/Lynn Adamick