**<u>Index of Exhibits</u>**

Case No. 3:23-cv-08622-JJT

*Phong Thanh Huynh v. Alissa Chiaravanond, et al.*

Plaintiff's Notice of Proposed Sanctions

February 5, 2026

| Exhibit A | January 22, 2026 Hearing Transcript |
|---|---|
| Exhibit B | Defendants' September 12, 2024 Rule 26 Initial Disclosure Statement |
| Exhibit C | Webpage |

# EXHIBIT  A

1                UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF ARIZONA

3              _____

4

Phong Thanh Huynh,                    )
5                                      )    No. 3:23-cv-08622-JJT
          Plaintiff,                   )
6                                      )
          vs.                          )    Phoenix, Arizona
7                                      )    January 22, 2026
Alissa Chiaravanond, et al.,           )    1:49 p.m.
8                                      )
                                       )
9          Defendants.                 )
_____)
10

11        BEFORE:  THE HONORABLE JOHN J. TUCHI, Judge

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14              (Discovery Dispute Hearing)

15

16

17

18

19

20
Official Court Reporter:
21 Scott M. Coniam, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
22 401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
23 (602) 322-7257

24 Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription
25

A P P E A R A N C E S

For the Plaintiff:

          May, Potenza, Baran & Gillespie, P.C.
          By:  Mr. Devin Sreecharana, Esq.
               Mr. Trevor J. Wainfeld, Esq.
          1850 N. Central Avenue, Suite 1600
          Phoenix, Arizona 85021

          Admon Law Firm, PLLC (Telephonic)
          By:  Mr. Moshe Y. Admon, Esq.
          300 Lenora Street, #4008
          Seattle, Washington 98121

For the Defendant:

          Mestaz Law
          By:  Mr. Matthew Hersh, Esq.
          5090 North 40th Street
          Phoenix, Arizona 85018

<pre>
1                    P R O C E E D I N G S

2              (Proceedings convened at 9:05 a.m.)

3              THE COURTROOM DEPUTY:  This is civil case 23-8622,

4    Huynh v. Chiaravanond.  This is the time set for telephonic

5    conference.

6              Counsel, please announce.

7              MR. SREECHARANA:  Good morning, Your Honor.  Devin

8    Sreecharana and Trevor Wainfeld with May, Potenza.

9              With us on the phone is our co-counsel, Moshe Admon,

10   on behalf of the plaintiff.

11             THE COURT:  Good morning to all three of you.

12             MR. HERSH:  Matthew Hersh on behalf of the defendants.

13             THE COURT:  Good morning, Mr. Hersh.

14             This is the time set for the hearing on the notice of

15   discovery dispute that was filed it looks like about 10 days

16   ago, maybe 11.

17             In concert with the notice of discovery dispute there

18   was also -- or at the same time there was filed -- and I have

19   had the opportunity to look at, Mr. Hersh -- your motion for

20   ex parte conference.  I believe I understand all that you are

21   trying to communicate to me through that and I am going to

22   allow defendants' counsel to have that ex parte communication

23   to preserve as much as possible either attorney-client

24   privilege communications or confidential information under

25   ER 1.6 that will still give the court the ability to make the
</pre>

1   decisions it needs to in order to move this matter forward and

2   also to understand counsel's position as opposed to his

3   clients' position because there may be differences as is

4   indicated in the notice of discovery dispute, at least the

5   defendants' component of it.

6           Mechanically it would be quite easy to handle the

7   ex parte if we didn't have Mr. Admon on the phone, that adds

8   one little wrinkle which is solvable.  What I'm going to do is

9   close the proceedings essentially in camera so that I can have

10  a discussion with you, Mr. Hersh, about the things that you

11  want to tell me but weren't comfortable exposing and I'm going

12  to ask counsel for the plaintiff to step out to one of our

13  witness rooms just outside the first two sets of doors.  And,

14  Mr. Admon, I'm going to ask you to disconnect and then

15  mechanically, as soon as I can bring you back into the room,

16  Mr. Sreecharana, we'll let you know and at that same time if

17  one member of the plaintiff's counsel team would give Mr. Admon

18  a call to reconnect at that point then we'll be able to move

19  forward after the ex parte is concluded.

20          So let's go ahead and handle that first so I have --

21  I'm armed with the information I need to conduct general

22  questioning of the counsel.

23          All right.  So, yeah, I'm going to -- thank you.

24          I think I just heard Mr. Admon sign off online so

25  we're in good shape.

1          (Sealed proceedings not transcribed.)

2          (Proceedings reconvened 9:27 a.m.)

3          THE COURT:  All right.  Counsel, we're back on an open

4    record.

5          Unfortunately my overall schedule is not going to

6    cooperate to make this smooth and so I'm going to have to

7    suspend this hearing for just a short maybe 10 or 15 minutes

8    while I take care of a criminal matter with an in custody

9    defendant, so I'm going to ask the attorneys just to step away

10   from counsel table so the parties can use it and then as soon

11   as we finish that one, we will resume this hearing to

12   conclusion and thank you for your understanding.

13         (Proceedings adjourned at 9:29 a.m.)

14         (Proceedings reconvened at 9:51 a.m.)

15         THE COURT:  All right.  Counsel, I need just one more

16   minute to reset and then we'll continue.

17         All right.  Thank you.

18         We're now back on an open record.

19         In some ways I do feel like the discovery issues

20   fronted by plaintiff's counsel to me are very familiar because

21   a lot of this was the subject of last year's -- and I think it

22   was almost a year ago -- notice of discovery dispute.  And I

23   guess I want to have just a little bit more precise knowledge

24   of what's at issue from the plaintiff's perspective right now.

25         I know that even after having adjusted the schedule

1   we're butting up against things.  I think yesterday was an

2   expert disclosure deadline and, at least as I read the notice,

3   plaintiff's concern was that some of the fact discovery that

4   was due and owing was inhibiting plaintiff's ability to provide

5   one or more experts -- and that wasn't clear to me but it

6   really doesn't matter -- any experts with some information from

7   which they would formulate opinions and, therefore, the

8   disclosure couldn't be made timely without at least considering

9   all of that.  So that's part of it.

10          Am I right, Mr. Sreecharana?

11          MR. SREECHARANA:  Yes, Your Honor.

12          THE COURT:  All right.  I also understand that the

13   electronic discovery was at issue.  I know from our last

14   hearing on this that that was going to be produced on a rolling

15   basis ultimately as worked out, which of course is not unusual,

16   but I take it from the joint notice that in plaintiff's view

17   that's still not complete and, therefore, at issue.  And I know

18   Mr. Hersh is going to have something to say about that shortly

19   in terms of status on that point but what else is still at

20   issue as noticed?

21          MR. SREECHARANA:  Yes, Your Honor.  And before I

22   address that, Mr. Hersh did mention to me that he wanted to

23   make a request to the court before we started so I'll let him

24   make that request, if that's okay?

25          THE COURT:  All right.  I'm sorry.  I think you may

1    have said that to me before but in the shifting of matters, I

2    missed it.

3              Mr. Hersh, go ahead.

4              MR. HERSH:  Your Honor, I would like to request that

5    in light of the discussion that we spoke privately and in light

6    of the fact that inevitably some of it is going to come out or

7    at least be inferable, I would like to ask that these

8    proceedings be sealed without prejudice to either party

9    essentially working out or moving for them to be unsealed.

10             What I'm particularly concerned about is information

11   that would reveal or make it inferable Ms. Chiaravanond's

12   physical location.  We're inevitably going to have discussions,

13   I would imagine, further along the lines of what we've talked

14   about ex parte.

15             I will say I do so very reluctantly because we have an

16   ASU law student here who's very wisely chosen to further his

17   education by viewing this proceedings but I really must, in the

18   interest of client -- my client make that request.

19             THE COURT:  All right.  I'm going to ask

20   Mr. Sreecharana for his position on sealing in just a moment

21   but I have a threshold question for you, Mr. Hersh.

22             I understand the sensitivity of the subject matter,

23   the information that you just let forward which is location,

24   but the effect of sealing a proceeding obviously doesn't keep

25   any of the participants from knowing what is discussed and

1    having that information.  It's only the public.

2         Is the public really the issue with regard to what

3    you're concerned about, Mr. Hersh?

4         MR. HERSH:  What I'm interested in -- perhaps I

5    phrased it wrong.  But the protective order provides that

6    essentially personally identifiable information would be

7    subject to designation as attorneys' eyes only.

8         THE COURT:  All right.  Understood.

9         MR. HERSH:  I don't want to share with the client.

10        THE COURT:  Understood.

11        Mr. Sreecharana, what is your position on that?

12        MR. SREECHARANA:  So if I now understand, this is a

13   request for this information be treated under the protective

14   order for attorneys' eyes only.  That's a lot different to me

15   than sealing the proceeding.

16        I would object to sealing the proceeding, but I guess

17   I have no objection to the attorneys' eyes only designation.

18        I would just note, for the record, there seems to be

19   this undercurrent that either the lawyers or maybe specifically

20   our client would do something nefarious with that information.

21   That has been put in the public record before and he's not had

22   an opportunity to defend himself on those issues, so I think

23   it's unnecessary.  But for purposes of moving forward in trying

24   to get this case on track and resolve these issues, I would not

25   object if the court believes that it's appropriate.

1          THE COURT:  Thank you, Mr. Sreecharana.

2          Mr. Hersh, are the parties seeing eye to eye now based

3     on what Mr. Sreecharana has said?  Is this an issue that's

4     subject to the protective order or do you want this actual

5     hearing sealed?

6          MR. HERSH:  I actually do want both.  I think we're

7     seeing eye to eye on the protective order.  I have no concern

8     obviously about our law student but anything then is not sealed

9     becomes a part of the record and then anybody with Pacer access

10    can make a transcript request and then it becomes out there.

11         THE COURT:  I'm going to ask both counsel to go ahead

12    and have a seat.

13         I'm going to deny the request to seal this hearing.

14    If we get into an issue where we start to broach personally

15    identifiable information or anything else that is protected, at

16    that point I'm might reconsider, but the general thrust is how

17    we're going to manage a discovery dispute, what the way forward

18    is going to be, and I think that is a matter of public interest

19    not because of this case particularly but just generically how

20    the court handles matters that are brought to this public

21    forum.

22         All right.  Now, I'll hear you, Mr. Sreecharana, and

23    if you remember my question.

24         MR. SREECHARANA:  I think I do.

25         To answer the court's question directly, yes, there

were documents that we had requested specifically in discovery

requests.  We understood that there would be responsive

documents provided in a rolling production of ESI.

Specifically these documents relate to ESI that were in the

apps identified in our discovery dispute statement, WhatsApp,

Signal, and I believe an email account.  The documents, as we

understood it, may include information that's relevant to the

property's value and condition, which is an issue in this case

given what's happened to some of those properties in Malibu and

ultimately our client's damages, but -- based on the

allegations that the properties belong to him.

        We understood that from -- the ESI that would have

been created or at least accessible from March 2025 was what

would be forthcoming and we also understood by agreement over

many months that those would be produced by the end of year to

meet the original deadline for expert disclosures.

        What has happened and what precipitated really this

dispute is that, as the court is aware, there has been a

pattern of disengagement in this case by Ms. Chiaravanond.  And

I won't go through the recitation of all the times that

happened, they're a matter of public record and I'm sure the

court's familiar with them, but what was a primary concern was

a concession by counsel that was echoed in his portion of the

joint discovery statement that he did not have access to those

and implicit if not explicit in that conversation was because

1    his client wasn't cooperating again.

2            I don't know if this was discussed while we were

3    outside of the courtroom but late yesterday and after-hours, we

4    had a call about this issue and plaintiff's counsel had

5    proposed a solution which we would say is minimally acceptable.

6    And I want to talk about the larger implications of this.  But

7    essentially what Mr. Hersh proposed was that the device that

8    this information is on has been shipped.  It's on its way to

9    defendants' forensic expert for exportation, review, and

10   ultimately disclosure.  The representation from counsel was

11   that it would be disclosed within 10 days to us.  And that they

12   proposed that they would pay our fees -- or our client's fees

13   for those services incurred to tee this issue up with the

14   court.  That to me is minimally acceptable because it corrects

15   something that was admittedly an obligation that was not

16   followed under either the order or the rules.

17           But it underscores and even -- you know,  candidly the

18   request to seal because lack -- or a desire to protect location

19   underscores a concern that this disengagement from

20   Ms. Chiaravanond will continue at some point.

21           I want to make very clear to the court, as I've made

22   it very clear to Mr. Hersh, I think he's done a monumental job

23   defending his client and discharging his professional duty to

24   his client, but our position comes from that same place.  We

25   have been trying to litigate this case to get to the merits of

1  this case and we've been spending an inordinate amount of time

2  on case management issues of which we are primarily in the

3  dark.  And so it raises a broader concern about, you know,

4  whether we can -- if we ultimately get this information,

5  whether we can ultimately depose Ms. Chiaravanond and

6  ultimately whether or not we can try this case with the parties

7  participating.

8          There's some additional context there but I'm going

9  afield from the court's question and what was in the discovery

10  dispute so I'll stop there and answer any further questions.

11          THE COURT:  The one question I have is to your

12  knowledge -- I want to make sure that in my mind I have

13  straight what the outstanding discovery -- due and owing

14  outstanding discovery materials are.  They're all subject --

15  they're all a result or subject to a document request made by

16  the plaintiff.  And it's clear from your description in writing

17  and from everything that I've heard from both counsel today

18  that a lot of it is subject to the ESI protocols that the

19  parties worked out because it's electronically stored, which

20  just means that it's -- it can be the same stuff but there's an

21  extra protocol to go through because it's not physical paper

22  documents, although someday they may be reduced to that.

23          I'm trying to find out in the Venn diagram in my mind,

24  Mr. Sreecharana, whether there's complete overlap or whether

25  there is documentary evidence that you are still waiting for

1    that wasn't on -- and, I'm sorry, I can't remember what the

2    communication or social media devices -- whether it was

3    Snapchat or any of the others.

4          Is everything that you are waiting for -- to your

5    knowledge, is everything you're waiting for on the hard drive

6    or the mirror of the hard drive that got shipped and is now

7    going to need to be analyzed or is there more?

8          MR. SREECHARANA:  I understand the court's question.

9          So my understanding is that it's all ESI.  My

10   understanding is that some of the information is on whatever

11   has been shipped recently.  And that information and the device

12   that it was on was the primary subject of this discovery

13   dispute.

14         I also understand that there is a second bucket of ESI

15   that was something like -- and Mr. Hersh will correct me if I'm

16   wrong -- it's either 50,000 pages or 50,000 documents but he'll

17   correct me -- that is separate and apart from what's been on

18   the device.  That has been in defendants' counsel's or

19   defendants' expert's possession and control but for which

20   defendants' expert and counsel did not have defendants'

21   engagement to assist them in efficiently going through that for

22   purpose of disclosure.

23         There was a discussion at a -- maybe two meet and

24   confers ago about producing this second bucket, just getting it

25   out in its 50,000 pages or 50,000 documents form and Mr. Hersh

1    indicated he would be willing to attempt to identify what he

2    believed is responsive to discovery requests to try and

3    facilitate or expedite our review, which I appreciate, but

4    nonetheless we're going to have to go through all that

5    information anyway.

6         The concern there is if you take both, you know,

7    buckets of ESI together, it's -- even if it's just pages and

8    not documents, it's a lot of information and it's a lot of

9    information to distill for purposes of teeing up the expert

10   disclosures and also to prepare for the depositions that we

11   understood we were going to be taking, you know, within the

12   first 10 days or 12 days of February.

13        THE COURT:  How many depositions does -- fact

14   depositions does the plaintiff currently contemplate beyond

15   Ms. Chiaravanond herself?

16        MR. SREECHARANA:  Beyond Ms. Chiaravanond and to the

17   extent she's a 30(b)(6) witness for the defendants?

18        THE COURT:  The entities, yeah.

19        MR. SREECHARANA:  Fact witnesses -- looking at

20   Mr. Wainfeld -- probably about three, two to three.

21        THE COURT:  All right.  I presume they're all directly

22   or to some extent affected -- or how you'd prepare for them are

23   affected by what's in the as yet unreceived ESI?

24        MR. SREECHARANA:  That's correct.  And particularly if

25   we're unaware of individuals with whom Ms. Chiaravanond was

1    speaking that may have knowledge relevant to the allegations

2    and claims in the case.

3              THE COURT:  All right.  And at this point how many

4    experts on plaintiff's side are affected by not having

5    information?

6              MR. SREECHARANA:  Again, without knowing what's in the

7    information, just based on representations of counsel, if it

8    relates to the properties' condition, that would be two

9    experts, you know, one assessing the California properties and

10   one assessing Arizona properties.  And to the extent there's

11   any information about what at one point defendants had

12   characterized as a gift defense or a gift that was related to

13   Thai culture that would be a separate expert.

14             So in total, Your Honor, potentially three experts.

15             THE COURT:  Okay.  Thank you.

16             All right.  Mr. Hersh, I'd like to hear your --

17   obviously I'd like to hear your response to what I just asked

18   Mr. Sreecharana to go over which is the scope of what's out

19   there.

20             I know part and parcel of that response will be things

21   that might have been broached during ex parte that you had

22   indicated were likely to come out in this open phase of the

23   hearing as well and so I don't intend to limit you in any way

24   on that.  But I'd like you to respond to what Mr. Sreecharana

25   has laid out for me about what is due and owing and how it's

1    affecting the plaintiff's preparation at this point and their

2    ability to meet the deadlines that are still in place.

3         MR. HERSH:  I think it would be helpful to step back

4    and give a small amount of context before I directly answer

5    that question.  I think we need a bit more clarity -- the court

6    may need a bit more clarity on just what we're talking about,

7    what that Venn diagram looks like and what's doing and why.

8         Let me talk first about the gathering of documents and

9    then I'll talk about what's due under the various orders and

10   requests and where we are on those.

11        As of yesterday, I had gathered from my client,

12   provided to our ESI consultant and thus who by that made

13   available to me all documents which are all ESI in Alissa's

14   possession going from December -- January 1, 2018, through

15   March of 2025 when we did that sweep.  And if the court

16   remembers by then that was just an enormous task.  There were

17   about a dozen email accounts and four or five different -- a

18   few laptops and cell phones.  And we worked really hard to get

19   that over to our ESI consultant.  And he had to -- in order to

20   get that, that was a lot of work consulting with Alissa, two

21   step authentication.  She had to be on the phone with him.  At

22   one point she even went over to his office and they got into

23   things together.

24        What was missing as of yesterday was everything from

25   March 2025 on, which is what the subject of their dispute is.

1        As of this morning, I can report that Ms. Chiaravanond

2   has just told me she's on the way to a FedEx office to ship her

3   phone again over to our ESI consultant.  They have a call set

4   at 2 p.m. this afternoon and -- during which time our ESI

5   consultant should obtain the information necessary, unless

6   there's a follow-up call needed, to get access to any emails or

7   text messages or anything else ESI from March 2025 to the

8   present.

9        Given that, I've told client -- counsel I have no

10  problem providing that.  I have no problem with an order

11  compelling that.  We've told them we'll give them -- just to

12  give ourselves a little bit of breathing room -- ten business

13  days from now.  So that's gathering.

14       Let me go to that kind of Venn diagram that the court

15  referenced between ESI and disclosures because we're talking

16  about very, very different things.

17       The ESI order required each party to go through all of

18  the ESI that they had collected with about 80 different terms,

19  gather everything that surfaced in that search, relevant or

20  not, and provide it to the other side.

21       When we -- and I should say discussions about those

22  terms continued until about four or six weeks ago when both of

23  us kind of had a discussion and we realized -- we kind of

24  communicated to one another, geez, some of these terms are

25  really broad and they're just killing us in terms of the amount

1    and we agreed to narrow them.  The search that we initially did

2    surfaced about 65,000 documents with about 500,000 pages.

3    We've now gotten it down to 50,000 pages and 400,000 pages.

4    I'm working through that as quickly as I can.  It would have

5    been faster if I had had some help from Alissa, but the fact is

6    although it slows me down, as I said, it doesn't stop me from

7    doing that and I've got about a third of it just about ready to

8    go.  I'm quite confident that about mid-February they will have

9    all of it.  And as counsel said, as I'm going through it, I am

10   also designating the much smaller subset of those that I deem

11   to be responsive to their discovery request and all of their

12   discovery requests, not just the latest ones but the ones they

13   made last year.  And so when they get these documents on the

14   rolling basis, they're basically going to get them in two

15   different file folders, one will be all the documents I believe

16   to be responsive, which obviously they will want to start with,

17   and then everything else which just have come up in the terms

18   that I don't think are responsive but of course they have them.

19           Now, two subsets -- the Venn diagram gets complicated,

20   two subsets within those.  They've made two sets of discovery

21   requests.  One back a year ago and then one just I think in

22   October, November where we agreed the responses would be due at

23   first in December and then we pushed it to December 31.

24           What I have done in order to respond to those -- and,

25   again, at this point this is only through 2018 through March --

1   is I went into that ESI database and I just targeted searches

2   with a bunch of search terms that I believe would get right to

3   the material that they needed to do their expert report and to

4   comply with the discovery requests that they've identified are

5   the most urgent ones for the expert report.  So we're talking

6   about subsets that are responsive and then another subset

7   within it that are responsive to what they've identified as

8   critical to that expert report.

9           They have now gotten, several weeks ago, everything

10  responsive to that late set of document requests that they've

11  identified as urgent for their expert report through March 2025

12  and that last little bit is going to come in two weeks.

13          Given the fact that the expert report is not due now

14  until February 21 and they're going to have this -- I've

15  promised -- and I'm happy for the court to order and stipulate

16  my promise -- they'll have that February 3rd which is plenty of

17  time for them to analyze.  And I can explain why a little bit.

18  This -- we haven't been favored by declarations or affidavits

19  from their expert but -- so I kind of have to speculate here,

20  but what they're interested in here is doing an appraisal of

21  the properties.  Now, how do we do an appraisal?  Well, we look

22  at the comps.  Of course they have that publicly available.  We

23  inspect the inside which, you know, I hate to say they've

24  missed their opportunity to do that.  They asked us only a few

25  weeks ago to do that and unfortunately the Rule 34 discovery

1    deadline had passed so because of their own, you know, I'm sure

2    inadvertent failures, they don't have that.

3         What's left that they need from these documents that

4    they don't -- that they don't have?  I'm not entirely sure.

5    Counsel has mentioned to me on a call that they want records of

6    the rentals, how much she's been earning from the rentals of

7    any of the properties.  Well, they've already subpoenaed and

8    could subpoena again -- the entity responded to the company

9    that manages the rentals for the one Arizona property that is

10   rented out.  Obviously the California property is burned down.

11   That's not being rented.  So I think even if they never got

12   these documents, we're talking about an extraordinarily

13   marginal value.  And of course they're going to get these

14   documents and it's not going to be much and I am quite

15   confident they will be able to do what they need to do.

16        I just wanted to say one or two more things about the

17   ESI issue and the rolling production.  Again, this is the

18   bigger circle within the Venn diagram.

19        I don't want to go too far on this because this is

20   going to be teed up at a later time.  But just so that the

21   court is aware, we are very soon -- I believe if we can't work

22   this out -- going to have -- be back here for another discovery

23   dispute about their compliance with the ESI order.  Our search

24   of the 80 terms surfaced 50,000 documents and, as I said,

25   400,000 pages.  They produced to us what they purport to be

UNITED STATES DISTRICT COURT

1   full compliance with the ESI order and in total, in total with

2   discovery request in the ESI order I've gotten 1,500 pages from

3   them.  And, in fact, what they've told me is the way they did

4   these searches is they had their client go through his own

5   phone and emails.  And they're go to getting very shortly a

6   declaration from our ESI expert, somebody they also know and

7   have worked with, that says that doesn't do it.  You've got to

8   have the phone in the possession and forensically evaluated.

9   You can't just have a client go through his own texts, even if

10  he's doing the best job possible.  It's just impossible.

11          Now, we're going to tee that up later.  The court

12  doesn't need to obviously address that right now but I think

13  the court would at least benefit from the broader issue which

14  is that we're -- we've got a lot more issues on that ESI order

15  to deal with down the road.

16          I hope by doing that I've answered the court's

17  question.  If I hadn't -- if I haven't, I'm welcome to address

18  it further.

19          I just wanted to say one other thing only because it

20  came up in counsel's statement.  Counsel believes that he is

21  entitled to depose Ms. Chiaravanond one day and then he stated

22  the entities a separate day because -- under a 30(b)(6).  I

23  actually -- and this may be something that also will have to be

24  teed up, although I hope we can dispatch it pretty easily.

25  These entities are single member entities that are alteregos of

1    Ms. Chiaravanond.  There's not anything that could possibly --

2    within the knowledge of these entities that's not in

3    Ms. Chiaravanond's knowledge, so I don't think that is a

4    reasonable basis to take two days.

5           That said, I would like when we get to it to depose

6    their client potentially for two days and so what I propose,

7    leaving aside the 30(b)(6) issues, that we just agree that each

8    client is going to be available for two days for deposition.

9           THE COURT:  All right.  Thank you, Mr. Hersh.

10          All right.  Mr. Sreecharana, as the proponent of the

11   dispute that is actually before the court right now, I'm going

12   to give you the opportunity -- the last word on if there's

13   anything that you want to react to, respond to with regard to

14   what Mr. Hersh has just laid out for me.

15          And you can leave alone anything having to do with

16   other issues that aren't part of this discovery dispute fronted

17   for the court.  If those come up, I'll deal with them, but

18   that's not what I'm here to do today.

19          MR. SREECHARANA:  I understand, Your Honor, and thank

20   you.

21          Very explicit in all of this, in the presentation and

22   the discovery dispute, is an acknowledgment that the disclosure

23   rules haven't been complied with.  That the production has been

24   untimely.  And there's now an agreement that it will be

25   proposed and the schedule to do that.

1          I would ask the court at minimum to adopt that

2     schedule.  Order that those documents be produced as Mr. Hersh

3     just outlined and accept defendants' offer to pay plaintiff's

4     attorney's fees I would say through the date of the submittal

5     of its fee application as a minimal sanction.

6          I will only comment on basically the substance of

7     these documents and what they may show.  It is true that we

8     have subpoenaed third parties because we haven't gotten

9     information from the defendants.

10          It is also equally true that we could talk to her what

11     I would characterize as a private receiver over the Sedona

12     properties, this is MCA and Mr. Bierman who submits reports

13     every month, but I'll tell you in a limited review of

14     information that we have gotten from the defendants in which

15     she's exchanging communications with Mr. Bierman, some of those

16     communications are redacted apparently on grounds of

17     attorney-client privilege or work product, but we don't have a

18     privilege log yet and I understand that that's still in

19     discussion.

20          My only point there is that there is an affirmative

21     obligation from the defendants to produce this information.

22     They've acknowledged they will do it.  It is untimely and it is

23     causing a familiar jam in the schedule.

24          I will also comment just for the court's awareness

25     because to the extent this does impact the schedule, we're

1    appreciative -- particularly given the court's trial calendar

2    last week of the additional breathing room.  It does create

3    challenges for us because of our other professional and

4    personal obligations which we've shared with Mr. Hersh.

5          So depending on what happens here and ultimately if

6    the documents are provided as Mr. Hersh outlined and by when, I

7    can still see challenges with this schedule assuming what the

8    court decides doesn't impact it on its own.

9          And if you want me to be clear about that I can.

10          THE COURT:  Yes.

11          MR. SREECHARANA:  Okay.  So we have -- I have a

12    complex case -- two consolidated cases in state court which are

13    now spilling over into Federal Court.  Those cases have about

14    eight depositions that are set in February.  There are daily

15    discovery disputes before Judge Fox in the state court cases.

16          I'm also planning to take paternity leave in the first

17    part of March.  Mr. Hersh has suggested that we can get someone

18    else to come in and assist with this case.  That is unlikely

19    given the amount of data in this case and my institutional

20    knowledge and so for those reasons at least the first, you

21    know, two, three months in the revised schedule as proposed by

22    the court or set by the court present a challenge.  And

23    practically, even if all those things weren't happening, what

24    I'm hearing is there's still a lot of data that we have the

25    right to go through.  We still have discovery issues that we

1    apparently need to work through.  And there's other issues that

2    have not been teed up for the court that still need to be

3    addressed through the conferral process.  All of those things

4    suggest to me that this case is going to be -- if it moves

5    forward as it should apace, it's still going to be several

6    months away from being prepared for trial.

7              THE COURT:  All right.  Thank you, sir.

8              (Pause.)

9              MR. SREECHARANA:  Your Honor, I just want to be clear.

10   Mr. Hersh has told me I've misspoken about the production of a

11   privilege log with regard to MCA communications and he's

12   provided me some emails.  I'm not going to have the time to go

13   through them.

14             I'll just retract my statement because if he's

15   representing to me that he provided that and it got passed me,

16   I'll apologize.

17             The point still is that there are redacted

18   communications between MCA, Mr. Bierman, and Ms. Chiaravanond

19   and that's part of the issue of trying to get information

20   regarding these properties.  So if I misspoke about that, my

21   apologies.

22             THE COURT:  All right.  Thank you.

23             MR. HERSH:  And, Your Honor, as long as we're at it,

24   there were certainly several new things in counsel's

25   presentation, his reply, that weren't raised earlier.  With the

1    court's indulgence, I'd be happy to address them.

2            THE COURT:  Go ahead.

3            MR. HERSH:  Sure.  Well, privilege log was number one

4    but that's dealt with.

5            He mentioned attorney fees.  And I've made very clear

6    to them, yeah, of course they're entitled to reasonable fees in

7    connection with this dispute.  I couldn't dispute that.  I just

8    want to make clear that the fees I think need to be a bit

9    partitioned for those aspects of what we've talked about and

10   what got briefed and prepared for that specifically had to do

11   with the documents that I hadn't gathered until now March 2025

12   and anything else that's had to come up.  So I trust they'll

13   partition that appropriately.  And of course I'm hoping I'm not

14   getting hit with three counsels conferring but we'll deal with

15   the reasonableness at that time.

16           And there was one other thing and I apologize that I'm

17   not reminded myself -- oh.  Counsel raised the issue of the

18   timing of the depositions.  That's not technically teed up but

19   I think we've both talked about it and I think we've both

20   prepared, with the court's indulgence, to talk about that a

21   little bit.  They've wanted to notice depositions -- their

22   deposition of our client the second week of February.  I feel

23   very strongly given that the discovery deadline is not until

24   the end of April that this should be March not February.

25           The way I see it is all of the options here are bad

1    and what we need to do is choose the least bad one.  Putting

2    depositions off until March that's a hardship for counsel.

3    Their lead counsel is going on paternity leave.  They would

4    have to potentially bring somebody else on to manage their

5    caseload.  That's a bit more expense.  I don't deny that.

6    That's frustrating to them.  That's bad.

7         The alternative is we have a defendant in the

8    condition that the court and I have discussed who is rushed to

9    a deposition, is not going to have time at this point to fully

10   prepare, and neither side at that point will I believe have

11   fully complied with their duties under the ESI order which

12   would make the deposition far less valuable.

13        You know, we're in a place where none of the options

14   are good, but I do think the least bad option is having those

15   depositions in March.  I don't know that that needs to be

16   resolved today but since it's come up, I'd address it.

17        THE COURT:  All right.  Thank you, Mr. Hersh.

18        Mr. Sreecharana, am I correct in calculating that you

19   want to have the defendant's depositions completed before the

20   expert report?

21        Reports, I should say.

22        MR. SREECHARANA:  Yes, Your Honor, that would be

23   ideal.  Particularly given the data that's forthcoming.

24        THE COURT:  How long are you planning to be on leave

25   from practice?

1          MR. SREECHARANA:  It was supposed to be two weeks.

2          THE COURT:  Oh.  Okay.  Understood.

3          And right now you're contemplating that for March, is

4     that right, or part of March?

5          MR. SREECHARANA:  Correct.  Sometime in March, beyond

6     my control.

7          THE COURT:  All right.  Counsel, if you would be

8     patient.  It strikes me that there are enough moving parts in

9     what's been presented that I'd like to take the time to go back

10    and prepare a reasoned written order but that's counter to my

11    general approach to discovery disputes.

12          The point is we try to get these things teed up

13    quickly so that you can get a resolution quickly so the people

14    are moving again quickly and so I'm going to figure it out

15    right now and then rule from the bench and that may take me a

16    little while.

17          MR. HERSH:  Your Honor, with regret, there's one note

18    that I had intended to raise in my response that I just

19    overlooked.

20          THE COURT:  Go ahead, Mr. Hersh.

21          MR. HERSH:  Sure.  One of the things that as we're

22    talking about deposition timing potentially sequencing -- I

23    mentioned this to counsel last night -- one of the things that

24    we're very strongly contemplating on our side, for reasons that

25    are not likely to surprise the court, and although it's not a

1    common thing to do, is also to notice a deposition of our
2    client as well which would add to the time necessary to
3    prepare.  That's -- obviously the court understands I think the
4    background issues that is in the worst case preservation issues
5    so that we can make the argument at trial, if -- hopefully we
6    don't get there but if we do.  And also because this is the
7    unusual case -- and I've had the opportunity to read -- it's my
8    first case with a client of this nature, but I've had the
9    opportunity to speak to attorneys who have and read about this.
10   This is an unusual case where I think our client and, frankly,
11   the interests of substantial justice would be benefitted by her
12   having the ability to tell her story for the first time in a
13   setting that is less intimidating than this room.  I know the
14   rules allow me to notice her deposition.  What I anticipate
15   being an issue is potentially who goes first.  So I just want
16   to tee up and perhaps counsel can think about it.  Maybe he has
17   an answer now; maybe he needs more time.
18          I do think it would be the most fair that when we do
19   get to the depositions of Ms. Chiaravanond that I -- she have
20   the opportunity to give her deposition first and then for them
21   to come back -- cross-examine her and then to come back with
22   their own deposition.  It is uncommon.  But we have a party in
23   the condition that we all know that she is in.  And I think
24   under those uncommon circumstances, that's a reasonable
25   request.  I don't know -- I haven't previewed that actually

1    with counsel so I'm springing this on him, but -- as long as

2    it's coming up.  I wanted to raise it.  He can respond to it

3    now or --

4              THE COURT:  Thank you.

5              All right.  Counsel, I'm going to step off probably

6    for about ten minutes or so.  If you could be reassembled about

7    then.  If I'm done sooner than that, I'll ask Ms. Martinez to

8    let you know but I don't think I will be.

9              All right.  Thank you.

10             (Proceedings adjourned at 10:37 a.m.)

11             (Proceedings reconvened at 11:13 a.m.)

12             THE COURT:  All right.  Thank you, Counsel.  Please be

13   seated.

14             The information before the court demonstrates that

15   some progress has been made regarding the material outstanding

16   that would be responsive to the plaintiff's request for

17   production.

18             The parties' counsel in their presentations today have

19   made clear during the hearing that they have had discussions on

20   which they have a limited resolution for provision by the

21   defendant of certain materials and the court will order the

22   parties to reduce those provisions to writing in the form of a

23   proposed amendment to the scheduling order.  And I'll discuss

24   that in greater detail in a moment, but there's a flow to my

25   thinking that I don't want to interrupt right now any further.

1      It is also apparent to the court, from all of the

2  discussion had today as well as the notice and more broadly the

3  history of this matter since its inception, that defendant

4  Chiaravanond's continued engagement in the litigation is

5  necessary to the progression of the case through its final

6  shaping in discovery.

7      The parties will recall that the court originally

8  defaulted the defendants for failure to engage.  It was only

9  then that the original attorney for the defendants came forward

10  and was able to persuade the court to withdraw the default and

11  allow her to defend.

12      Then her failure to engage resulted in a series of

13  discovery issue that culminated in last spring's hearings and

14  work.  At which point the court advised or maybe better to say

15  warned the parties that there would be sanctions if there was

16  further delay.  And I'm just not a fan as a management practice

17  of threatening a sanction if something happens and then when

18  that happens again you don't follow through and that's sort of

19  the box that the court finds itself in at this point.

20      Mr. Hersh has been candid with the court, as he must,

21  that the defendant again has failed to engage and that's in any

22  event evident from the stymieing of progress and the rolling

23  production.  It just stopped after the defendant stopped

24  engaging as to the point when everything was covered up to

25  March of 2025, that marker.  And it's gotten more profound

1    since.

2         It now appears that the defendant has, at least in a

3    limited way, reengaged enough to make available the repository

4    of some of the ESI material and her phone.  But that could all

5    stop again tomorrow or the next day.  And that's a profound

6    problem because it's also apparent that the defendant's

7    engagement is necessary to avoid further wasting of assets.

8         The court and counsel assembled here today or on the

9    phone are not engaged in an academic exercise.  And all of the

10   time devoted to this case by the court and by the lawyers is

11   scarce and valuable.

12        Where some party or parties prevail in this matter on

13   the law and facts only to find out that some or all of the

14   assets are no longer available to satisfy judgment due to

15   wasting, that tragedy would be compounded by the wasting of

16   your efforts and the court's as well and so the court must

17   return to the issue of how it will keep this matter on track

18   moving forward.

19        It is important for me to recognize at this point the

20   court does not perceive there to be any problem or deficiency

21   with Mr. Hersh's efforts or his judgment in representing his

22   client.  Rather, the delays of and the frustration -- the

23   resulting frustration of the plaintiff's efforts to exercise

24   his rights to get the discovery that he's entitled to, as well

25   as the court's efforts to move the matter along, are

1    attributable solely to the defendant and her lack of

2    engagement.

3          And at some point at some extreme at some repeated

4    iteration of the same problems coming back over and over again,

5    it ceases to matter whether that lack of engagement is due to

6    bad faith or is in good faith and simply beyond the defendants'

7    personal control.  Because there is federal litigation pending

8    and it must move forward and once grace has been extended,

9    which the court now has done repeatedly, the case just has to

10   move.

11         So this is how the court will proceed.  First, as I

12   mentioned a moment ago, the parties will meet and confer and by

13   Monday submit to the court a proposed order amending the

14   schedule and along the guidelines that the -- both parties have

15   mentioned and seem to be in agreement with requiring the

16   defendants to provide the ESI material as previously laid out

17   by both of them in this hearing.

18         The amended schedule will also account for bumping out

19   the fact witness deposition deadlines and the expert disclosure

20   deadlines, not only due to the delays that have already

21   occurred, but will also account for Mr. Sreecharana's conflicts

22   arising both from his other pending litigation press in

23   February and his personal commitments in March.

24         The court expressly notes that it will give counsel

25   for plaintiff this leeway because the delays that got us here

1    are not due in any way to the plaintiff's conduct.  They're due

2    to the defendant herself, her actions.  Otherwise, plaintiff's

3    counsel wouldn't be in this position.

4         Therefore, to summarize on this point, what the court

5    is looking at is a delay of fact witness depositions until

6    after Mr. Sreecharana has had a chance to return from his

7    parental leave and to prepare for executing those depositions.

8         The expert disclosure deadlines will similarly be

9    delayed for a period of at least three weeks after completion

10   of the last key fact witness deposition.

11        And, finally, as to my point above about the

12   defendant's sporadic lack of engagement in the litigation being

13   a recurring issue, within two weeks plaintiff's counsel shall

14   file a notice containing their thoughts on any appropriate

15   sanctions for future discovery delays or violations by the

16   defendant in this vein.

17        The court offers the following:  The situation does

18   not appear to be one in which monetary sanctions drive

19   compliance, at least not sufficiently.  And of course

20   compliance is the goal.  It's the only goal.

21        Moreover, because at issue here is the defendants'

22   potential failure to comply with discovery obligations rather

23   than plaintiff's failures, sanctions short of default that tend

24   to go towards the preclusion of evidence also seem to miss the

25   mark because when a plaintiff is at fault and it's failed to

1   disclose something relevant to the litigation, the evidentiary

2   sanction precluding any evidence not disclosed can work well

3   because it could detract from plaintiff's ability to prove

4   their claim since they have the burden.  But when a defendant

5   withholds evidence, precluding that evidence probably does not

6   hurt the defendant at all and may, in fact, hurt the plaintiff.

7         So the court is giving expressly plaintiff's counsel

8   the opportunity to weigh on this issue only because this has

9   been a recurring problem that has unilaterally from defendants

10  lack of engagement frustrated plaintiff's counsels' attempts to

11  represent the clients -- their client's interest and to do what

12  they're entitled to under the rules.

13        All right.  Counsel, I appreciate the presentation

14  both in writing and more so here today.

15        We are adjourned.  And good day to all of you.  Thank

16  you.

17        (Proceedings adjourned at 11:23 a.m.)

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3          I, SCOTT M. CONIAM, do herby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court.

6          I FURTHER CERTIFY that the foregoing pages constitute

7    a full, true, and accurate transcript of all of that portion of

8    the proceedings contained herein, had in the above-entitled

9    cause on the date specified therein, and that said transcript

10   was prepared under my direction and control.

11         DATED January 24, 2026.

12

13

          s/Scott M. Coniam_____
14          SCOTT M. CONIAM, RDR, CRR

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT  B**

1  Patrick Emerson McCormick (AZ Bar No. 037036)
       PMcCormick@lewisroca.com
2  **LEWIS ROCA ROTHGERBER CHRISTIE LLP**
   One South Church Avenue, Suite 2000
3  Tucson, Arizona 85701
   Telephone: (520) 622-2090
4  Facsimile: (520) 622-3088

5  Eric Levinrad (CA Bar No. 169025/Admitted AZ PHV)
       elevinrad@ecjlaw.com
6  Amy S. Russell (CA Bar No. 284131/Admitted AZ PHV)
       arussell@ecjlaw.com
7  **ERVIN COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Twelfth Floor
8  Beverly Hills, California 90212-2974
   Telephone: (310) 273-6333
9  Facsimile: (310) 859-2325

10 Attorneys for Defendants Alissa
   Chiaravanond, Pacific Shangrila LLC,
11 Cathedral Shangrila LLC, Nido di Stelle LLC,
   and ILU LLC

12

13              **UNITED STATES DISTRICT COURT**

14           **DISTRICT OF ARIZONA, PRESCOTT**

15

16 PHONG THANH HUYNH,                    Case No. 3:23-cv-08622-JJT

17          Plaintiff,                   The Hon. John J. Tuchi, Courtroom 505

18     v.

19 ALISSA CHIARAVANOND, an               **INITIAL DISCLOSURE PURSUANT**
   individual; PACIFIC SHANGRILA LLC,    **TO FEDERAL RULE OF CIVIL**
20 a Nevada limited liability company;   **PROCEDURE 26(a)(1) OF**
   CATHEDRAL SHANGRILA LLC, a            **DEFENDANTS ALISSA**
21 Nevada limited liability company; NIDO **CHIARAVANOND, PACIFIC**
   DI STELLE LLC, a Nevada limited       **SHANGRILA LLC, CATHEDRAL**
22 liability company; and ILU LLC, an    **SHANGRILA LLC, NIDO DI STELLE**
   Arizona limited liability company,    **LLC, AND ILU LLC**
23
            Defendants.
24

25

26

27

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendants Alissa Chiaravanond ("Chiaravanond"), Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC ("Defendants") hereby make the following mandatory disclosures.  Defendants expressly reserve the right to rely on additional witnesses and documents as further information is developed through discovery and investigation.

**A.**     **Names and Addresses of Individuals Likely to Have Discoverable Information**

1.     Defendant Alissa Chiaravanond may have information regarding, among other things, her communications with Plaintiff; the parties' understandings with respect to the properties in Sedona and Malibu that were purchased by the entity defendants in this action; any representation that she made – and did not make – to Plaintiff; the parties' shared understanding that moneys were transferred to Chiaravanond and/or the LLC entities of which she was the sole member as irrevocable dowry gifts and that such moneys were used, with additional moneys from Chiaravanond and/or her entities, to purchase the Sedona and Malibu properties; Plaintiff's representations to Chiaravanond regarding the purpose of the moneys transferred to her and/or the LLC entities of which she was the sole member; Plaintiff's knowledge and understanding regarding the limited liability companies (Defendants Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di Stelle LLC, and ILU LLC, collectively "Entity Defendants") and the fact that Chiaravanond was the sole member and the manager of each of the Entity Defendants; Plaintiff's knowledge and understanding that the Entity Defendants would hold title to the Malibu and Sedona Properties; Plaintiff's efforts to obtain loans and financing from Chiaravanond's family; Plaintiff's efforts, both directly and through third parties, to force Chiaravanond to stay in her marriage with Plaintiff against her will; Plaintiff's efforts to intimidate Chiaravanond and retaliate following the breakdown of their marriage; the absence of any written contracts, agreements or other documents supporting Plaintiff's claim to an ownership interest in any of the properties at issue in this action; the reasons for the formation of the Trilliant Group and the Trilliant Group's business relationships and agreements with FWD; the ownership of the Trilliant Group and the fact that Plaintiff was never promised

2

1  any type of ownership interest in the Trilliant Group; and Plaintiff's customs and practices

2  with respect to due diligence for investments which he entered into and his lack of any

3  such due diligence with respect to the properties at issue in this case.

4        2.     Plaintiff Phong Thanh Huynh may have information regarding, among other

5  things, his communications with Plaintiff; the parties' understandings with respect to the

6  properties in Sedona and Malibu that were purchased by the entity defendants in this

7  action; any representation that Chiaravanond made – and did not make – to Plaintiff; the

8  parties' shared understanding that moneys were transferred to Chiaravanond and/or the

9  LLC entities of which she was the sole member as irrevocable dowry gifts and that such

10 moneys were used, with additional moneys from Chiaravanond and/or her entities, to

11 purchase the Sedona and Malibu properties; Plaintiff's representations to Chiaravanond

12 regarding the purpose of the moneys transferred to her and/or the LLC entities of which

13 she was the sole member; Plaintiff's knowledge and understanding regarding the limited

14 liability companies (Defendants Pacific Shangrila LLC, Cathedral Shangrila LLC, Nido di

15 Stelle LLC, and ILU LLC, collectively "Entity Defendants") and the fact that

16 Chiaravanond was the sole member and the manager of each of the Entity Defendants;

17 Plaintiff's knowledge and understanding that the Entity Defendants would hold title to the

18 Malibu and Sedona Properties; Plaintiff's efforts to obtain loans and financing from

19 Chiaravanond's family; Plaintiff's efforts, both directly and through third parties, to force

20 Chiaravanond to stay in her marriage with Plaintiff against her will; Plaintiff's efforts to

21 intimidate Chiaravanond  and retaliate following the breakdown of their marriage; the

22 absence of any written contracts, agreements or other documents supporting Plaintiff's

23 claim to an ownership interest in any of the properties at issue in this action; the Trilliant

24 Group's business relationships and agreements with FWD; the ownership of the Trilliant

25 Group and the fact that Plaintiff was never promised any type of ownership interest in the

26 Trilliant Group; and Plaintiff's customs and practices with respect to due diligence for

27 investments which he entered into  and his lack of any such due diligence with respect to

28 the properties at issue in this case.

ERVIN COHEN & JESSUP LLP

3

ERVIN COHEN & JESSUP LLP

3.      Bob Wouters, address unknown.  Mr. Wouters may have knowledge regarding the claims made by Plaintiff in this action, as well as the reasons for the formation of the Trilliant Group.

4.      Mike Plaxton, address unknown.  Mr. Plaxton may have knowledge regarding the claims made by Plaintiff in this action, as well as the reasons for the formation of the Trilliant Group; and the extent, if any, to which Chiaravanond held herself out as a real estate expert.

5.      Binayak Dutta, address unknown.  Mr. Dutta may have knowledge regarding the claims made by Plaintiff in this action; Chiaravanond's areas of expertise and the extent, if any, to which Chiaravanond held herself out as a real estate expert.

6.      Joanne Laurie, address unknown.  Ms. Laurie may have information regarding the extent to which Plaintiff has disclosed his purported interest in the Sedona and/or Malibu properties in other relevant legal proceedings.

7.      Richard Li, address unknown.  Mr. Li may have knowledge regarding Plaintiff's efforts, both directly and through third parties, to force Chiaravanond to stay in her marriage with Plaintiff against her will; Plaintiff's efforts to intimidate Chiaravanond and retaliate following the breakdown of their marriage; and the business relationships between and among Plaintiff, FWD, Chiaravanond and the Trilliant Group.

8.      Dennis Ziengs, address unknown.  Mr. Ziengs may have knowledge regarding the consulting services which Chiaravanond provide to FWD through the Trilliant Group, and regarding Chiaravanond's background and areas of expertise and the extent, if any, to which Chiaravanond held herself out as a real estate expert.

9.      Person  most knowledgeable at FWD on the relationship between and among Chiaravanond, FWD and the Trilliant Group.

**B.      Documents that Defendants May Use to Support their Claims and Defenses**

1.      Communications between Plaintiff and Chiaravanond.

2.      Grant deeds reflecting the conveyance of the Sedona and Malibu Properties to the respective Entity Defendants that hold title to such properties.

3.     The organizing documents of the Entity Defendants reflecting that Chiaravanond is the sole member of such entities.

4.     The organizing documents of the Trilliant Group.

5.     Contracts between the Trilliant Group, on the one hand, and FWD, on the other hand.

**C.     Damages**

Defendants are not seeking Damages at this time.

**D.     Insurance**

Defendants are not aware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

DATED:  September 12, 2024          ERVIN COHEN & JESSUP LLP
                                    Eric Levinrad
                                    Amy S. Russell


                                    By:     /s/ Eric Levinrad
                                            _____
                                    Eric Levinrad
                                    Attorneys for Defendants Alissa
                                    Chiaravanond, Pacific Shangrila LLC,
                                    Cathedral Shangrila LLC, Nido di Stelle LLC,
                                    and ILU LLC

ERVIN COHEN & JESSUP LLP

## PROOF OF SERVICE

I, Shoeba Hassan, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 9401 Wilshire Boulevard, Twelfth Floor, Beverly Hills, California 90212.

On September 12, 2024, I served true copies of the following document(s) described as **INITIAL DISCLOSURE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1) OF DEFENDANTS ALISSA CHIARAVANOND, PACIFIC SHANGRILA LLC, CATHEDRAL SHANGRILA LLC, NIDO DI STELLE LLC, AND ILU LLC** on the interested parties in this action as follows:

| | |
|---|---|
| Devin Sreecharana<br>**MAY POTENZA BARAN & GILLESPIE PC**<br>1850 N Central Ave., Ste. 1600<br>Phoenix, AZ 85004-4633<br>602-252-1900<br>Fax: 602-252-1114<br>Email: devin@maypotenza.com<br>ecordero@maypotenza.com,<br>rgonzales@maypotenza.com | *Attorneys for Plaintiff*<br>PHONG THANH HUYNH |
| Moshe Y Admon<br>**ADMON LAW FIRM PLLC**<br>300 Lenora St., Ste. 4008<br>Seattle, WA 98121<br>206-739-8383<br>Fax: 206-494-0001<br>Email: jeff@admonlaw.com | *Attorneys for Plaintiff*<br>PHONG THANH HUYNH |
| Trevor J Wainfeld<br>**MAY POTENZA BARAN & GILLESPIE PC**<br>1850 N Central Ave., Ste. 1600<br>Phoenix, AZ 85004-4633<br>602-252-1900<br>Email: twainfeld@maypotenza.com | *Attorneys for Plaintiff*<br>PHONG THANH HUYNH |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address shassan@ecjlaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 12, 2024, in Beverly Hills, California.

/s/ *Shoeba Hassan*
Shoeba Hassan

**EXHIBIT C**

2/5/26, 3:13 PM
Los Angeles County home sales in week ending Nov. 15 | North SGV News
Case 3:23-cv-08622-JJT    Document 175-1    Filed 02/05/26    Page 47 of 48


EN

Newsletter

# North SGV News

Search 🔍

**Trending**

## Los Angeles County home sales in week ending Nov. 15

### REAL ESTATE


-

Facebook     Twitter     Email

**Nov 22, 2025** › By V. R. Austin › 💬 0 Comments

There were 897 reported residential sales in Los Angeles County in the week ending Nov. 15, according to BlockShopper.com. The median sales price was $890,000 and the median property tax bill was $5,112 for the previous year. Property taxes based upon most recent assessment in 2021-22.

4342 Redwood Ave. C-115
Del Rey, Los Angeles
$1,050,000
Property Tax: $11,718.04
Effective Property Tax Rate: 1.12%

**Which ex-North Sab Gabriel Valley area high school athletes are scheduled for action the week starting Monday, Feb. 2?**

**Who from North Sab Gabriel Valley area's former high school standouts will be active on Saturday, Jan. 31?**

**Which former high school stars from North Sab Gabriel Valley area will be in action for the week of Monday, Jan. 26?**

**Which ex-North Sab Gabriel Valley area high school athletes are scheduled for action the week starting Monday, Jan. 19?**

**Who are the North Sab Gabriel Valley area high school alumni in action on Saturday, Jan. 17?**

Property Tax: $17,800.19
Effective Property Tax Rate: 0.84%
Buyer: OH BRYAN CO TR OH FAMILY TRUST
Seller: OH BRYAN TRUSTEE

12019 Culver Drive
Del Rey, Los Angeles
$900,000
Property Tax: $8,863.45
Effective Property Tax Rate: 0.98%
Buyer: SOUTHALL KENNETH
Seller: SOUTHALL KENNETH

8149 California Ave.
Whittier Hills, Whittier
$950,000
Property Tax: $1,498.82
Effective Property Tax Rate: 0.16%
Buyer: SHAVER BRIAN E BRIAN E SHAVER TRUST
Seller: BARSUMIAN RICH TRUSTEE

2457 Angelo Drive 0005
Beverly Crest, Los Angeles
$4,999,000
Property Tax: $52,160.48
Effective Property Tax Rate: 1.04%
Buyer: CHIARAVANOND ALISSA CERES TRUST
Seller: CHIARAVANOND ALISSA TRUS

750 Eighth St.
South Claremont, Claremont
$1,385,000
Property Tax: $9,122.33
Effective Property Tax Rate: 0.66%
Buyer: SUMMIT SHARKS INVESTMENTS LLC
Seller: SUMMIT SHARKS INVESTMENT

3025 Hillside Drive
West Covina East, West Covina
$1,600,000
Property Tax: $15,272.62
Effective Property Tax Rate: 0.95%
Buyer: ZHU CHAOYING
Seller: ZHU CHAOYING

6849 Northford Drive
Tujunga, Los Angeles
$1,475,000
Property Tax: $1,260.14
Effective Property Tax Rate: 0.09%
Buyer: SO CAL RESIDENTIAL HOMES LLC
Seller: SO CAL RESIDENTIAL HOMES